**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES TYRONE EDWARDS,** | ) | |
| **#244 859** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:06-CV-740-MHT-SRW** |
| | ) | |
| **SGT. MOORE, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>DEFENDANTS SPECIAL REPORT</u>**

COME NOW Sheriff Thomas F. Boswell, Chief Deputy William Alexander, Lieutenant Loetta Holland, Sergeant Danny Bussey, and Sergeant Samuel Pierce Moore, Defendants in the above-styled cause, and submit their Special Report to the Court.

**INTRODUCTION**

On February 13, 2006, Plaintiff filed his Complaint in the United States District Court for the Southern District of Alabama. On August 15, 2006, the U.S. District Court for the Southern District of Alabama adopted a Report and Recommendation that this action be transferred to the U.S. District Court, Middle District of Alabama. The case was transferred on August 16, 2006 to the U.S. District Court, Middle District. On October 3, 2006, this Court ordered Defendants to file a Special Report within forty days of the date of the order. Because of the coincidence of the due date of this Report and Veteran's Day, the Special Report was due November 14, 2006. Defendants requested and were granted a three-week extension to finish this Special Report, making it due on December 5, 2006.

James Tyrone Edwards, the Plaintiff, alleges that on February 3, 2006, he was being held in the Russell County Jail (aka "Prentiss Griffith Detention Center") on charges of Third Degree Burglary and Unlawful Distribution of a Controlled Substance (Cocaine) and, while so incarcerated, was subjected to cruel and unusual punishment. Plaintiff's incarceration at the Prentiss Griffith Detention Center began on 18 May 2005, and he was transferred to Kilby Prison for Department of Corrections processing on 24 February 2006. Plaintiff is presently incarcerated in the Limestone County Correctional Facility.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on February 3, 2006, Sgt. Moore and two other uniformed officers of the Russell County Jail unjustifiably sprayed him with mace while he was shackled, made him lie down in dirty toilet water, handcuffed him, and then beat him with night sticks for approximately fifteen minutes. (Complaint, p. 4.)[1] Plaintiff also alleges that after this beating, he was again handcuffed and taken to a holding cell, Number 3, where he repeatedly requested medical attention for his left hand and other bruised areas of his body. (Complaint, pp. 4-5.) Plaintiff alleges that the jail staff refused to provide him any medical attention. (Complaint, p. 5.)

---

[1] Attorney for Defendants met with Plaintiff at the Limestone County Correctional Facility, prepared an affidavit for Plaintiff based on that interview, and faxed it to the Facility for Plaintiff's review and signature. Thereafter, the secretary for the Warden's office called to tell me that she had ensured delivery of the proposed affidavit to the Plaintiff was accomplished but that he disagreed with the information I had placed in the affidavit and refused to sign it. Plaintiff told Defendants' Attorney that he knew of three inmate witnesses to the incident – Maurice Tyrone Hollis, Anthony Lamont Ford, and Derrick Walker. The only Tyrone Hollis that I could reach in the Phenix City area had not been in the Prentiss Griffith Detention Center for approximately two years, but he said that he has a nephew named Maurice Tyrone Hollis. I asked him to obtain the contact information for his nephew and call me back. That was on 28 November 2006, and I never heard back from Mr. Hollis. I tried the number I was given by information (the jail's contact information was no longer valid) for Anthony Lamont Ford, but no one ever answered, and there was no answering machine or voicemail. I never reached Mr. Ford although I tried during the evenings and during the middle of the day throughout the week of the 27th of November 2006. Although I reached an answering machine for Mr. Derrick Walker and left a message, I do not know if it is the same Derrick Walker that was incarcerated during Plaintiff's time in the Prentiss Griffith Detention Center, and he never returned my request for a call back.

Plaintiff claims that he was the victim of cruel and unusual punishment and that he seeks damages for pain and suffering and emotional distress. (Complaint, p. 5.) Plaintiff demands $100,000 and that all employees involved be removed from their positions for cruel and unusual punishment and his pain and suffering. (Complaint, p. 7.)

## DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants, Sheriff Thomas F. Boswell, Chief Deputy William Alexander, Lt. Loetta Holland, Sgt. Samuel Pierce Moore, and Sgt. Danny Bussey, deny that they in any way used excessive force against Plaintiff, that the rules, policies, training, and supervision of personnel of the Prentiss Griffith Detention Center were or are in any way insufficient to protect inmates like Plaintiff, and that Plaintiff did not suffer any type of serious injury as a result of the incident. (Exhibit A, Prentiss Griffith Detention Center Policies and Procedures Manual; Exhibit B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Exhibit C, Affidavit of Sgt. Samuel Pierce Moore, "Moore aff." ¶¶ 4, 5; Exhibit D, Affidavit of Lieutenant Loetta Holland, "Holland aff." ¶ 4; Exhibit E, Affidavit of Sergeant Danny Bussey, "Bussey aff." ¶¶ 4, 7; Exhibit F, Affidavit of Corrections Officer Thigpen, "Thigpen aff." ¶¶ 4-6; Exhibit G, Affidavit of Nurse Riley, "Riley aff." ¶ 4; Exhibit H, Affidavit of Nurse Practitioner Janice McInnis, "McInnis aff." ¶¶ 4, 5; Exhibit I, Affidavit of Deputy Chief William Alexander, "Alexander aff." ¶¶ 2-6; Exhibit J, Affidavit of Sheriff Tommy Boswell, "Boswell aff." ¶¶ 2-6; Exhibit K, Inmate Booking Documents; Ex. L, Sergeant Steve Johnson and Sergeant Bussey Memoranda, "Use of Force Continuum," 22 September 1999 & 22 August 2006; Ex. M, Russell County Sheriff's Department General Order, "Use of Chemical Weapon," 12 April 1996; Ex. N, Other Plaintiff Incident Reports; Ex. O, Plaintiff Inmate Grievance Paperwork, 6 February 2006; Ex. P, Plaintiff Medical Treatment Log; Exhibit Q, Pictures of Plaintiff's Bruising, 6 February

2006.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS[2]

Plaintiff began serving his incarceration at the Russell County Jail on May 18, 2005. Plaintiff was incarcerated for Third Degree Burglary and Possession of Cocaine. (Ex. K, Inmate Booking Sheet; Ex. E, .Bussey aff., ¶ 1.)

### A.    Policy and Procedure Regarding Use of Force in Russell County Jail

It is the policy of the Prentiss Griffith Detention Center that "Physical force … may be used in the following incidents: … In defending one's self or others against any physical assault," "to prevent serious damage to property," or "to enforce Detention Center regulations." (Ex. A, Prentiss Griffith Detention Center Policy & Procedure Manual, Title 7.09.C.2., "Non-Deadly Force;" Ex. B, Moore aff., ¶ 4; Ex. L, Sergeant Steve Johnson Memorandum, "Use of Force Continuum," 22 September 1999; Ex. M, Russell County Sheriff's Department General Order, "Use of Chemical Weapon," 12 April 1996.) After use of force and after use of a chemical weapon like the Freeze Plus mace, the officer using the chemical is to file a Russell County Sheriff's Department Use of Force Report. (Ex. A, Prentiss Griffith Detention Center Policy & Procedure Manual, Title 7.09.F. & 7.09.E.3.F., "Guidelines on the Use of Aerosol

---

[2] Defendant's Counsel could not speak with Corrections Officer Mathis or Corrections Officer Burdin. Mr. Jeffery Burdin resigned from the Sheriff's Department March 2006 and moved to New Jersey with his family. He resigned his position for a better one, and his wife was a member of the military. Mr. Mathis resigned from the Sheriff's Department May 2006, and the last information I received was that he is living in Columbus, Georgia. He resigned his position with the Sheriff's Department to work for Buffalo Rock originally, but he no longer works with Buffalo Rock. I attempted the last phone number that the Prentiss Griffith Detention Center had for Mr. Mathis, but it was disconnected.

Dispensers;" Ex. M, Russell County Sheriff's Department General Order, "Use of Chemical Weapon," ¶ III.C., 12 April 1996.)

The Prentiss Griffith Detention Center has a grievance procedure available for inmates complaining of jail conditions.

> "Inmate Grievance Forms are available on request from any Officer with approval of the Supervisor. *** Grievances are promptly and thoroughly investigated, appropriate corrective action taken, and a report issued to the inmate."

(Ex. A, Prentiss Griffith Detention Center Policy & Procedure Manual, "Inmate Grievance Procedure;" Ex. E, Bussey aff. ¶ 6.)   Lieutenant Holland, the Jail Administrator, normally delivers Inmate Grievances to Sergeant Bussey, and if necessary, Sergeant Bussey performs an investigation of the grievance.  (Ex. E, Bussey aff. ¶ 6.)

**B.     Events that Lead to Incident**

Plaintiff states in his Complaint that on February 3, 2006, he was in his cell in the Walker County Jail when the alleged assault occurred. (Complaint, p. 4.) Plaintiff also states in his Complaint that there existed some problem with his cell location. (Complaint, p. 4.) Plaintiff mentions in his Complaint a request to move for safety reasons because he was having problems with other inmates in his dorm.  (Complaint, p. 4.)  However, that is why Plaintiff was in an isolation cell; he had been in more than one fight and appeared to seek such fights out.  (Ex. C, Moore aff., ¶ 6; Ex. E, Bussey aff., ¶ 9; Ex. N, Other Plaintiff Incident Reports.) Sgt. Moore states that Plaintiff had flooded his cell with his own toilet's water and that Sgt. Moore gave him a mop and buckets and told him to clean up the water which had flowed outside Plaintiff's cell. Less than an hour later, Sgt. Moore learned that Plaintiff was using the bucket to dump the toilet water into other inmates' cells.  (Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Ex. C, Moore aff., ¶ 6.)  Sgt. Moore went to Plaintiff's cell, followed by

Corrections Officers Iva Thigpen, Brandon Mathis, and Jeffrey Burdin, and asked Plaintiff why he was flooding other inmates' cells.  Sergeant Moore attempted to talk Plaintiff down, but Plaintiff responded hostilely, demanding to know when he would be moved, yelling obscenities like "Fuck you" and "I don't have shit to lose," and refusing orders to get down on the floor. (Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Ex. C, Moore aff., ¶ 6; Ex. F, Thigpen aff., ¶ 5.)

According to Sergeant Moore's Incident Report and the testimony of both Moore and Thigpen, Plaintiff was hostile, threatening to others, and boisterous. (Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Ex. C, Moore aff., ¶ 6; Ex. F, Thigpen aff., ¶ 5.) After Plaintiff refused to comply with Sergeant Moore's instruction to get on the floor, Sergeant Moore sprayed Plaintiff with one burst of mace, which had little to no effect on Plaintiff who blocked the mace with his hand. (Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Ex. C, Moore aff., ¶ 7; Ex. F, Thigpen aff., ¶ 5.)  Although Plaintiff got partially down, he remained combative and avoided being handcuffed and grabbed the night stick to take it from Sergeant Moore; therefore, Sergeant Moore had to hit Plaintiff three times with his night stick. (Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Ex. C, Moore aff., ¶¶ 7, 8; Ex. F, Thigpen aff., ¶ 5.)

C.    **After the Alleged Incident**

Sgt. Moore and Officer Thigpen then took Plaintiff to the Infirmary to instruct him on how to get the mace off.  (Ex. C, Moore aff., ¶ 9; Ex. F, Thigpen aff., ¶ 6.)  Although the inmates know that a nurse is on-call 24 hours per day, Plaintiff did not ask to see a nurse.  (Ex. H, McInnis aff., ¶ 4; Ex. C, Moore aff., ¶ 9.)  Sgt. Moore filed the required report for use of force in the jail, and Corrections Officers Thigpen, Burdin, and Mathis also prepared statements for that

report. (Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Ex. C, Moore aff., ¶ 10.)  The next night, between around 8 p.m. and 9 p.m., the on-call nurse, Janice McInnis, performed blood pressure checks on the inmates, but Plaintiff never asked for her assistance or treatment and submitted no medical request forms.  (Ex. H, .McInnis aff., ¶ 4.)

On 6 February 2006, Plaintiff filed a Grievance regarding the incident.  (Ex. P, Plaintiff's Grievance/Jail Response regarding Incident, 6 February 2006.)  Sergeant Bussey, the Deputy Warden of the Jail, responded on 7 February 2006 in writing, explaining that he did not consider the force used by Sergeant Moore to have been excessive and that Plaintiff's own disruptive behavior toward other inmates created the problem.  (Ex. E, .Bussey aff., ¶¶ 6, 7; Ex. P, Plaintiff's Grievance/Jail Response regarding Incident, 6 February 2006.)  Although inmates have the opportunity to appeal any decision by Sergeant Bussey to Lieutenant Holland and any decision of Lieutenant Holland to Sheriff Boswell, Plaintiff did not appeal Sergeant Bussey's decision, nor did he tell Sergeant Bussey that he had not received a response, nor did he mention Sergeant Bussey's decision to Sergeant Bussey at all.  (Ex. J, Boswell aff., ¶ 6; Ex. I, Alexander aff., ¶ 6; Ex. D, Holland aff., ¶ 6; Ex. E, Bussey aff., ¶ 8.)  Sergeant Bussey passed by Plaintiff's cell several times a day each day between 19 February and 24 February 2006, but Plaintiff never mentioned to Sergeant Bussey or questioned him about the Grievance.  (Ex. E, Bussey aff., ¶ 8.)

 To ensure that Plaintiff saw a Nurse, Sergeant Bussey sent Plaintiff to Nurse Riley on 6 February 2006.  (Ex. E, Bussey aff., ¶ 9.)  Plaintiff saw Nurse Riley, who did not find any serious injury, only bruising, and she prescribed Naproxin, an anti-inflammatory pain reliever, to be taken two times a day for five days.  (Ex. G, .Riley aff., ¶ 4.)  At some time approximately three days after the incident alleged in Plaintiff's Complaint, Nurse McInnis examined the photographs of Plaintiff's bruising and did not find any serious injury.  (Ex. H, .McInnis aff., ¶

4.)  She discovered normal bruising even though bruises should be at their maximum appearance of injury on a person's skin at 72 hours after the bruising is caused.  (Ex. H, McInnis aff., ¶ 5.)

Neither Sheriff Boswell, Deputy Chief Sheriff William Alexander, Lieutenant Holland, the Warden, or Sergeant Bussey, the Deputy Warden, were present during the incident alleged in Plaintiff's Complaint, and none of them had any personal involvement in the alleged incident. (Ex. J, Boswell aff., ¶¶ 2, 3, 5; Ex. I, Alexander aff., ¶¶ 2, 3, 5; Ex. D, Holland aff., ¶¶ 3, 5; Ex. E, Bussey aff., ¶¶ 3, 5.)  All of the chief staff of the Prentiss Griffith Detention Center and the Russell County Sheriff's Department, Sheriff Boswell, Deputy Chief Alexander, Lieutenant Holland, and Sergeant Bussey, agree that based on the reports they received of the incident alleged in Plaintiff's Complaint, excessive force was not used and the policies and procedures involving use of force and chemical weapons were followed.  (Ex. J, Boswell aff., ¶¶ 4, 5; Ex. I, Alexander aff., ¶¶ 4, 5; Ex. D, Holland aff., ¶¶ 4, 5; Ex. E, Bussey aff., ¶¶ 4, 7.)

## II.    LAW

### A.    All Claims by the Plaintiff against the Defendants in their Official Capacity must fail based on Eleventh Amendment Immunity and because they are not "persons" under 42 U.S.C.A. § 1983.

The Plaintiff has not stated whether his claims against the officers in this case are in their official capacity or individual capacity.  Therefore, the Defendants analyze the Plaintiff's claims in light of both individual and official capacities based on the manner in which the Plaintiff has made allegations against him.

The Plaintiff's claims against the Defendants in their official capacity are due to be dismissed for lack of subject matter jurisdiction, as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment

immunity); <u>Free v. Granger</u>, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Carr v. City of Florence, Ala.</u>, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a <u>person</u>, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  Any claims against these officers in their official capacity should therefore be dismissed because they are not "persons" under § 1983; therefore, claims against them in their official capacity fail to state a claim upon which relief can be granted. <u>Id.</u>; <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

**B.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint**

**1.    Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  The Plaintiff began to fulfill the requirement as to the grievance procedures provided at the Prentiss Griffith Detention Center by filing a Grievance Form;

9

however, once that Grievance was denied by the jail administration, it was incumbent upon Plaintiff to utilize the appeals process in that system. Because Plaintiff has failed to appeal to even the first level allowed by the Grievance process at the Prentiss Griffith Detention Center, he has not fulfilled the requirements of the PLRA. (Ex. E, Bussey aff., ¶¶ 6, 7; Ex. P, Plaintiff's Grievance/Jail Response regarding Incident, 6 February 2006; Ex. A, Prentiss Griffith Detention Center Policies and Procedures Manual; Ex. L, Sergeant Steve Johnson Memorandum, "Use of Force Continuum," 22 September 1999; Ex. M, Russell County Sheriff's Department General Order, "Use of Chemical Weapon," 12 April 1996; Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006.)

Plaintiff has also not alleged that he pursued any grievance through the State Board of Adjustment, another administrative procedure in Alabama for obtaining redress. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code 1975, § 41-9-60 et seq., and it was incumbent upon Plaintiff to proceed further with the State Board of Adjustment procedure, discussed infra, after the Prentiss Griffith Detention Center determined that Sergeant Moore had not used excessive force against him. The alter egos of the Sheriff of Walker County, corrections officers, are state officers and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998); Ala. Code 1975, § 41-9-62. Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment. A claimant "shall have the right to file and prosecute his claim before the board in person or by counsel or agent of his own choice, whether such agent be licensed to practice

law or not." <u>Ala. Code 1975,</u> § 41-9-63.  A claimant has one year from the date of the alleged

injury in which to file such a claim.  <u>Ala. Code 1975,</u> § 41-9-65.  One year from the incident date

is 3 February 2007.

As a result of Plaintiff's failure to exhaust these two remedies,[3] he is barred from

bringing this action under § 1997e(a).  <u>See</u> <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1326-27 (11th

Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative

remedies), and Defendants are entitled to have Plaintiff's claims against them dismissed.

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered more than a *de minimis* physical injury as a result of the allegations in his Complaint.**

42 U.S.C. § 1997e(e), requires that an inmate suffer a physical injury in order to present

viable claims of injury.

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."

<u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309 (11th Cir. 2002). <u>See</u> <u>also</u>

<u>Harris v. Garner</u>, 190 F.3d 1279, 1286 (11th Cir. 1999) (in which the Eleventh Circuit held "that

in order to satisfy section 1997e(e) the physical injury must be more than *de minimis*, but need

not be significant") (citing <u>Gomez v. Chandler</u>, 163 F.3d 921, 924 (5th Cir. 1999)).

Plaintiff alleges that he received knoxs [sic] and burses [sic] on his body. (Complaint, p.

5.)  Plaintiff alleges no other medical treatment or injury for which he sought treatment for these

alleged injuries. (Complaint, p. 7.)  Plaintiff states that Sergeant Moore sprayed him with mace

---

[3] Before utilizing the State Board of Adjustment procedure, however, Plaintiff would first need to exhaust his options under the Prentiss Griffith Detention Center's Grievance procedure.

and beat him with a night stick for fifteen minutes. (Complaint, p. 4.) Defendant Sergeant Moore states that he justifiably struck the Plaintiff three times with his nightstick to protect himself, to protect other corrections officers with him, and to ensure Plaintiff complied with his instructions and ceased combative and disruptive behavior. (Ex. C, Moore aff., ¶ 8; Ex. F, Thigpen aff., ¶ 5.)

**C.**    **Plaintiff's Claims are Due to be Denied Because the Defendants in their Individual Capacities did not Violate a Constitutional Right Belonging to the Plaintiff, nor was there Pre-existing "*Clearly Established* Law."**

Plaintiff must meet two prongs in order to satisfy the Eleventh Circuit's standard for determining whether Plaintiff has made out a claim sufficient to overcome qualified immunity to which Sergeant Moore is entitled.

**1.**    **Plaintiff's Claims are Due to be Denied Because he has not Stated a Constitutional Violation within his Complaint Sufficient to Overcome Defendants' Entitlement to Qualified Immunity.**

Based on U.S. Supreme Court precedent, the Eleventh Circuit has stated a two-part inquiry in determining whether a Plaintiff has overcome the qualified immunity to which a public official is entitled in the face of a § 1983 claim.

> "The defendants having established their eligibility for qualified immunity, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. Lee[ v. Ferraro,] 284 F.3d [1188,] at 1194 [(11th Cir. 2002)]. This next step consists of a two-part inquiry, set forth in Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *First we ask, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' Id. If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete.* However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine 'whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law.' Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir. 2004) (citing Saucier, 533 U.S. at 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272)."

Harris v. Coweta County, Ga., 406 F.3d 1307, 1312-13 (11th Cir. 2005) (emphasis added).

Even assuming that Plaintiff's allegations are true, he has not demonstrated in those allegations that Sergeant Moore or any other staff member of the Prentiss Griffith Detention Center applied unconstitutionally excessive force against him and that such a person thereby denied him "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Based on Plaintiff's Complaint and the affidavits and reports provided by the Defendants, Plaintiff was threatening and violent in his words, held a potential weapon (a mop), and he refused to cease threatening and hostile actions and words even after he had been sprayed with mace and struck with a night stick. (Complaint, pp. 4, 5; Ex. C, Moore aff., ¶¶ 8, 9; Ex. F, Thigpen aff., ¶ 5.) Therefore, neither Sergeant Moore nor any other officer of the Prentiss Griffith Detention Center violated any constitutional right of the Plaintiff, and they are entitled to have Plaintiff's claims against them dismissed. His attitude was threatening to the corrections officers, and Plaintiff had a reputation for fighting, which is why he often ended up in an isolation cell. (Ex. E, Bussey aff., ¶ 9; Ex. C, Moore aff., ¶ 6.) Plaintiff's hostile words, threatening actions, and refusal to follow Sergeant Moore's instructions were sufficient to justify his use of the mace. (Exhibit A, Prentiss Griffith Detention Center Policies and Procedures Manual; Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Ex. L, Sergeant Steve Johnson Memorandum, "Use of Force Continuum," 22 September 1999; Ex. M, Russell County Sheriff's Department General Order, "Use of Chemical Weapon," 12 April 1996; Ex. N, Other Plaintiff Incident Reports.)

Accepting for the sake of argument that Plaintiff's Complaint is correct in alleging that Sergeant Moore struck him in the head with his night stick, Plaintiff's Complaint still does not allege a constitutional violation because Sergeant Moore would have been justified under the

circumstances if he had struck Plaintiff with his baton to defend himself and restore order to the area in which Plaintiff had been dumping toilet water into other inmates' cells. An experienced fighter could use a mop as a weapon, and Plaintiff still held the mop after Sergeant Moore arrived to quell the midnight disturbance. (Ex. C, Moore aff., ¶¶ 6-9.) Corrections officers deal with criminals on a regular basis and must make "snap" decisions to prevent danger and injury to an inmate and others around that inmate; thus, their judgment in a particular situation should not be analyzed too strictly by courts that have the benefit of hindsight. Hudson v. McMillian, 503 U.S. 1, 6 (1992) (prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline"). Plaintiff has not met the first prong necessary to overcome Sergeant Moore's entitlement to qualified immunity.

The case is even stronger with regard to Sheriff Boswell, Lieutenant Holland, and Sergeant Bussey, none of whom were even present when the incident occurred. There is no evidence that the Sheriff's policies regarding use of force were inadequate or that the Prentiss Griffith Detention Center did not properly apply those policies. Sergeant Moore demonstrated the appropriate training he had received regarding use of force by quelling the disturbance caused by Plaintiff pouring water into other inmates' cells. Sergeant Moore followed the use of force procedures by first asking Plaintiff why he was pouring the toilet water into other inmates' cells and also verbally warning Plaintiff to get down on the floor. (Ex. A, Prentiss Griffith Detention Center Policies and Procedures Manual; Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Ex. C, Moore aff., ¶ 7; Ex. F, Thigpen aff., ¶ 5; Ex. L, Sergeant Steve Johnson Memorandum, "Use of Force Continuum," 22 September 1999; Ex. M, Russell County Sheriff's Department General Order, "Use of Chemical Weapon," 12 April

1996.)  When Plaintiff was still threatening, combative and non-compliant, Sergeant Moore used a one to three-second spray of mace, i.e., Freeze Plus.  (Ex. C, Moore aff., ¶ 8; Ex. F, Thigpen aff., ¶ 5.)  Plaintiff blocked the spray of mace with his hand and partially complied with the order to get down but was still combative.  (Ex. C, Moore aff., ¶¶ 8, 9; Ex. F, Thigpen aff., ¶ 5.)  Therefore, Sergeant Moore had to use his night stick to force Plaintiff to comply and submit to being handcuffed.  (Ex. C, Moore aff., ¶¶ 8, 9; Ex. F, Thigpen aff., ¶ 5.)  After the Plaintiff was subdued to the point he could no longer cause a disturbance or threaten the officers, Sergeant Moore ensured he was helped with removing the mace, and Sergeant Moore filed a Use of Force Report, as required by Sheriff Department policies.  (Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Ex. C, Moore aff., ¶¶ 9, 10; Ex. F, Thigpen aff., ¶ 6.)  Sergeant Bussey ensured that Plaintiff was seen by a nurse the following Monday, approximately two days later, and he also properly and promptly responded to Plaintiff's Grievance.  (Ex. E, Bussey aff., ¶¶ 6, 7, 9.)

    Such behavior on the part of Sergeant Moore and others in the jail administration does not reflect poor training by the jail administration, Warden Holland, and Deputy Warden Sergeant Bussey, but Plaintiff has not even alleged any type of failure to train or supervise on the part of these two Defendants or Sheriff Boswell.  Therefore, any claim by Plaintiff against these three Defendants is due to be dismissed.  Because Sergeant Moore did not use excess force to calm Plaintiff down and followed the Prentiss Griffith Detention Center's procedures for use of force, any claim against him should also be dismissed.

>    2.    **Alternatively, Defendant Sergeant Moore is entitled to summary judgment based on qualified immunity because nothing in his conduct crossed a "bright line" contour of clearly established constitutional law.**

Even if Plaintiff had met his burden with respect to the first prong, he still has not met his burden under the second prong of the analysis required for overcoming a public official's qualified immunity. Public officials, like the Defendants in this case, are protected in their individual capacities by qualified immunity as long as "a reasonable officer could have believed [his actions] to be lawful, in light of *clearly established law* and the information [that the officer] possessed." Anderson v. Creighton, 483 U.S. 635, 636 (1987) (emphasis added). The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).

The Eleventh Circuit has divided consideration of qualified immunity into two "prongs" of analysis as articulated in Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983).

>    First, "the defendant government official must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Sammons v. Taylor, 967 F.2d 1533, 1539 (11th Cir. 1992) (quoting Zeigler, 716 F.2d at 849). "[T]hen the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law." Id. (quoting Zeigler, 716 F.2d at 849).

Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994). Once it is established that the Plaintiff has stated a claim and that the Defendant was acting within his discretionary authority, the Court then considers whether the contours of the constitutional right allegedly violated were "clearly established." In making this assessment, the reviewing court must examine the state of law *at the time the alleged deprivation occurred*. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994);

Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1578 (11th Cir. 1992) (Edmondson, J., dissenting), rev'd and reasoning of original dissent adopted, 998 F.2d 923 (11th Cir. 1993) (en banc). There is no dispute that Sergeant Moore was acting within his discretionary authority as a corrections officer during this entire incident. He was on duty as a corrections officer and he was attempting to quell a disturbance caused by the Plaintiff. (Ex. C, Moore aff., ¶ 7.)

The Plaintiff must show that clearly established law provided Sergeant Moore with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate the conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The law must be relatively "fact specific" and "so particularized" that it would have been obvious or "apparent" to the defendant that his actions were unlawful. See Rodgers, 39 F.3d at 311; Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994) (both reversing denial of qualified immunity). As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show that a right is clearly established. . . . '[i]f case law, in factual terms, has not staked

17

out a bright line, qualified immunity almost always protects the defendant.'" <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1992)).  While the facts of prior cases establishing the law in a particular context need not be identical, "the salient question that the Court of Appeals ought to have asked is whether the state of the law in 1995 gave respondents fair warning that their alleged treatment of [Plaintiff] was unconstitutional." <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S. Ct. 2508 (2002).  This case law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." <u>Hudson v. Hall</u>, 231 F.3d 1289, 1294 (11th Cir. 2000) (quoting <u>Lassiter</u>, at 28 F.3d 1150).

The Eleventh Circuit's approach to Eighth Amendment claims of cruel and unusual punishment can be summarized in a 1999 opinion.

> The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting <u>Helling v. McKinney</u>, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)); see also <u>Whitley v. Albers</u>, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (holding that "the Due Process Clause affords ··· no greater protection"). Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. <u>Farmer</u>, 511 U.S. at 832, 114 S. Ct. 1970 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," <u>Whitley</u>, 475 U.S. at 319, 106 S. Ct. 1078; instead, " '[a]fter incarceration, only the " 'unnecessary and wanton infliction of pain' "··· constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' " <u>Id</u>. at 319, 106 S. Ct. 1078 (quoting <u>Ingraham v. Wright</u>, 430 U.S. 651, 670, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (citations omitted))).

> Crucial to establishing an "unnecessary and wanton infliction of pain" is some proof that officials acted with specific intent. This specific-intent requirement for an Eighth Amendment violation applies to both failure to provide proper medical care, <u>Steele v. Shah</u>, 87 F. 3d 1266, 1269 (11th Cir. 1996), and excessive force, see <u>Whitley</u>, 475 U.S. at 319-21, 106 S. Ct. 1078.

<u>Campbell v. Sikes</u>, 169 F. 3d 1353, 1362 -1363 (11th Cir. 1999).

### a.    Chemical Weapon Use

After a diligent search of relevant Eleventh Circuit cases on pepper spray, mace and Freeze Plus, counsel for the Defendant has been unable to find a case involving materially similar facts that held conduct similar to that engaged in by the Defendant to be unlawful.  The Eleventh Circuit has stated that "'whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm.'"  <u>Bozeman v. Orum</u>, 422 F. 3d 1265, 1271 (11th Cir. 2005).  While the Eleventh Circuit has addressed the use of pepper spray in an arrest situation,[4] it apparently has yet to address its use in the confinement setting.  Therefore, as stated in <u>Vinyard</u>, supra, any reference to appellate courts' opinions and district courts' opinions from other circuits by Defendants in this regard is "immaterial to determining whether the law was 'clearly established' in this circuit for the second prong of

---

[4] <u>See</u> <u>Vinyard</u>, supra, wherein the Eleventh Circuit explained the difference between Fourth Amendment claims of excessive force and Eighth Amendment claims of excessive force.

> [W]e do not discuss the use of pepper spray in the prison setting because the Eighth Amendment controls such cases, and force does not amount to a constitutional violation in that setting if it is applied in a good faith effort to restore discipline and order and not "maliciously and sadistically for the very purpose of causing harm." <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (internal quotation marks omitted). Moreover, a subjective element was added to certain Eighth Amendment claims in the prison setting in <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Thus, the <u>Eighth Amendment standard necessarily involves a more culpable and subjective mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction.</u> Graham[ v. Connor], 490 U.S. [386] at 398, 109 S.Ct. 1865 [(1989)].

<u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1349 n 15 (11th Cir. 2002) (emphasis added).

Saucier." Vinyard, 311 F.3d at 1348. However, opinions from other jurisdictions are instructive

as to whether the use of mace or other chemicals on an inmate is cruel and unusual punishment.

     The Eleventh Circuit has stated:

> [T]he use of "mace, tear gas, or other chemical agent of the like nature when
> reasonably necessary to prevent prison riots or escape or to subdue recalcitrant
> prisoners does not constitute cruel and unusual punishment."

Ort v. White, 813 F. 2d 318, 324 (11th Cir. 1987), quoting Soto v. Dickey, 744 F. 2d 1260, 1270

(7th Cir. 1984), cert. denied, 470 U.S. 1085, 105 S. Ct. 1846, 85 L. Ed. 2d 144 (1985). See also

Clement v. Gomez, 298 F. 3d 898, 903 (9th Cir. 2002) (use of pepper spray on two inmates

fighting in a cell does not amount to a constitutional violation in this respect if it is applied in a

good faith effort to restore discipline and order and not "maliciously and sadistically for the very

purpose of causing harm."), quoting Whitley, supra; Baldwin v. Stalder, 137 F. 3d 836, 838 (5th

Cir. 1998) ("core judicial inquiry is ⋯ whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm."), quoting Hudson,

supra. Therefore, the key to determining if Plaintiff's Eighth Amendment claim is valid depends

upon whether the officer used force to subdue a recalcitrant prisoner or used the force to be

malicious. If corrections officers can use tear gas to quiet prisoners in their cells, then they can

certainly use mace, a more discriminating chemical weapon, to quell a disturbance. See Bailey

v. Turner, 736 F. 2d 963, 968 (4th Cir. 1984) ("'[t]ear gas has also been used to silence noisy,

misbehaving men while confined to their cells'"), quoting Landman v. Royster, 333 F. Supp. 621

(E.D. Va. 1971). Again the question is whether the chemical was used to punish maliciously or

to quell a disturbance. The fact that de minimis injury resulted is also highly relevant. Baldwin,

supra, at 839 (no Eighth Amendment if de minimis force resulted in de minimis injury).

The Seventh Circuit Court of Appeals issued an opinion in 1984 that is instructive on chemical weapons like the mace used by Sergeant Moore.  The opinion describes the effects of the chemical agent.

> Inmates will generally experience itching, irritation or discomfort for a period of time from its use, but washing with water will generally alleviate any discomfort. The procedure prescribed following the use of mace is to have the inmate shower, have his eyes rinsed out, and change his clothing. This usually gives immediate relief of any discomfort.

Soto v. Dickey, 744 F. 2d 1260, 1262 (7th Cir. 1984).  In that case, the institutional officials and officers considered mace to be more humane and effective than a "flesh-to-flesh confrontation with an inmate."  Id.  To avoid the use of mace requires corrections officers to prepare to enter a cell and physically overpower an inmate and handcuff him, which logically leads to serious injury to both inmates and corrections officers.  Id.  In Soto, the Seventh Circuit determined that when an inmate is hostile, yelling, and throwing liquids and that inmate refuses to come to the front of his cell to be handcuffed, the use of mace is appropriate.  Id, at 1264-65.  An inmate's history of violent behavior can justify use of force, including use of a chemical weapon, to obtain compliance. Id, at 1265.  The Seventh Circuit explained that there are good reasons for using a chemical agent instead of just leaving an inmate alone to calm down in his own good time.

> When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force. While experts who testified on behalf of the plaintiffs, suggested that rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way.

> Discipline in a maximum security correctional institution no doubt is difficult, but it is essential if the prison is to function and provide for the care, safety and security of the staff and inmates. Services to provide food, clothing, health, medical, cleaning, laundry and all other services would come to end

without discipline. Mob rule would take over. There would not, and could not, be any protection for staff or inmates. Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control. One can quickly reason what would happen in a maximum security prison without proper discipline.

The evidence establishes that it is the policy and practice at WCI [Waupun Correctional Institution] for officers to enter a cell to enforce compliance with orders. Inmates are and must be required to obey orders. When an inmate refuses to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger. One of the plaintiffs' expert witnesses agreed that the institution cannot permit an inmate to violate a rule or disobey an order and that action must be taken to compel compliance with a lawful order.

Soto v. Dickey, 744 F. 2d 1260, 1267 (7th Cir. 1984).   Also, the setting of precedent is a dangerous act for a court to do in this area because changing a court's opinion requires a higher court's action or a constitutional amendment, and such decisions cannot be easily revised in the light of further experience.  Id, at 1268-69.

Therefore, federal courts, "ill-equipped to deal with the increasingly urgent problems of prison administration and reform," have "adopted a broad hands-off attitude towards problems of prison administration so that those closest to the situation can make the best decisions, corrections officers and officials, without interference."  Id, at 1269.  As of the release of the above opinion in 1984, the U.S. Supreme Court had not determined that the use of chemical agents is per se a violation of the Eighth Amendment, whether the inmate is locked in his cell or not.   In Soto, the Seventh Circuit concluded that summary judgment was appropriate for defendants with regard to those claims of excess force if "the chemical agent was used for failure of the inmate to obey a direct order and the use of the mace was a reasonable response to the institution's legitimate security concern."  Id, at 1271.  See also Davis v. Cannon, 91 Fed. Appx. 327 (5th Cir. 2004) (unpublished and not precedent) (sprayed with mace after repeated refusal to

obey corrections officer's orders and left in cell where chemical agent still in the air not equivalent to excessive force).  But see Lawrence v. Bowersox, 297 F. 3d 727 (8th Cir. 2002) (shower of mace from large canister because inmate called out "Niggers get naked," but evidencing no threat to officers, was excessive); Treats v. Morgan, 308 F. 3d 868 (8th Cir. 2002) (sprayed with mace without verbal warning contrary to jail policy precluded summary judgment for defendant);  DeSpain v. Uphoff, 264 F. 3d 965 (10th Cir. 2001) (spraying of mace for no reason except for purpose of a practical joke by a corrections officer); Foulk v. Charrier, 262 F. 3d 687, 57 Fed. R. Evid. Serv. 1080 (8th Cir. 2001) (spraying of mace for no reason except for purpose of cruelty); Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996) (forbidding an inmate from washing mace off his face for several hours even though inmate was in four-point restraints on a metal bed for eight hours).  Defendants consider the above contrary cases to be distinguishable from the Plaintiff's case, and they also do not originate in the Eleventh Circuit.

Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002), is one of the two cases in which the Eleventh Circuit has determined that an officer's use of pepper spray in an arrest situation was clearly excessive force under § 1983.  However, that case involved a woman who

> "was under arrest for offenses of minor severity, handcuffed, secured in the back of a patrol car, and posing no threat to Officer Stanfield, herself or the public. In addition, the jail ride was four miles and relatively short. There also was a glass or plastic partition between Stanfield and Vinyard."

Vinyard, 311 F.3d at 1349.  Because the officer in Vinyard, who was more than six feet tall and weighed over 200 pounds, wanted Vinyard to stop yelling and using abusive language, he stopped his patrol car, stepped to the door where Vinyard (who weighed 130 pounds and whose hands were handcuffed behind her back and seated in the back seat) sat, opened the car door, pulled Vinyard's head back by her hair, and sprayed her with two or three bursts of pepper spray.

See also Reed v. City of Lavonia, 390 F. Supp. 2d 1347, 1360 (M.D. Ga. 2005) ("no reasonable officer would have believed that Reed posed an immediate threat to the officers (or members of the public) or was actively attempting to resist or evade arrest"). But see Reese v. Herbert, 2006 WL 1892026, *15 (N.D. Ga. 2006) (pepper spray sprayed to plaintiff's face in an attempt to aid officers' attempts to handcuff plaintiff, who was resisting application of handcuffs, does not constitute constitutional violation).

Because the facts of Vinyard and Reed are so different from the facts of this case, Sergeant Moore could not have used those opinions as precedent to become informed that his own conduct was unconstitutional. First, "a more culpable and subjective mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction" is required for Eighth Amendment claims in the confinement setting. See Vinyard, supra, 311 F. 3d at 1349 n 15. Second, "[w]hen fact-specific precedents are said to have established the law, a case that is fairly distinguishable from the circumstances facing a government official cannot clearly establish the law for the circumstances facing that government official; so, qualified immunity applies." See also Garrett v. Athens-Clarke County, Ga., 378 F.3d 1274 (11th Cir. 2004) (violently resisting arrestee died after being pepper-sprayed and tied in such a way that his body was bowed); McCormick v. City of Fort Lauderdale, 333 F.3d 1234 (11th Cir. 2003) (officer's use of pepper spray without warning on arrestee who had assaulted a woman was not excessive force under the circumstances, even though the assailant was not acting violently at the time of the use of the pepper spray).

The facts in Vinyard are clearly distinguishable from this case, particularly in the Eleventh Circuit's emphasis in Vinyard on the fact that the plaintiff was already confined and handcuffed in the back seat of the officer's vehicle, posed no threat to the defendant officer

during the short four-mile ride to the jail, and the mutual passing of insults between the officer and the plaintiff.  Vinyard, 311 F. 3d at 1355.  A distinction between these Fourth Amendment cases, denying an officer immunity, and those cases granting immunity to the officer is whether the plaintiff was resisting the arrest.  Adding the elements required for an Eighth Amendment violation in the confinement context, and there exists no case that could have reasonably informed Sergeant Moore or any other person in the administration of the Prentiss Griffith Detention Center that his actions were excessive.  Also, because Sergeant Moore used the mace in a confrontation with the Plaintiff/inmate, who posed a threat and refused to comply with a corrections officer's instruction, and because Plaintiff suffered no injury from the mace, it cannot be said that this was a case of obvious clarity, i.e., that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate the conduct was illegal, even in the total absence of case law.  Storck, supra, 354 F.3d at 1317.

### b.    Night Stick

Accepting for the moment Plaintiff's allegation that Sergeant Moore struck Plaintiff with his night stick for fifteen minutes, which Sergeant Moore denies occurred for that length of time, Plaintiff's Complaint still does not allege a constitutional violation under the circumstances.[5] Sergeant Moore was clearly acting to protect himself and others and to keep order in the jail, and Plaintiff was unfazed by the spray of mace.  (Ex. C, Moore aff., ¶¶ 6-9.)  Cases governing similar situations unanimously support Sergeant Moore's actions as a corrections officer, even if he had hit the Plaintiff for a lengthy period with his baton in order to restore order and stop the combative conduct of Plaintiff.

---

[5] Defendants contend that Plaintiff's allegation of a fifteen-minute beating by Sergeant Moore with his night stick, in the presence of at least three inmates and three other corrections officers, combined with Plaintiff's resultant lack of injuries is on its face fantastic.

> "These uses of force under these split-second circumstances do not 'evince[ ] such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.' Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). At this point in the encounter. '[p]rison officials had no way of knowing what direction matters would take.' id. at 323, either with respect to Davis's attempt to strike Lieutenant Harris or with respect to the officers' ability to bring him under control. 'Faced with such sudden wrongful and quite possible harmful conduct, the prison official on the scene does not have the luxury of hindsight and reflection.' Ort v. White, 813 F.2d 318, 322 (11th Cir. 1987)."

Davis v. Agosto, 89 Fed. Appx. 523, 527 (6th Cir. 2004) (corrections officers struck unsubmissive inmate with batons to subdue him). See also Lee v. Edwards, 101 F.3d 805 (2nd Cir. 1996) (plaintiff was knocked unconscious and had to be hospitalized); Martinez v. Stanford, 323 F.3d 1178 (9th Cir. 2003) (inmate beaten by several officers and struck by wooden baton several times, taken to infirmary); Pryer v. C.O. 3 Slavic, 251 F.3d 448 (3rd Cir. 2001) (two corrections officers beat inmate with batons and kicked him to the ground). However, the evidence does not support Plaintiff's version of what happened. Based on the pictures of Plaintiff and the affidavits of the nurses and corrections officers who dealt with Plaintiff, his bruising was not serious. (Ex. P, Plaintiff Medical Treatment Log, 6 February 2006; Ex. B, Russell County Sheriff Department Use of Force Report, 4 February 2006; Ex. Q, Pictures of Plaintiff's Bruising, 6 February 2006; Ex. G, Riley aff., ¶ 4; Ex. H, McInnis aff., ¶¶ 3-5; Ex. C, Moore aff., ¶¶ 8-10; Ex. F, Thigpen aff., ¶¶ 4-6.) Also, because there is no evidence establishing which bruises were caused by Sergeant Moore's night stick and which were caused by Plaintiff's previous incidents of fighting with other inmates, even if there was a serious bruise, we do not know that Sergeant Moore caused it.

With respect to the alleged use of the baton, counsel for Sergeant Moore has found cases in which an appellate court did not allow the corrections officer to use qualified immunity to

support summary judgment for that officer; however, those cases, supra, involved different facts, either the inmate suffered more severe injury or the corrections officer lacked the motive of self-defense or order of the corrections facility was not threatened in any way. Plaintiff was a known fighter with other inmates in the Detention Center, who was in isolation for fighting, and he suffered no apparent injury; therefore, Sergeant Moore's use of a night stick in a midnight security situation involving Plaintiff pouring water in other inmates' cells and acting threateningly does not rise to the level of excessive force.

The Eleventh Circuit has not issued opinions regarding baton use in the corrections context, but it has issued opinions dealing with the arrest situation. Defendants mention these opinions as examples recognizing that the corrections situation requires the Plaintiff to meet more and higher standards of proof in an excessive force claim. Vinyard, 311 F.3d at 1349. See Benton v. Hopkins, 2006 WL 2052858, *3 (11th Cir. 2006) (suspect pose[d] an immediate threat when he fell on one officer and other officer struck him with his baton). In Evans v. City of Neptune Beach, 61 F. Supp. 2d 1245 (M.D. Fla. 1998), again involving circumstances surrounding an arrest, a district court judge, affirmed by the Eleventh Circuit, explained in his opinion the role of the baton by an officer who chooses in his or her discretion to use force.

> Further, although the issue has not been directly discussed by the parties, it is important to consider the force utilized by Marshall and the manner in which he utilized it. Unlike a gun, a baton is a weapon that is generally less likely to be lethal. Further, common sense dictates that the lethality of a baton blow depends on the portion of the body it strikes: a blow to a large muscle mass, such as the thigh or buttocks is most likely to produce only pain and bruising; whereas a blow to a joint, such as the knee, elbow, could produce a fracture and a blow to the head or neck could very easily cause serious injury or death. In this case, according to Plaintiff, he was hit in the thigh several times and in the knee once, clearly non-lethal, and likely not permanently injurious, blows but, most importantly, a reasonable response to a reasonably perceived threat.

Evans, 61 F. Supp. 2d at 1252.  In this case, Plaintiff has not alleged that Sergeant Moore struck him in the head or neck or joint; he complains that he was bruised.

In Evans, supra, the trial court also explained what circumstances that the officer observed and used to justify his of the baton to deal with the situation.  The plaintiff was walking away from the combatants and "towards [the officer], not leaving his hands visible and still, shifting his stance backwards as the two neared."  Evans, 61 F. Supp. 2d at 1252.  Also, the officer in Evans was mistaken, thinking that the plaintiff was a combatant when he was not, while in this case, Plaintiff had a proven history of combativeness and was taking a combative attitude toward not only Sergeant Moore but also his fellow inmates (cursing, stating he had "nothing to lose," refusing to comply with instructions, pouring toilet water into other inmates' cells, etc.).

The Plaintiff has the burden of either identifying a case showing otherwise or proving that the conduct of Sergeant Moore was obviously illegal. The clearly established law cited above, makes the Plaintiff's burden insurmountable. The fact-specific nature of the Plaintiff's claims puts this case outside the realm of obvious clarity cases. See e.g., Campbell, 169 F.3d 1353, 1374 (11th Cir. 1999) (establishing five fact-specific areas to examine in determining whether force is used maliciously and sadistically); Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994) (establishing two fact-specific subjective and objective components for deliberate indifference). Furthermore, the clearly established law in the Eleventh Circuit indicates that Sergeant Moore's use of force was proper. See Garrett, supra, and McCormick, supra. The Plaintiff therefore cannot show that Sergeant Moore violated clearly established law.

Qualified immunity recognizes the need for public officials to be immune not only from liability but from the litigation process itself. The Eleventh Circuit began applying the

heightened pleading standard in qualified immunity cases against government officials "to weed out nonmeritorious claims." See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998). Hudson, supra, 503 U.S. at 6 (prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline").

The evidence clearly shows that Sergeant Moore has not violated a constitutional right of the Plaintiff. However, even if his acts could be construed as violating a right of the Plaintiff, Sergeant Moore has done nothing to cross any bright line of clearly established constitutional law. Therefore, he is entitled to qualified immunity.

### 3.    *A Fortiori* the Other Defendants are Entitled to Summary Judgment

In order to present a cognizable claim against a public official in his personal capacity, the language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights, or a breach of a duty imposed by state or local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986). Defendants Boswell, Alexander, Holland, and Bussey were not even present for the incident alleged by Plaintiff; therefore, Plaintiff must show that their actions or inactions created a policy or practice in the Prentiss Griffith Detention Center of excessive force or that there was deliberate indifference to Plaintiff's serious medical needs.

Plaintiff must show a causal connection between the Defendant and the alleged deprivation but may not do so using "respondeat superior." Brown v. Crawford, 906 F.2d 667,

671 (11th Cir. 1990).  To the extent that Plaintiff's claim against these Defendants is an attempt to hold them liable under a *respondeat superior* theory, Plaintiff's claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).  Because Sergeant Moore's conduct did not violate Plaintiff's constitutional rights and there is no evidence of a lack of training or supervision or improper policies by the supervisory staff of the Prentiss Griffith Detention Center, Plaintiff has shown no basis whatsoever for including these four Defendants in his Complaint.  Therefore, his claims against these Defendants should be dismissed.

### F.    Summary Judgment Standard

On a motion for summary judgment, the Court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A.

Miller, Federal Practice and Procedure § 2529, p. 299.[6]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc), quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## III.    CONCLUSION

Defendants, Sheriff Thomas Boswell, Chief Deputy William Alexander, Lieutenant Loetta Holland, Sergeant Samuel Pierce Moore, and Sergeant Danny Bussey, deny each and every allegation made by Plaintiff James Tyrone Edwards in the Complaint.  The Defendants have not acted in a manner so as to deprive the Plaintiff of any right to which he is entitled.

## IV.    MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat this Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this the 4th day of December, 2006.

> s/Winthrop E. Johnson
> WINTHROP E. JOHNSON, Bar No. JOH086
> Attorney for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  ccornelius@webbeley.com

---

[6] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this the 4th day of December, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

James Tyrone Edwards
AIS # 244 859
28779 Nick Davis Rd
Harvest, AL  35749

        **s/Winthrop E. Johnson**
        OF COUNSEL

# EXHIBIT A
## (Prentiss Griffith Detention Center Policies and Procedures Manual)

# RUSSELL COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **SECURITY** | **SECTION 7** |
| **Use of Force and Restraints** | **Title 7.09** |

## *Policy*

It is the policy of the Russell County Sheriff's Department that force and restraints be used in the Detention Center when it is necessary to do so in order to maintain appropriate control and management and provide for secure and orderly running of the Detention Center.

## *Procedure*

A.  *General*

1.  The Russell County Sheriff's Department will operate the Detention Center under the belief that control and management of inmates incarcerated there should be by sound scientific methods, stressing moral values and organized persuasion rather than depending upon physical force for effective management and control.

2.  When the use of force is necessary, only the minimum amount needed to accomplish the task at hand should be used.

3.  Physical force will be used only as a last resort. All reasonable attempts should be made to identify and utilize alternative means to deal with the situation.

4.  In providing for a safe and secure institution, the use of force will be divided into two categories, deadly force and non-deadly force.

5.  The Sheriff of Russell County, Alabama, will take action against any member of the Detention Center staff who uses physical force when the employment of such force is unjustified.

B.  *Deadly Force*

1.  Deadly force will be defined as force which is likely to cause death or serious bodily injury.

2.  Deadly force should be used only as a last resort and then only to prevent an act which could result in death or secure bodily injury to one's self or to another person.

C.    *Non-Deadly Force*

1.    Non-deadly force will be defined as force which normally will cause neither death nor serious bodily injury.  It may be in the form of physical force, or chemical agents.

2.    Physical force or chemical agents may be used in the following incidences:

   a.    Prior to the use of deadly force to prevent the commission of a felony, including escape or to prevent an act which could result in death or serious bodily harm to one's self or another person

   b.    In defending one's self or others against any physical assault

   c.    To prevent the commission of a misdemeanor

   d.    To prevent serious damage to property

   e.    To enforce Detention Center regulations

   f.    To prevent or quell a riot

D.    *Restraint*

1.    When any type of system of restraint is used for any purpose other than security during transportation, the Shift Supervisor must approve such use, unless there is an immediate and urgent need to restrain a person who is uncontrollably violent to himself, others, or property. In this case, the officer in charge of the situation may decide when to apply restraints, but must report this to his Shift Supervisor as soon as the situation has been stabilized.

2.    All restraints should be double checked in order to prevent tightening of the restraints and restriction of blood circulation.  An officer should be able to slide two fingers between restraints and the inmate's body.

3.    Inmates who are restrained should be closely monitored to ensure their safety and the restraints should be removed at the earliest possible time.

4.    Inmates who are restrained in their cells should be checked at least every 15 minutes and each check should be documented on an observation log. When necessary to protect the inmate's welfare, checks should be made at intervals of less than 15 minutes.

E.    _Chemical Agents_

1.    It is the policy of the Russell County Detention Facility that the use of Freeze Plus P Chemical dispensers to aid in subduing inmate(s) will be permitted only when the safety and security of the institution is threatened and when the inmate(s) cannot be approached without danger to themselves or to jail personnel.

2.    _Definitions_ - CN and CS chemical agents are members of a family of chemical compounds known as lacrimator because they produce a severe weeping or tearing of the eyes. While both CN and CS agents produce temporary irritation or disabling physical effects when in contact with the eyes or are inhaled in sufficient concentrations, they each have individual characteristics which govern their use in specific situations. Aerosol Chemical Dispensers are excellent no-lethal weapons if personnel understand the limitations as well as the advantages of their use.

      **CN CHEMICAL AGENT**: Quickly irritates the upper respiratory passages and eyes, causing a heavy flow of tears within seconds of exposure. In some individuals, this agent may produce nausea, especially when experienced in heavy concentrations.

      **CS CHEMICAL AGENT:** Produces immediate distress on contact with the eyes, the respiratory tract, and the skin, and will render the recipient incapable of purposeful aggressiveness while in contact with it, and for a period of ten to twenty minutes after he has been exposed to fresh air. Heavy concentrations may produce nausea, vomiting, depression, and extended recovery periods.

3.    GUIDELINES ON THE USE OF AEROSOL DISPENSERS:

      In the event that no reasonable alternatives are available to the use of chemical agents, the following guidelines will apply:

      A.    The health care professional should be contacted prior to the use of the chemical agent, except when the situation requires immediate action, to determine whether or not the inmate(s) have any physical or mental conditions that would make the use of the agent particularly dangerous. If the inmate has respiratory or cardiovascular

disease, chronic dermatitis, or psychosis, chemical agents may be extremely harmful and should be avoided in all but the most extreme situations. Also, if the inmate is already known to the psychologist and /or psychiatrist, either or both of these individuals should, when possible, be consulted regarding the best method of management.

B.     Chemical Agents should not be intentionally sprayed into the eyes, although a person must be purposely hit on the face with the agent if it is to be effective. Injury to the eyes could result from a direct spray, subsequently personnel should be given training in the use of the agent.

C.     Chemical Agents should not be used at ranges closer than approximately four (4) feet.

D.     The stream should be discharged in a short burst, approximately two seconds in duration.

E.     The inmate's eyes will be flushed with cold water within five minutes after exposure. All exposed skin surfaces should be washed and contaminated clothing exchanged.

F.     In all cases where Aerosol Chemical Dispenser is used, a full written report of the circumstances shall be submitted to the Sheriff on an Incident Report.

F.     *Incident Report*

1.     After the use of force of any type, members of the Detention Center staff will ensure that immediate notification is given to the Sheriff, Chief Deputy, or Administrator of Corrections.

2.     In order to give such notification, a written Incident Report by the officers involved shall be filed with the Sheriff, Chief Deputy, or Administrator of Corrections immediately after the incident. The Incident Report shall include:

a.     An accounting of the events leading to the use of force

b.     A precise detailed report of the incident and the reasons for employing force

c.     A description of the weapons or agents use and the manner in which they were used

d.     A description of the injuries suffered, if any

e.    Whether medical treatment was offered or requested

f.    A description of any medical treatment given

g.    A list of all participants and witnesses to the incident


**By Order of:**


_____

**Thomas F. Boswell, Sheriff**

**Effective Date:** _____


**Reference Form:**        **10**    **Incident Report**

# EXHIBIT B

**(Russell County Sheriff Department
Use of Force Report, 4 February 2006)**

# RUSSELL COUNTY SHERIFF DEPARTMENT

## USE OF FORCE REPORT

DATE: 2-4-06 _____ TIME: 0005 _____ CASE # _____

LOCATION OF INCIDENT: Male POD II / L-max unit _____

SUSPECT'S NAME: James Edward _____ SEX M  RACE B  DOB 8-14-80

ADDRESS: 2339 Ft. Benning Rd. Apt 201 Col. Ga 31906

CHARGE(S): Burglary 3rd (CG)-05 / Poss Cont Subst. / Poss Marij 2nd / Criminal Mischief 3rd

TYPE OF INCIDENT: Disorderly Conduct _____

TYPE OF FORCE USED: ( ✓ ) CHEMICAL WEAPON    ( ✓ ) HANDS ON
( ) OTHER RESULTING IN INJURY

IF CHEMICAL EFFECT: ( ✓ ) IMMOBILIZED SUSPECT    ( ✓ ) NO EFFECT

WAS SUSPECT INSTRUCTED HOW TO REMOVE THE CHEMICAL ( ✓ ) YES  ( ) NO  ( ) REFUSED

INJURY TYPE TO SUSPECT: n/A

HOSPITAL: n/A _____ DOCTOR: N/A

INJURY TYPE TO OFFICER: n/A

WITNESSES:

c/o I. Thigpen
NAME _____ ADDRESS _____ PHONE

c/o B. Mathis
NAME _____ ADDRESS _____ PHONE

ANY RELATED REPORTS: ( ) I/O REPORT    ( ) ARREST REPORT

OFFICER USING FORCE:

NAME: Sgt. P. Moore _____ ID # 16

SUMMARY OF INCIDENT TO BE COMPLETED BY OFFICER USING FORCE: On 2-4-06 approx. 0005 Hr. Sgt. P. Moore was dispatched to Male POD II / L-max unit. Upon arrival Sgt. Moore met with c/o S. Buredin. c/o Buredin stated he observed inmate James Edward dumping water in cells L-10-20 after Sgt. Moore ordered him to clean up the water. Sgt. Moore, I. Thigpen and B. Mathis entered L-max unit and ordered inmate Edward to drop the mop and go down on the ground, but he refused stating Fuck You Sgt.

Moore [ struck the Police ]. Sgt. Moore then applied a one second stream of Freeze Plus P] chemical spray, but the spray had no effect. Sgt. Moore then pulled his stick and struck inmate Edward several times until he complied. Sgt. Moore advised inmate Edward on how to remove the chemical. Sgt. Moore, I. Thiagpang and B. Mathis escorted inmate Edward to holding cell three for disciplinary. No further incident, no injuries, end of report - Sgt. [illegible signature]

SUPERVISORS NAME: _____ ID# _____

SUPERVISORS REPORT OF INCIDENT: _____

_____

_____

_____

_____

_____

_____

NOTE TO SUPERVISOR:        This report must be completed and copies placed on the desk of the Sheriff and Chief Deputy immediately.  A report must be filed by each officer involved in the Use of Force incident.

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|---|---|---|---|---|
| J & J 5750 | | 3/03/2006 | 0/00 | SGT Moore |

| OFFENDER | CELL # | TYPE OF INCIDENT/OFFENSE |
|---|---|---|
| | | Failure to Comply |

| WITNESSES | CELL # | WITNESSES ( OFFICERS) |
|---|---|---|
| 1. | | SGT P. Moore |
| 2. | | c/o J. Thigpen |
| 3. | | |

**NARRATIVE:**

On 02/03/06 While head count c/o maths & c/o Thigpen Notice that water was coming out of 2 man pop then went to see what has happend. J-3 James Edwards has flooded out his Cell. SGT Moore & c/o Thigpen, c/o maths Responded to a call from male pop # 2 SGT Moore Instructed J-3 James Edwards to mop up the water, his was given mops and buckets. prior to 00.05 On about 3/3/2006 SGT Moore Recieved Another call from male pop # c/o Buedin stated that J-3 James Edwards had threw water into cell # 19 & 20 SGT Moore, c/o Thigpen & c/o maths Entered 2-man SGT Moore Instructed J-3 Edwards to Get on the Ground. J-3 Edwards Refused & SGT Moore then Applied A 1-3 second burst of freezet & J-3 Edwards became hostile so SGT Moore then struck J-3 Edwards serveral times with his stick. J-3 James Edward was then Escorted up to A holding Cell while handcuffed And placed under Observation.— End Of Statement

c/o Thigpen

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|---|---|---|---|---|
| RCJ 5750 | | 3/3/2006 | 0100 | SGT. Moore |

| OFFENDER | CELL # | TYPE OF INCIDENT/OFFENSE |
|---|---|---|
| James Edwards | L-Max 23 | Failed to Comply |

| WITNESSES | CELL # | WITNESSES ( OFFICERS) |
|---|---|---|
| **1.** | | SGT. P. Moore |
| **2.** | | C/o I. Thigpen |
| **3.** | | |

**NARRATIVE:**

On 3/2/2006, I C/o Mathis, C/o Thigpen and SGT. Moore responded to a flooded cell in L-Max. SGT. Moore then instructed J3 James Edwards to mop up the water and SGT. Moore provided four mop buckets prior to 00:05 on 3/3/2006 when a call was received from Male Pod I, C/o Burden, that J3 Edwards was throwing water in cells # 10 and # 20. SGT. Moore, C/o Mathis, C/o Thigpen then entered L-Max and SGT. Moore instructed J3 Edwards to get on the ground. J3 Edwards refused and SGT. Moore applied a 1 second burst of Freeze + P and J3 Edwards became hostile so SGT. Moore then struck J3 Edwards several times with the stick. The J3 was then placed in handcuffs and escorted to Holding cell # 3 where he was placed on further observation. End of Report.

Brandon Mathis
I 49

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|---|---|---|---|---|
| RCJ 5750 | | 4/Feb/06 | 0005 | SGT MOORE |

| OFFENDER | CELL # | TYPE OF INCIDENT/OFFENSE |
|---|---|---|
| James Edwards | | Failure to Comply |

| WITNESSES | CELL # | WITNESSES ( OFFICERS) |
|---|---|---|
| 1. | | SGT P. Pibble |
| 2. | | C/O I. Thigpen |
| | | C/O B. Mathis |
| 3. | | |

**NARRATIVE:**

On Feb 2, 06 while conducting head count C/O Thigpen and C/O Mathis noticed that inmate Edward, James in L-23 was flooding his room. Officer Thigpen and Mathis handcuffed him a removed him from his cell until the mop buckets arrived from the other 13 Edward James was then ordered to clean up all the water in L max After doing that I C/O Burdin witnessed Edward, James dump a bucket of mop water into cells L-10 and L-20. I then called for assistance from SGT Moore, C/O Thigpen and C/O Mathis. while in L max I heard SGT Moore give an order to the inmate, but the inmate said something and didn't comply to the order that was given so I saw SGT Moore give a short spray of freeze to the inmate and he still didn't go down so SGT Moore struck the inmate several times with his stick.

Edward James was then handcuffed by C/O Mathis again and escorted to the front of the jail. It was later reported to me that he was in a holding cell.

*Nothing Follows*

C/O Burdin

# EXHIBIT C
## (Affidavit of Sgt. Samuel Pierce Moore)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
OPELIKA DIVISION

JAMES TYRONE EDWARDS,    )
    )
    Plaintiff,    )
    )
v.    )    Civ. Act. No.  3:06-CV-00740-MHT-SRW
    )
SERGEANT PIERCE MOORE,    )
et al.,    )
    )
    Defendants.    )

## AFFIDAVIT OF SAMUEL PIERCE MOORE

STATE OF ALABAMA    )
    )
COUNTY OF RUSSELL    )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Samuel Pierce Moore, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Pierce Moore. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Deputy Sheriff by the Russell County Sheriff's Department since 1999. I began work for the Sheriff's Department in the Russell County Jail but have also worked as a patrol officer for the Sheriff's Department. I am presently a Jail Sergeant and have been one since July 2005.

2.    I am familiar with the Plaintiff James Tyrone Edwards due to his incarceration in the Prentiss Griffith Detention Center.

3.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.    I am familiar with the Prentiss Griffith Detention Center Policy and Procedures Manual. The Russell County Jail Policy and Procedures Manual states our policy regarding Use of Non-Deadly Force in Title 7.09.C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Center Regulations. Use of Non-Deadly Force in Title

7.09.C.2.  Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or expandable stick, then deadly force for self-defense or to protect others.  Memorandum on Use of Force Continuum, 22 September 1999.  I am also familiar with the Sheriff's Department General Order, dated 12 April 1996, on "Use of a Chemical Weapon."  I have been trained in the use of chemical weapons, like mace and Freeze Plus.

5.  Regarding the incident in plaintiff's Complaint, and as I explain more fully below, I acted in self-defense and because Plaintiff, who by acting threateningly, refusing orders, and putting toilet water in other inmates' cells, was violating the rules of the Prentiss Griffith Detention Center.  Based on what I witnessed and what I did on 3 February 2006, I followed the steps of the Prentiss Griffith Detention Center Rules with regard to the Plaintiff.

6.  Plaintiff had a problem fighting other inmates, and on 3 February 2006 he was in isolation for fighting.  On that date at approximately 11:00 pm, Plaintiff flooded his cell with toilet water because he was upset that we would not transfer him back to general population.  I gave him a mop and buckets to clean up the mess, but approximately an hour later, I received a call that plaintiff was pouring water through the slot in his upper floor cell door into other inmates' cells.

7.  I asked Plaintiff why he was flooding other inmates' cells, and he responded hostilely, demanding to know when he would be moved, yelling obscenities, and refusing orders to get down on the floor.  I issued that order to the Plaintiff, who was holding a mop in his hand, in order to make his cell safer for entrance by corrections officers like myself.  The water on the floor was no deeper than one half inch.  Plaintiff utterly refused to comply with my orders.

8.  I entered Plaintiff's cell, giving him a one-second burst of mace (Freeze Plus), and he went down on the floor.  Plaintiff blocked the spray with his hand.  However, Plaintiff did not place his hands behind his back for handcuffing as ordered and was still combative and hostile.  Officers Brandon Mathis and Iva Thigpen had arrived to provide assistance, and when we moved toward him to handcuff him, he rolled over on his back.  Plaintiff grabbed my stick, which I had removed in preparation of violent action by Plaintiff, and cursed at us, using words like "Fuck."  I had to grab my night stick back.  Plaintiff stated that he had "nothing to lose."  I struck Plaintiff three times with my night stick.

9.              Two officers assisted in restraining Plaintiff, while Officer Thigpen handcuffed him. Plaintiff was still combative during and after the handcuffing, stating "Fuck y'all" and that he "didn't have shit to lose." Following standard procedure, we took Plaintiff to the Infirmary where we instructed and assisted him in getting the mace off. Plaintiff was not injured to the point that we needed to call the on-call nurse. If a nurse had been present to see Plaintiff, it would not have been wise because even after all he had been through, Plaintiff was still combative and hostile. Plaintiff did not ask to see a nurse.

10.           As required by Prentiss Griffith Policies and Procedures, I filed a Russell County Sheriff's Department Use of Force Report regarding the incident.

11.           I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

SAMUEL PIERCE MOORE

**SWORN TO** and **SUBSCRIBED** before me this ___ day of November 2006.

NOTARY PUBLIC
My Commission Expires: 6/25/08

# EXHIBIT D
**(Affidavit of Lieutenant Loetta Holland)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### OPELIKA DIVISION

JAMES TYRONE EDWARDS,    )
                             )
      Plaintiff,           )
                             )
v.                          )     Civ. Act. No. 3:06-CV-00740-MHT-SRW
                             )
SERGEANT PIERCE MOORE,   )
et al.,                    )
                             )
      Defendants.      )

## AFFIDAVIT OF LOETTA HOLLAND

STATE OF ALABAMA       )
                            )
COUNTY OF RUSSELL     )

     **BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Loetta Holland, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Loetta Holland. I am over the age of nineteen and competent to make this affidavit. I am the Jail Administrator of the Prentiss L. Griffith Detention Facility in Russell County, Alabama.

2. I had no personal involvement in any of the events surrounding the incident alleged in Plaintiff's Complaint.

3. I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4. I am responsible for ensuring that the Detention Center's staff follows the policies and procedures of the Prentiss Griffith Detention Center. The Prentiss Griffith Detention Center Policy and Procedures Manual states our policy regarding Use of Non-Deadly Force in Title 7.09. C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Facility Regulations. Use of Non-Deadly Force in Title 7.09.C.2. Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or

expandable stick, then deadly force for self-defense or to protect others. Memorandum on Use of Force Continuum, 22 September 1999. I am also familiar with the Sheriff's Department General Order, dated 12 April 1996, on "Use of a Chemical Weapon."

5.    I was not present when Sergeant Moore used Freeze Plus and his night stick to subdue Plaintiff on 3 February 2006, but based on my knowledge of the facts involved, I conclude that no excessive force was used against Plaintiff.

6.    To my knowledge, Plaintiff did not appeal the decision by the Prentiss Griffith Detention Facility regarding Plaintiff's Grievance filed after this incident.

7.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_____
LOETTA HOLLAND

**SWORN TO** and **SUBSCRIBED** before me this 9 day of November 2006.

_____
NOTARY PUBLIC
My Commission Expires: 6/25/08

# EXHIBIT E
**(Affidavit of Sergeant Danny Bussey)**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
OPELIKA DIVISION

| | | |
|---|---|---|
| JAMES TYRONE EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No.  3:06-CV-00740-MHT-SRW |
| | ) | |
| SERGEANT PIERCE MOORE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF DANNY BUSSEY

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF RUSSELL | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said

County and State at large, personally appeared Danny Bussey, who being known to me

and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Danny Bussey.  I am over the age of nineteen and competent to make this affidavit.  I have been employed as a Corrections Officer by the Russell County Detention Facility since 17 March 1997.  I am the Deputy Warden of the Prentiss Griffith Detention Center.  I am also a Custodian of the Records of the Prentiss Griffith Detention Center and certify that the copies of the rules, regulations, orders, policies, and booking documents regarding Plaintiff and relevant to this case are accurate copies of the official documents of the Prentiss Griffith Detention Center.

2.      While not personally acquainted with Plaintiff, I am familiar with the Plaintiff James Tyrone Edwards due to his incarceration in the Prentiss Griffith Detention Center.  Based on Prentiss Griffith Detention Center records, Plaintiff was incarcerated there from 18 May 2005 to 24 February 2006.

3.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.	I am familiar with the Prentiss Griffith Detention Center Policy and Procedures Manual. The Prentiss Griffith Detention Center Policy and Procedures Manual states our policy regarding Use of Non-Deadly Force in Title 7.09.C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Center Regulations. Use of Non-Deadly Force in Title 7.09.C.2. Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or expandable stick, then deadly force for self-defense or to protect others. Memorandum on Use of Force Continuum, 22 September 1999. I am also familiar with the Sheriff's Department General Order, dated 12 April 1996, on "Use of a Chemical Weapon."

5.	I was not present when Sergeant Moore used Freeze Plus and his night stick to subdue Plaintiff on 3 February 2006.

6.	Lieutenant Holland, the Warden, regularly sends Grievance Forms to me for response. Lieutenant Holland passed Plaintiff's Grievance Form regarding the incident that is the subject of this legal action to me for the Detention Center's response. On 7 February 2006, I responded to Plaintiff's Grievance.

7.	In my written response to Plaintiff, I informed him that I did not find Sergeant Moore's use of force on 3 February 2006 to be excessive or unwarranted because of Plaintiff's decision to flood his cell and other inmates' cells and refusal to comply with Sergeant Moore's orders.

8.	If dissatisfied with my decision, inmates can appeal my decision regarding their Grievances to Lieutenant Holland, and then they can appeal to the Sheriff if dissatisfied with Lieutenant Holland's decision. The Sheriff is the final level of appeal regarding Grievances by inmates of the Prentiss Griffith Detention Center. Plaintiff did not appeal my decision to Lieutenant Holland or anyone else. Nor did he inform me that he had not received my response or tell me he wanted to appeal the decision, even though I spoke with Plaintiff not long after the incident. I would also have passed Plaintiff's isolation cell several times a day between 19 February 2006 and 24 February 2006, so Plaintiff could have told me of any objection to my response to his Grievance or any problem he had with the process.

9.	After receiving Plaintiff's Grievance, I ensured that Plaintiff saw a nurse, which would have been within three days of the incident. Plaintiff had had several fights before the incident alleged in Plaintiff's Complaint while in the Prentiss Griffith Detention Center. Therefore, it would be difficult for me to determine what

bruises, if any, that Plaintiff may have incurred from Sergeant Moore's night stick.

10.      I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

**DANNY BUSSEY**

**SWORN TO** and **SUBSCRIBED** before me this ___ day of November 2006.

NOTARY PUBLIC
My Commission Expires: ___

# EXHIBIT F
## (Affidavit of Corrections Officer Thigpen)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
OPELIKA DIVISION

| | | |
|---|---|---|
| **JAMES TYRONE EDWARDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Act. No. 3:06-CV-00740-MHT-SRW** |
| | ) | |
| **SERGEANT PIERCE MOORE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**AFFIDAVIT OF IVA THIGPEN**</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF RUSSELL** | ) |

   **BEFORE ME**, the undersigned authority and Notary Public in and for said

County and State at large, personally appeared Iva Thigpen, who being known to me and

being by me first duly sworn on oath deposes and says as follows:

1.    My name is Iva Thigpen. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Corrections Officer by the Prentiss Griffith Detention Center for two and a half years.

2.    I am familiar with the Plaintiff James Tyrone Edwards due to his incarceration in the Prentiss Griffith Detention Center.

3.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.    I am familiar with the Prentiss Griffith Detention Center Policy and Procedures Manual. The Russell County Jail Policy and Procedures Manual states our policy regarding Use of Non-Deadly Force in Title 7.09.C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Center Regulations. Use of Non-Deadly Force in Title 7.09.C.2. Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or expandable stick, then deadly force for self-defense or to protect

others. Memorandum on Use of Force Continuum, 22 September 1999. I am also familiar with the Sheriff's Department General Order, dated 12 April 1996, on "Use of a Chemical Weapon."

5.      I was present when Sergeant Moore used Freeze Plus and his night stick to subdue Plaintiff on 3 February 2006. Corrections Officer Mathis and I came to assist with the problems created when Plaintiff poured toilet water into other inmates' cells. Plaintiff was riled up and for others' safety, had to be told to get down. Sergeant Moore had to spray Plaintiff with one blast of mace and use his night stick to keep Plaintiff from threatening action against us. While Sergeant Moore and Officer Mathis held Plaintiff, I handcuffed him. Plaintiff still did not calm down during or after that process.

6.      We took Plaintiff to the Jail Infirmary where we instructed him on how to wash the mace off. He was not injured.

7.      I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

IVA THIGPEN

**SWORN TO** and **SUBSCRIBED** before me this ___ day of November 2006.

NOTARY PUBLIC
My Commission Expires: 6\25\08

# EXHIBIT G
## (Affidavit of Nurse Riley)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
OPELIKA DIVISION

JAMES TYRONE EDWARDS,   )
                       )
     **Plaintiff,**         )
                       )
**v.**                    )     Civ. Act. No. 3:06-CV-00740-MHT-SRW
                       )
**SERGEANT PIERCE MOORE,** )
**et al.,**                 )
                       )
     **Defendants.**       )

## <u>AFFIDAVIT OF TINA RILEY</u>

STATE OF ALABAMA      )
                       )
COUNTY OF RUSSELL    )

     **BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Tina Riley, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Tina Riley. I am over the age of nineteen and competent to make this affidavit. I am a Nurse who provides medical care to inmates at the Prentiss Griffith Detention Center.

2.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

3.    I was not present when the incident of 3 February 2006 and alleged in Plaintiff's Complaint occurred. I saw Plaintiff on 6 February 2006. The fact that there exists no record of a nurse seeing Plaintiff on the night of 3 February 2006 or early morning of 4 February 2006 means that either Plaintiff was not seen or the visit with the nurse was not recorded.

4.    When I saw Plaintiff on 6 February 2006, I did not find any serious injuries, only bruising. I gave Plaintiff Naproxin, an anti-inflammatory pain reliever, to be taken two times a day for five days.

5.        I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

TINA RILEY

**SWORN TO** and **SUBSCRIBED** before me this $\underline{9}$ day of November 2006.

NOTARY PUBLIC
My Commission Expires: $\underline{6/25/08}$

# EXHIBIT H
## (Affidavit of Nurse Practitioner Janice McInnis)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF ALABAMA

### OPELIKA DIVISION

JAMES TYRONE EDWARDS, )

)

   Plaintiff, )

)

v.   )   Civ. Act. No. 3:06-CV-00740-MHT-SRW

)

SERGEANT PIERCE MOORE, )

et al.,   )

)

   Defendants. )

### AFFIDAVIT OF JANICE MCINNIS

STATE OF ALABAMA )

)

COUNTY OF RUSSELL )

BEFORE ME, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Janice McInnis, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Janice McInnis. I am over the age of nineteen and competent to make this affidavit. I am a Nurse Practitioner who provides medical care to inmates at the Prentiss Griffith Detention Center.
2. I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.
3. I was not present when the incident of 3 February 2006 and alleged in Plaintiff's Complaint occurred. I have checked the medical records for the Prentiss Griffith Detention Center for the night of 3 February 2006 and early morning of 4 February 2006, and there are no records of my having seen Plaintiff after the incident he alleges in his Complaint. I do not remember seeing Plaintiff at that time, and I would have recorded such a visit if it had happened.
4. I was at the Prentiss Griffith Detention Center on 4 February between 8:00 pm and 9:00 pm taking blood pressure readings of inmates. Plaintiff had

access to treatment from me at that time if he had asked for it; however, he did not ask for it. I also did not receive any medical request forms from Plaintiff regarding any problems or injuries from the previous 24 hours. I am also on-call 24 hours a day, something the inmates know based on word-of-mouth in the jail.

5. I reviewed pictures of the Plaintiff on 6 February 2006. I did not find any serious injuries, only bruising. After 72 hours, bruising will be at its maximum and most visible. If there had been serious bruising I would have seen it at that time. I saw no serious injuries.

6. I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

JANICE MCINNIS

**SWORN TO** and **SUBSCRIBED** before me this _9_ day of November 2006.

NOTARY PUBLIC Judy Pam O'Neal

My Commission Expires: 6/25/08



# EXHIBIT I
## (Affidavit of Deputy Chief William Alexander)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
OPELIKA DIVISION

JAMES TYRONE EDWARDS,    )
                         )
      Plaintiff,       )
                         )
v.                      )    Civ. Act. No. 3:06-CV-00740-MHT-SRW
                         )
SERGEANT PIERCE MOORE,    )
et al.,                   )
                         )
      Defendants.     )

## AFFIDAVIT OF WILLIAM ALEXANDER

STATE OF ALABAMA       )
                         )
COUNTY OF RUSSELL    )

      BEFORE ME, the undersigned authority and Notary Public in and for said

County and State at large, personally appeared William Alexander, who being known to

me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is William Alexander. I am over the age of nineteen and competent to make this affidavit. I have been the Chief Deputy Sheriff's Department of Russell County for eight years.

2.      I had no personal involvement in any of the events surrounding the incident alleged in Plaintiff's Complaint.

3.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.      I am familiar with the Prentiss Griffith Detention Center Policy and Procedures Manual. The Prentiss Griffith Detention Center Policy and Procedures Manual state our policy regarding Use of Non-Deadly Force in Title 7.09.C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Center Regulations. Use of Non-Deadly Force in Title 7.09.C.2. Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or expandable stick, then deadly force for self-defense or to protect others. Memorandum on Use of Force Continuum, 22 September

1999. I am also familiar with the Sheriff's Department General Order, dated 12 April 1996, on "Use of a Chemical Weapon."

5.     I was not present when Sergeant Moore used Freeze Plus and his night stick to subdue Plaintiff on 3 February 2006. Based on my knowledge of the facts of this incident, I am unaware of any excessive force being used against Plaintiff.

6.     To my knowledge, Plaintiff did not appeal the decision by the Prentiss Griffith Detention Center regarding Plaintiff's Grievance filed after this incident.

7.     I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

*William Alexander*

WILLIAM ALEXANDER


**SWORN TO** and **SUBSCRIBED** before me this _9_ day of November 2006.


*Judy Pam O'Neal*

NOTARY PUBLIC
My Commission Expires: _6/25/08_

# EXHIBIT J
## (Affidavit of Sheriff Tommy Boswell)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
OPELIKA DIVISION

| | | |
|---|---|---|
| JAMES TYRONE EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No.  3:06-CV-00740-MHT-SRW |
| | ) | |
| SERGEANT PIERCE MOORE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF TOMMY BOSWELL

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF RUSSELL | ) |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Tommy Boswell, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Tommy Boswell. I am over the age of nineteen and competent to make this affidavit. I am the Sheriff of Russell County.

2. I had no personal involvement in any of the events surrounding the incident alleged in Plaintiff's Complaint.

3. I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4. I am responsible for promulgating the policies and procedures of the Prentiss Griffith Detention Center. The Prentiss Griffith Detention Center Policy and Procedures Manual state our policy regarding Use of Non-Deadly Force in Title 7.09.C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Center Regulations. Use of Non-Deadly Force in Title 7.09.C.2. Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or expandable stick, then deadly force for self-defense or to protect others.  Memorandum on Use of Force

Continuum, 22 September 1999. I am also familiar with the Sheriff's Department General Order, dated 12 April 1996, on "Use of a Chemical Weapon."

5.      I was not present when Sergeant Moore used Freeze Plus and his night stick to subdue Plaintiff on 3 February 2006. Based on my knowledge of the facts of this incident, I am unaware of any excessive force being used against Plaintiff during this incident.

6.      To my knowledge, Plaintiff did not appeal the decision by the Prentiss Griffith Detention Center regarding Plaintiff's Grievance filed after this incident.

7.      I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

**TOMMY BOSWELL**

**SWORN TO** and **SUBSCRIBED** before me this 9 day of November 2006.

NOTARY PUBLIC
My Commission Expires: 6\25\08

# EXHIBIT K
## (Inmate Booking Documents)

```
10/05/06                    Russell County Jail                       319
07:03                       Main Names Table:            Page:      1
```

Name Number:    225028
Last: Edwards              Fst: James          Mid: Tyrone
Addr  2339 Fort Benning Road APT 201    Prev: 2339 Fort Benning Road AP
City: Columbus         ST: GA  Zip: 31903        Columbus      , GA 31907
Deceased:    /  /      Alias For:
Personal Identification
DL Numbr: 980947172        Name Typ:            SSN: 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
DL State: GA   Class:         Image:       Local ID:
Home Tel: (706)393-3397                     State ID:
Work Tel: (   )   -                        FBI Number:
Physical Description
   DOB: 08/14/80   26 yrs  Eyes: BRO  Brown      Cmplxn:
   Race: B Black       Glasses:                  Speech:
   Sex: M Male          Hair: BLK  Black          Teeth:
Height: 5'10"  178 cm   Hstyle:                   Build:
Weight: 145lbs  66 kg   Beard:                   Ethnic:
Traits                  SMT:               /  /
MO:
Alert Codes:
   Comments: USES SSN: 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
 Premis:     Xtra:    Visited Inmates:    Had Visitors:    Merge:

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

INVOLVEMENTS:
Type  Record #     Date      Description              Relationship
 JM  050518002   02/24/06   Burglary 1st-Force-Residence+  *Arrested
 CP  060100551   01/31/06   Defendant Order          *Served, Returned to
 LW  05PL14261   05/19/05   Drugs                      Offender
 LW  05PL14258   05/18/05   Accident, PI             DRIV/OWN/VEH#1
 LW  05PL14262   05/18/05   Burglary                  Offender/Arrested
 VH      21564   05/19/05   <No access allowed>      *Owner
 PR  P00134848   05/19/05   <No access allowed>      *Owner
 PR  P00134849   05/19/05   <No access allowed>      *Owner
 PR  P00134850   05/19/05   <No access allowed>      *Owner

Name history:
                      Name/Address/Phone History
Expired   Address        City      ST Zip  Phone  Last Name   First   M
06/14/05  2339 Fort Benn Columbus  GA 31907 (706)39 Edwards   James   Ty
05/24/05  2339 Fort Benn Columbus  GA 31901 (706)39 Edwards   James   Ty


Additional Name Information:

```
Name ID Number:      225028
  Last: Edwards                     First: James          Mid: Tyrone
  Addr& 2339 Fort Benning Road APT 201        Phone: (706)393-3397
  City: Columbus          ST: GA  Zip: 31903   DOB: 08/14/80    SSN: 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

Birth City: Columbus          State: GA        Education: 12 years
Citizenshp: US    United States                Shoe Size: 10
  Religion: ISL Islamic                        Cover Size:
   Marital: N  Single-Never Married            Misc. Size:
    School:                                    Commissary:
   Contact: Dianne Brookens              Relationship: MO Mother
   Address: same as inmate                      Phone: (706)393-3397
  Employer:                          Employer Phone: (   )   -
   Address:
  Job Desc:                                Job Phone: (   )   -
Job Locatn:                              Date Hired:    /  /
Supervisor:                        Super Work Phon: (   )   -
                                   Super Home Phon: (   )   -
                                       Prob Officer:
 Probation:                               Attorney:
    Henry:                    NCIC Print:
```

```
Booking Number: 050518002
Agency: JAIL
+- Inmate:    225028 -------------------------------------------------------+
| Lst: Edwards              Fst: James           Mid: Tyrone                |
| DOB: 08/14/80  SSN: 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 Adr& 2339 Fort Benning Road APT 201       |
| Rac: B Sx: M Male (706)393-3397  Cty: Columbus      ST: GA Zip: 31903     |
+--------------------------------------------------------------------------+
   Assigned Housing:     -     -     -     -
   Current Location:     -     -     -     -      Belong:    Temp:
       Booking Date: 05/18/05

   Property Withheld:             Initial Inmate Assessment:
   Medical Screening:                    Medical History:
     Risk Assessment:             Required Medications:
   Arrest & Offenses: 050518002          Property Issued:
       Cash Account:                          Holds: 050518002
   Jail Log Records: 050518002          Scheduled Events:
     Medical Events:             Scheduled Commitments:
     Intake/Release: 050518002   Active:    2       Here:      0

Comments:

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =


INVOLVEMENTS:
Type   Record #     Date      Description                    Relationship
 LW   05PL14261   05/18/05    Drugs                          *Arrest/Offense
 LW   05PL14262   05/18/05    Burglary                       *Arrest/Offense
 NM    225028     02/24/06    Edwards, James Tyrone          *Arrested

Offenses Information:


+- Arrest Number:    ----------------------------------------------------+
| Time/Date: 01:38:00 05/18/05   Agency: PCPD          Age at Arst:      |
|  Location: SEALE RD @ 16TH CT  Officer: Roberts, A.  Arrest Type: TRAF |
|     Area: J006                 Reference: 05PL14261  Disposition: ADH  |
+-----------------------------------------------------------------------+
  Bonds/Fees/fines/Rest/Other:       Sentenced:     Offense Number: 050006121
      Local ID:                            TN Suffix:
       Statute: 13A-7-5   2202 Burglary 1st-Force-Re  NCIC: 2202
       Offense: 2202 Burglary 1,2,3 Force/Reside  Reference: WR-2005-001412
  Offense Type: STAT State Statute               Area: J006
   Crime Class: AF   Class "A" Felony    Related Incident: 05PL14262
  Jurisdiction: ALL  All Alabama Jurisdic     Entry Code: CRIM
      Location: Phenix City                    Court Code: RCD1
      Occurred: 07:20:29 05/18/05          Judicial Status: PRP
  Billing Agncy: RCSO                  Prosecutor Agency: RCDC
   Billing Beg: 07:21:33 05/18/05           Disposition:      Date:   / /
           End: 22:51:20 02/23/06       Sentencing Judge:
  Alcohol/Drug: No Alc/Drug Inv        Sent. Components:
  Comments: (See below)                       Sentenced:    :  :    / /
GJ-05-614.00
10-26-05 Charge was change to Bulgary 3rd.
```

```
+- Arrest Number:     ----------------------------------------------------+
| Time/Date: 01:38:00 05/18/05     Agency: PCPD        Age at Arst:       |
|   Location: SEALE RD @ 16TH CT   Officer: Roberts, A.  Arrest Type: TRAF |
|     Area: J006                   Reference: 05PL14261  Disposition: ADH  |
+-------------------------------------------------------------------------+
Bonds/Fees/fines/Rest/Other:           Sentenced:        Offense Number: 050006122
      Local ID:                          TN Suffix:
      Statute: 13A-12-212 3532 Cocaine-Possess      NCIC: 3532
      Offense: 3532 Cocaine-Possess           Reference: WR-2004-001374
 Offense Type: STAT State Statute              Area: J006
  Crime Class: CF   Class "C" Felony    Related Incident: 05PL14261
 Jurisdiction: ALL  All Alabama Jurisdic     Entry Code: CRIM
     Location: Phenix City                   Court Code: RCD1
     Occurred: 07:20:29 05/18/05         Judicial Status: PRP
Billing Agncy: RCSO                    Prosecutor Agency: RCDC
  Billing Beg: 07:22:11 05/18/05            Disposition:       Date:   / /
          End: 22:51:31 02/23/06        Sentencing Judge:
 Alcohol/Drug: Drug Influence           Sent. Components:
     Comments: (None)                          Sentenced:   :  :      / /


+- Arrest Number:     ----------------------------------------------------+
| Time/Date: 01:38:00 05/18/05     Agency: PCPD        Age at Arst:       |
|   Location: SEALE RD @ 16TH CT   Officer: Roberts, A.  Arrest Type: TRAF |
|    Area: J006                    Reference: 05PL14261  Disposition: ADH  |
+-------------------------------------------------------------------------+
Bonds/Fees/fines/Rest/Other:           Sentenced:        Offense Number: 050006123
      Local ID:                          TN Suffix:
      Statute: 13A-12-214 3562 Unlawful Possess Mari  NCIC: 3562
      Offense: 3562 Marijuana-Possession 1 or 2   Reference: WR-2004-001375
 Offense Type: STAT State Statute              Area: J006
  Crime Class: AM   Class "A" Misdemeano  Related Incident: 05PL14261
 Jurisdiction: ALL  All Alabama Jurisdic     Entry Code: CRIM
     Location: Phenix City                   Court Code: RCD1
     Occurred: 07:20:29 05/18/05         Judicial Status: PRP
Billing Agncy: RCSO                    Prosecutor Agency: RCDC
  Billing Beg: 07:22:46 05/18/05            Disposition:       Date:   / /
          End: 22:51:38 02/23/06        Sentencing Judge:
 Alcohol/Drug: Drug Influence           Sent. Components:
     Comments: (None)                          Sentenced:   :  :      / /
```

```
+- Arrest Number:    -------------------------------------------------------+
| Time/Date: 01:38:00 05/18/05      Agency: PCPD           Age at Arst:     |
|   Location: SEALE RD @ 16TH CT    Officer: Roberts, A.   Arrest Type: TRAF|
|       Area: J006                  Reference: 05PL14261   Disposition: ADH |
+--------------------------------------------------------------------------+
Bonds/Fees/fines/Rest/Other:           Sentenced:       Offense Number: 050006727
     Local ID:                              TN Suffix:
       Statute: 13A-7-22   2901 Criminal Misch 2nd-Bu  NCIC: 2902
       Offense: 2901 Crim Mischief-Business 1,2,  Reference:
  Offense Type: STAT State Statute                 Area: J006
   Crime Class: AM   Class "A" Misdemeano  Related Incident:
  Jurisdiction: ALL  All Alabama Jurisdic        Entry Code: CRIM
      Location: SEALE RD @ 16TH CT             Court Code: RCD1
      Occurred: 01:38:00 05/18/05          Judicial Status: FPT
 Billing Agncy: RCSO                      Prosecutor Agency:
   Billing Beg: 13:17:21 06/03/05             Disposition: PTR  Date:   / /
           End: 22:51:45 02/23/06         Sentencing Judge:
  Alcohol/Drug: No Alc/Drug Inv           Sent. Components:
      Comments: (None)                         Sentenced:    :  :    / /

+- Arrest Number:    -------------------------------------------------------+
| Time/Date: 01:38:00 05/18/05      Agency: PCPD           Age at Arst:     |
|   Location: SEALE RD @ 16TH CT    Officer: Greene, D.    Arrest Type: VIEW|
|       Area: J006                  Reference: 05PL14262   Disposition: ADH |
+--------------------------------------------------------------------------+
Bonds/Fees/fines/Rest/Other:           Sentenced:       Offense Number: 050007350
     Local ID:                              TN Suffix:
       Statute: 32-6-19        Driving w/Suspended/R  NCIC:
       Offense: DWLR Driving While License Revok  Reference: M7196543
  Offense Type: STAT State Statute                 Area: J006
   Crime Class: TR   Traffic Citation or   Related Incident: 05PL14261
  Jurisdiction: ALL  All Alabama Jurisdic        Entry Code: TNON
      Location: SEALE RD @ 16TH CT             Court Code: PCMC
      Occurred: 01:38:00 05/18/05          Judicial Status:
 Billing Agncy: PCPD                      Prosecutor Agency:
   Billing Beg:    :  :     / /              Disposition:      Date:   / /
           End:    :  :     / /         Sentencing Judge: LOFTIN
  Alcohol/Drug:                          Sent. Components:
      Comments: (None)                         Sentenced:    :  :    / /
```

```
+- Arrest Number:   ---------------------------------------------------------+
| Time/Date: 01:38:00 05/18/05      Agency: PCPD           Age at Arst:       |
|   Location: SEALE RD @ 16TH CT    Officer: Greene, D.    Arrest Type: VIEW  |
|     Area: J006                    Reference: 05PL14262   Disposition: ADH   |
+-----------------------------------------------------------------------------+
  Bonds/Fees/fines/Rest/Other:         Sentenced:        Offense Number: 050007353
      Local ID:                                TN Suffix:
      Statute: 32-5A-193       Attempting to Elude P  NCIC:
      Offense: ATTE Attempting to Elude Police    Reference: M7196545
  Offense Type: STAT State Statute                     Area: J006
   Crime Class: TR   Traffic Citation or   Related Incident: 05PL14261
  Jurisdiction: ALL  All Alabama Jurisdic       Entry Code: TNON
      Location: SEALE RD @ 16TH CT             Court Code: PCMC
      Occurred: 01:38:00 05/18/05         Judicial Status:
  Billing Agncy: PCPD                   Prosecutor Agency:
   Billing Beg:   :   :    /  /              Disposition:      Date:   /  /
           End:   :   :    /  /        Sentencing Judge: LOFTIN
  Alcohol/Drug:                         Sent. Components:
  Comments: (None)                            Sentenced:   :   :    /  /


+- Arrest Number:   ---------------------------------------------------------+
| Time/Date: 01:38:00 05/18/05      Agency: PCPD           Age at Arst:       |
|   Location: SEALE RD @ 16TH CT    Officer: Greene, D.    Arrest Type: VIEW  |
|     Area: J006                    Reference: 05PL14262   Disposition: ADH   |
+-----------------------------------------------------------------------------+
  Bonds/Fees/fines/Rest/Other:         Sentenced:        Offense Number: 050007351
      Local ID:                                TN Suffix:
      Statute: 32-7A-16         No Liability Insuranc  NCIC:
      Offense: NLIP No Liability Insurance Poli  Reference: M7196544
  Offense Type: STAT State Statute                     Area: J006
   Crime Class: CM   Class "C" Misdemeano   Related Incident: 05PL14261
  Jurisdiction: ALL  All Alabama Jurisdic       Entry Code: TNON
      Location: SEALE RD @ 16TH CT             Court Code: PCMC
      Occurred: 01:38:00 05/18/05         Judicial Status:
  Billing Agncy: PCPD                   Prosecutor Agency:
   Billing Beg:   :   :    /  /              Disposition:      Date:   /  /
           End:   :   :    /  /        Sentencing Judge: LOFTIN
  Alcohol/Drug:                         Sent. Components:
  Comments: (None)                            Sentenced:   :   :    /  /


  Inmate Holds:
```

```
   Entered by: Holland, L
When Entered: 11:05:53 07/13/05
   Cleared by: Walden, Joyce
When Cleared: 01:10:46 02/24/06
    Password:
```

                              Remarks:
Hold for Columbus Police Department for Detective Culberson @ 225-4296


Jail Log:
  Event Number:    168375
     Name ID:      225028
+-----------------------------------------------------------------------+
| Last: Edwards                      First: James        Mid: Tyron      |
| Addr& 2339 Fort Benning Road APT 201         Phone: (706)393-3397      |
| City: Columbus           ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
+-----------------------------------------------------------------------+
 Time/Date of Event: 14:16:20 05/18/05       Treatment Date:
        Type of event: BK   Inmate Booking
            Quantity:   0.00
            Officer: Walden, Joyce
      Booking Number: 050518002
         Description:
Arrived at jail 14:16:12 05/18/05
  Event Number:    168376
     Name ID:      225028
+-----------------------------------------------------------------------+
| Last: Edwards                      First: James        Mid: Tyron      |
| Addr& 2339 Fort Benning Road APT 201         Phone: (706)393-3397      |
| City: Columbus           ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
+-----------------------------------------------------------------------+
 Time/Date of Event: 14:16:20 05/18/05       Treatment Date:
        Type of event: ICC  Inmate Cell Change
            Quantity:   0.00
            Officer: Walden, Joyce
      Booking Number: 050518002
         Description:
Assigned to location `JAIL-JAIL-JAIL-BLKI-1    '.
```

```
Event Number:    168827
   Name ID:      225028
+---------------------------------------------------------------+
| Last: Edwards                      First: James      Mid: Tyron |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397  |
| City: Columbus          ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
+---------------------------------------------------------------+
  Time/Date of Event: 07:33:03 05/28/05      Treatment Date:
       Type of event: ICC   Inmate Cell Change
            Quantity:    0.00
             Officer: Walden, Joyce
      Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-BLKI-1   ' to `JAIL-JAIL-JAIL-BLKF-10  '.
  Event Number:    168955
     Name ID:      225028
+---------------------------------------------------------------+
| Last: Edwards                      First: James      Mid: Tyron |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397  |
| City: Columbus          ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
+---------------------------------------------------------------+
  Time/Date of Event: 09:45:23 06/01/05      Treatment Date:
       Type of event: ICC   Inmate Cell Change
            Quantity:    0.00
             Officer: Walden, Joyce
      Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-BLKF-10  ' to `JAIL-JAIL-JAIL-BLKJ-26  '.
  Event Number:    168992
     Name ID:      225028
+---------------------------------------------------------------+
| Last: Edwards                      First: James      Mid: Tyron |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397  |
| City: Columbus          ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
+---------------------------------------------------------------+
  Time/Date of Event: 00:44:06 06/02/05      Treatment Date:
       Type of event: ICC   Inmate Cell Change
            Quantity:    0.00
             Officer: Lewis, Teresa
      Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-BLKJ-26 ' to `JAIL-JAIL-JAIL-HOLD-H2  '.
```

```
Event Number:      169021
    Name ID:       225028
+----------------------------------------------------------------+
| Last: Edwards                    First: James        Mid: Tyron |
| Addr& 2339 Fort Benning Road APT 201    Phone: (706)393-3397    |
| City: Columbus           ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                |
+----------------------------------------------------------------+
Time/Date of Event: 17:32:05 06/02/05      Treatment Date:
     Type of event: ICC   Inmate Cell Change
          Quantity:    0.00
           Officer: Walden, Joyce
     Booking Number: 050518002
         Description:
Reassigned from `JAIL-JAIL-JAIL-HOLD-H2 ' to `JAIL-JAIL-JAIL-BLKA-13  '.
Event Number:      169695
    Name ID:       225028
+----------------------------------------------------------------+
| Last: Edwards                    First: James        Mid: Tyron |
| Addr& 2339 Fort Benning Road APT 201    Phone: (706)393-3397    |
| City: Columbus           ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                |
+----------------------------------------------------------------+
Time/Date of Event: 02:15:42 06/20/05      Treatment Date:
     Type of event: ICC   Inmate Cell Change
          Quantity:    0.00
           Officer: Russell, J.
     Booking Number: 050518002
         Description:
Reassigned from `JAIL-JAIL-JAIL-BLKA-13 ' to `JAIL-JAIL-JAIL-BLKL-21  '.
Event Number:      170154
    Name ID:       225028
+----------------------------------------------------------------+
| Last: Edwards                    First: James        Mid: Tyron |
| Addr& 2339 Fort Benning Road APT 201    Phone: (706)393-3397    |
| City: Columbus           ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                |
+----------------------------------------------------------------+
Time/Date of Event: 03:40:25 06/29/05      Treatment Date:
     Type of event: ICC   Inmate Cell Change
          Quantity:    0.00
           Officer: Thomas, Gregory
     Booking Number: 050518002
         Description:
Reassigned from `JAIL-JAIL-JAIL-BLKL-21 ' to `JAIL-JAIL-JAIL-BLKF-13  '.
```

```
Event Number:     170231
     Name ID:     225028
+-----------------------------------------------------------------+
| Last: Edwards                       First: James        Mid: Tyron |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397    |
| City: Columbus            ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                   |
+-----------------------------------------------------------------+
Time/Date of Event: 11:23:47 06/30/05      Treatment Date:
       Type of event: ICC  Inmate Cell Change
             Quantity:    0.00
              Officer: ONeal, J. Pam
      Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-BLKF-13 ' to `JAIL-JAIL-JAIL-BLKG-10 '.
 Event Number:     172826
     Name ID:     225028
+-----------------------------------------------------------------+
| Last: Edwards                       First: James        Mid: Tyron |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397    |
| City: Columbus            ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                   |
+-----------------------------------------------------------------+
Time/Date of Event: 17:58:13 08/26/05      Treatment Date:
       Type of event: ICC  Inmate Cell Change
             Quantity:    0.00
              Officer: Russell, J.
      Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-BLKG-10 ' to `JAIL-JAIL-JAIL-HOLD-H4 '.
 Event Number:     172914
     Name ID:     225028
+-----------------------------------------------------------------+
| Last: Edwards                       First: James        Mid: Tyron |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397    |
| City: Columbus            ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                   |
+-----------------------------------------------------------------+
Time/Date of Event: 00:49:20 08/28/05      Treatment Date:
       Type of event: ICC  Inmate Cell Change
             Quantity:    0.00
              Officer: Gary, Lutricia
      Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-HOLD-H4 ' to `JAIL-JAIL-JAIL-BLKG-10 '.
```

```
Event Number:     172944
    Name ID:     225028
+----------------------------------------------------------------------+
| Last: Edwards                      First: James          Mid: Tyron  |
| Addr& 2339 Fort Benning Road APT 201        Phone: (706)393-3397      |
| City: Columbus          ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                      |
+----------------------------------------------------------------------+
Time/Date of Event: 18:10:19 08/28/05    Treatment Date:
      Type of event: ICC  Inmate Cell Change
          Quantity:    0.00
           Officer: Lewis, Teresa
     Booking Number: 050518002
        Description:
Reassigned from `JAIL-JAIL-JAIL-BLKG-10 ' to `JAIL-JAIL-JAIL-BLKA-23   '.
 Event Number:     172966
    Name ID:     225028
+----------------------------------------------------------------------+
| Last: Edwards                      First: James          Mid: Tyron  |
| Addr& 2339 Fort Benning Road APT 201        Phone: (706)393-3397      |
| City: Columbus          ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                      |
+----------------------------------------------------------------------+
Time/Date of Event: 04:44:08 08/29/05    Treatment Date:
      Type of event: ICC  Inmate Cell Change
          Quantity:    0.00
           Officer: Gary, Lutricia
     Booking Number: 050518002
        Description:
Reassigned from `JAIL-JAIL-JAIL-BLKA-23  ' to `JAIL-JAIL-JAIL-BLKG-10   '.
 Event Number:     172969
    Name ID:     225028
+----------------------------------------------------------------------+
| Last: Edwards                      First: James          Mid: Tyron  |
| Addr& 2339 Fort Benning Road APT 201        Phone: (706)393-3397      |
| City: Columbus          ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                      |
+----------------------------------------------------------------------+
Time/Date of Event: 06:57:31 08/29/05    Treatment Date:
      Type of event: ICC  Inmate Cell Change
          Quantity:    0.00
           Officer: Gary, Lutricia
     Booking Number: 050518002
        Description:
Reassigned from `JAIL-JAIL-JAIL-BLKG-10  ' to `JAIL-JAIL-JAIL-BLKA-23   '.
```

```
Event Number:     172984
   Name ID:       225028
+----------------------------------------------------------------------+
| Last: Edwards                       First: James        Mid: Tyron   |
| Addr& 2339 Fort Benning Road APT 201         Phone: (706)393-3397     |
| City: Columbus          ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                      |
+----------------------------------------------------------------------+
Time/Date of Event: 11:03:01 08/29/05     Treatment Date:
        Type of event: ICC  Inmate Cell Change
             Quantity:    0.00
              Officer: Lewis, Teresa
       Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-BLKA-23 ' to `JAIL-JAIL-JAIL-BLKF-20  '.
Event Number:     175924
   Name ID:       225028
+----------------------------------------------------------------------+
| Last: Edwards                       First: James        Mid: Tyron   |
| Addr& 2339 Fort Benning Road APT 201         Phone: (706)393-3397     |
| City: Columbus          ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                      |
+----------------------------------------------------------------------+
Time/Date of Event: 17:52:24 11/02/05     Treatment Date:
        Type of event: ICC  Inmate Cell Change
             Quantity:    0.00
              Officer: Walden, Joyce
       Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-BLKF-20 ' to `JAIL-JAIL-JAIL-BLKF-12  '.
Event Number:     177023
   Name ID:       225028
+----------------------------------------------------------------------+
| Last: Edwards                       First: James        Mid: Tyron   |
| Addr& 2339 Fort Benning Road APT 201         Phone: (706)393-3397     |
| City: Columbus          ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                      |
+----------------------------------------------------------------------+
Time/Date of Event: 22:13:21 11/28/05     Treatment Date:
        Type of event: ICC  Inmate Cell Change
             Quantity:    0.00
              Officer: Russell, J.
       Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-BLKF-12 ' to `JAIL-JAIL-JAIL-INFM-I2  '.
```

Event Number:    177025
     Name ID:    225028

+----------------------------------------------------------------+
| Last: Edwards                        First: James        Mid: Tyron  |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397  |
| City: Columbus          ST: GA  Zip: 31903   DOB: 08/14/80   SSN: 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 |
+----------------------------------------------------------------+

Time/Date of Event: 22:14:20 11/28/05      Treatment Date:
     Type of event: ICC  Inmate Cell Change
          Quantity:    0.00
           Officer: Russell, J.
     Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-INFM-I2 ' to `JAIL-JAIL-JAIL-HOLD-H4   '.
Event Number:    177081
     Name ID:    225028

+----------------------------------------------------------------+
| Last: Edwards                        First: James        Mid: Tyron  |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397  |
| City: Columbus          ST: GA  Zip: 31903   DOB: 08/14/80   SSN: 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 |
+----------------------------------------------------------------+

Time/Date of Event: 00:37:40 11/30/05      Treatment Date:
     Type of event: ICC  Inmate Cell Change
          Quantity:    0.00
           Officer: Russell, J.
     Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-HOLD-H4 ' to `JAIL-JAIL-JAIL-BLKF-13   '.
Event Number:    177357
     Name ID:    225028

+----------------------------------------------------------------+
| Last: Edwards                        First: James        Mid: Tyron  |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397  |
| City: Columbus          ST: GA  Zip: 31903   DOB: 08/14/80   SSN: 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 |
+----------------------------------------------------------------+

Time/Date of Event: 04:58:25 12/06/05      Treatment Date:
     Type of event: ICC  Inmate Cell Change
          Quantity:    0.00
           Officer: Russell, J.
     Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-BLKF-13  ' to `JAIL-JAIL-JAIL-HOLD-H4   '.

Event Number:      178107
     Name ID:      225028

+--------------------------------------------------------------------+
| Last: Edwards                    First: James          Mid: Tyron  |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397      |
| City: Columbus           ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                    |
+--------------------------------------------------------------------+
Time/Date of Event: 16:21:13 12/21/05      Treatment Date:
          Type of event: ICC  Inmate Cell Change
  ✻        Quantity:    0.00
              Officer: Gary, Lutricia
     Booking Number: 050518002
         Description:
Reassigned from `JAIL-JAIL-JAIL-HOLD-H4 ' to `JAIL-JAIL-JAIL-BLKL-22  '.
 Event Number:      179336
     Name ID:      225028

+--------------------------------------------------------------------+
| Last: Edwards                    First: James          Mid: Tyron  |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397      |
| City: Columbus           ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                    |
+--------------------------------------------------------------------+
Time/Date of Event: 20:26:58 01/19/06      Treatment Date:
          Type of event: ICC  Inmate Cell Change
  ✻        Quantity:    0.00
              Officer: Russell, J.
     Booking Number: 050518002
         Description:
Reassigned from `JAIL-JAIL-JAIL-BLKL-22 ' to `JAIL-JAIL-JAIL-BLKL-23  '.
 Event Number:      180594
     Name ID:      225028

+--------------------------------------------------------------------+
| Last: Edwards                    First: James          Mid: Tyron  |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397      |
| City: Columbus           ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                    |
+--------------------------------------------------------------------+
Time/Date of Event: 22:55:58 02/19/06      Treatment Date:
          Type of event: ICC  Inmate Cell Change
          Quantity:    0.00
              Officer: Walden, Joyce
     Booking Number: 050518002
         Description:
Reassigned from `JAIL-JAIL-JAIL-BLKL-23 ' to `JAIL-JAIL-JAIL-HOLD-H2  '.

```
Event Number:     180595
    Name ID:      225028
+-----------------------------------------------------------------+
|                                   First: James        Mid: Tyron |
| Last: Edwards                                                    |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397   |
| City: Columbus         ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                 |
+-----------------------------------------------------------------+
  Time/Date of Event: 23:52:26 02/19/06     Treatment Date:
        Type of event: ICC  Inmate Cell Change
             Quantity:    0.00
              Officer: Walden, Joyce
      Booking Number: 050518002
          Description:
Reassigned from `JAIL-JAIL-JAIL-HOLD-H2 ' to `JAIL-JAIL-JAIL-HOLD-H4  '.
  Event Number:     180736
     Name ID:       225028
+-----------------------------------------------------------------+
|                                   First: James        Mid: Tyron |
| Last: Edwards                                                    |
| Addr& 2339 Fort Benning Road APT 201      Phone: (706)393-3397   |
| City: Columbus         ST: GA  Zip: 31903  DOB: 08/14/80  SSN: 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 |
|                                                                 |
+-----------------------------------------------------------------+
  Time/Date of Event: 01:10:57 02/24/06     Treatment Date:
        Type of event: ROA  Released to Other Agency
             Quantity:    0.00
              Officer: Walden, Joyce
      Booking Number: 050518002
          Description:
Released from record 050518002, location JAIL-JAIL-JAIL-HOLD-H4


Inmate Intake and Release:


  Arrival Date: 14:16:12 05/18/05      Release Date: 01:10:49 02/24/06
  Arrival Crdt: 07:20:10 05/18/05    Release Credit: 07:20:10 05/18/05
  Booking Date: 07:20:10 05/18/05       Released To: Kilby
  Booking Type: BK                      Released By: Walden, Joyce
     Booked By: Walden, Joyce          Release Type: ROA
   Search Type:                        Release Disp: ARC
     Search By:
   Trans. From:
     Trans. By:
  Over Booked?:
```

```
   Process Number: 060100551                 Court Code: RCC1
    Process Types: ORD                        Court Date: 02/08/06
          Agency: RCSO                        Judge Name: greene
   Court Number: cc-06-84               Copies Received:    1
    Date Issued: 01/27/06               Expiration Date:    /  /
Time/Date Recvd: 08:57:56 01/30/06       Date Returned: 01/31/06
       Comments:

 Bill To:      55042  State of Alabama
 Address& Russell County D.A.'S Office
    City: Phenix City      ST: AL  Zip: 36867      Phone: (   )   -

Type      Name                          Servd Lctn
Defendant                                         Defendants Witnesses

                                                  Garnishees Plaintiffs

                                                  Attorneys    Other
```

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

```
INVOLVEMENTS:
Type  Record #    Date     Description                    Relationship
 NM    225028   01/31/06   Edwards, James Tyrone         *Defendant

Civil Process Types Detail:
Seq  Code Description
 1   ORD  Order


Civil Process Names Detail:

 Process Number: 060100551        Name Number:    225028
Name Description--------------------------------------------------------------+
 Last: Edwards                        First: James        Mid: Tyron |
 Addr& 2339 Fort Benning Road APT 201    Phone: (706)393-3397         |
 City: Columbus        ST: GA  Zip: 31903   DOB: 08/14/80   SSN: 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 |
+------------------------------------------------------------------------------+
Name Type: Defendant      Serve: Y              Disposition: SRC
Assgnd To: 1st Shift City  Lctn:            Service Requirements:



Service Attempts
By             Person Served     Address          Lctn  When
Jaramillo,Jua SAA                2339 Fort Benning       08:10:03 01/30/06
```

# EXHIBIT L

**(Sergeant Steve Johnson and Sergeant Bussey Memoranda, "Use of Force Continuum," 22 Sept. 1999 and 22 August 2006)**

Case 3:06-cv-00729-WKW-SRW    Document TA-EX    Filed 12/08/2006    Page 2 of 3




# RUSSELL COUNTY SHERIFF'S DEPARTMENT

TOMMY BOSWELL, SHERIFF
POST OFFICE BOX 640
PHENIX CITY, ALABAMA
36868-0640
(334) 298-6535
FAX (334) 291-7667

61

To: All Officers
From: Staff Sergeant Steve Johnson
Re: Use of Force Continuum (Pyramid)
Date: 09/22/1999

All officers please be advised that the following is the use of force pyramid that must be followed with every altercation that occurs with every inmate.

1. First step is your *presence*
2. Second step is your *verbal command*
3. Third step is the use of *chemical weapon*
4. Fourth step is *hands on and or your stick*
5. Fifth step is *deadly force*(killing for self defense or to protect others)

Please read and memorize these steps for future usage. Thank You!

Staff Sergeant Steve Jonhson          09/22/1999



Case 3:06-cv-00746-MHT-SRW     Document FA-EX     Filed 12/08/2006     Page X of X



# RUSSELL COUNTY SHERIFF'S DEPARTMENT

TOMMY BOSWELL, SHERIFF
POST OFFICE BOX 640
PHENIX CITY, ALABAMA
36868 - 0640
( 334 ) 298-6535
FAX ( 334 ) 291-7667

To: All Shift Supervisors and Corrections Officers
From: Staff Sgt. D. Bussey
Date: 08-22-2006
Re: Use of Force Continuum (Pyramid)


The following is the Russell County Sheriff's Department's policy on the use of force. All corrections personnel are required to follow this policy when involved in an altercation with inmates.

1. First step is ***officer presence***
2. Second step is ***verbal command***
3. Third step is the use of ***chemical weapon***
4. Fourth step is ***hands on and/or expandable stick***
5. Fifth step is ***deadly force*** (killing for self defense or to protect others)


*Please memorize this policy and be ready to recite upon request.*

Staff Sgt. Danny Bussey
SG. :
08-22-2006



# EXHIBIT M
### (Russell County Sheriff Department's General Order, "Use of Weapons," 12 April 1996)

## RUSSELL COUNTY SHERIFF'S DEPARTMENT GENERAL ORDER

SUBJECT: USE OF CHEMICAL WEAPON

NUMBER 2-6-5

EFFECTIVE DATE:  12 April 96

REVIEW DATE:  04/12/96

AMENDS/SUPERSEDES:

APPROVED: _Thomas J. Boswell_
                              Sheriff

CALEA STANDARDS:

NOTE: This rule or regulation is for internal use only. and does not enlarge an officer's civil or criminal liability in any way. It should not be construed as the creation of a higher standard of safety or care in an evidentiary sense. with respect to third party claims. Violations of this directive. if proven, can only form the basis of a complaint by this department, and then only in a non-judicial administrative setting.

INDEX WORDS:

I.    POLICY

This department recognizes and respects the value and special integrity of each human life. In vesting peace officers with the lawful authoritiy to use force to protect the public welfare. a careful balancing of all human interests is required. Therefore. it is the policy of this department that peace officers shall use only that force that is reasonably necessary to effectively bring an incident under control. while protecting the lives of the officer or another.

II.    PURPOSE

The purpose of this  is to provide peace officers with guidelines on the use of the chemical weapon freeze.

III.    PROCEDURES

A.  When to use:

The use of the chemical weapon falls along the Use Of Force Continuum between "verbal commands" and actual "hands-on" use of force when resistance is encountered. The basic outline is as follows:

1.    Physical Presence
2.    Verbal Warning
3.    Verbal Command
4.    Chemical Weapon  (Freeze + P)
5.    Hands-On Control
6.    Deadly Force

By the timely and appropriate use of the chemical weapon. injuries to both officers and suspects are greatly reduced and any escalated use of force can be avoided.

For example. when a suspect is told he or she is under arrest and complies with further verbal direction. there is no need to escalate the use of the chemical weapon.

However. if by word or action the suspect shows no intention of compliance. the use of the

chemical weapon is the next logical - an expected - step. This should. in most cases. eliminate the need for actual hands-on active countermeasures and the possibility of officer/suspect injury.

Also. the chemical weapon can be utilized on a suspect. previously under control. who suddenly reacts violently and requires immediate attention during the post-arrest and/or Booking process.

The use of the chemical weapon is intended solely as a control device to enable the officer to carry out his or her duties in the safest. most efficient and most professional manner with the least chance of injury or harm to either the officer or suspect.

The chemical weapon is NOT, under ANY circumstances. to be used as "punishment" or as a coercive tool once an individual is under control and/or in custody.

**If an incident evolves to the point that the use of a chemical weapon is necessary, then there should also be cause for an arrest. The only exempt from his may be in the use of chemical weapons for crowd control.**

B.     How to use:

In use. the chemical weapon "Freeze" is aimed directly into the suspect's face and a one to two second burst if fired by the officer. The ideal distance from suspect to officer is between four and ten feet, due to the spray pattern of the chemical weapon.

Incapacitation results for approximately fifteen to twenty-five minutes. then all ill effects cease. To expedite the process. the suspect may be exposed to a cool. direct breeze blowing directly into his or her face. There are NO after-effects nor. as of this date. any medical problems resulting from the use of Freeze.

C.     Procedures for Documenting the Use of the Chemical Weapon:

Attached is a draft copy of the Russell County Sheriff Department's "Use of Force" report. This form MUST be filled out under the following circumstances:

1.     Any time a chemical weapon is used.
2.     Any time a deadly weapon is used.
3.     Any time an officer or suspect requires medical treatment for injuries sustained during any use of force.

Once completed. each Shift Supervisor will retain the original and forward a copy to the Sheriff and Chief Deputy. The original will be filed by the UCR Clerk.

Note: This Use of Force Report is in addition to other required departmental paperwork.

## RUSSELL COUNTY SHERIFF DEPARTMENT
### USE OF FORCE REPORT

DATE:_____    TIME:_____    CASE #_____

LOCATION OF INCIDENT:_____

SUSPECT'S NAME:_____ SEX____ RACE_____ DOB_____

ADDRESS:_____

CHARGE(S):_____

TYPE OF INCIDENT:_____

TYPE OF FORCE USED:  (  ) CHEMCIAL WEAPON        (  ) HANDS ON
                     (  ) OTHER RESULTING IN INJURY

     IF CHEMICAL, EFFECT: (  ) IMMOBILIZED SUSPECT        (  ) NO EFFECT

WAS SUSPECT INSTRUCTED  HOW TO REMOVE THE CHEMICAL.  (  ) YES  (  ) NO  (  ) REFUSED

INJURY TYPE TO SUSPECT:_____

HOSPITAL:_____DOCTOR:_____

INJURY TYPE TO OFFICER:_____

WITNESSES:

_____
NAME                          ADDRESS                         PHONE

_____
NAME                          ADDRESS                         PHONE

ANY RELATED REPORTS: (  ) I/O REPORT        (  ) ARREST REPORT

OFFICER USING FORCE:

NAME:_____ ID#_____

SUMMARY OF INCIDENT TO BE COMPLETED BY OFFICER USING FORCE:_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

SUPERVISORS NAME:_____ ID#_____

SUPERVISORS REPORT OF INCIDENT:_____

_____

_____

_____

_____

_____

_____

NOTE TO SUPERVISOR:        This report must be completed and copies placed on the desk of the Sheriff and Chief Deputy immediately.  A report must be filed by each officer involved in the Use of Force incident.

SUBJECT: USE OF HANDCUFFS / RESTRAINTS

NUMBER: 2-7

EFFECTIVE DATE: 15 January, 1993

REVIEW DATE: 12/14/92

AMENDS/SUPERSEDES:

APPROVED: _Thomas F. Boswell_
                                                Sheriff

CALEA STANDARDS: 71.3

NOTE: This rule or regulation is for internal use only, and does not enlarge an officer's civil or criminal liability in any way. It should not be construed as the creation of a higher standard of safety or care in an evidentiary sense, with respect to third party claims. Violations of this directive, if proven, can only form the basis of a complaint by this department, and then only in a non-judicial administrative setting.

INDEX WORDS: handcuffs; restraints

I. POLICY:

The responsibility of an officer for the safe custody of his prisoner permits some discretion in the use of handcuffs and restraining devices. See also GO 2-8, Transporting Prisoners. The department requires officers to exercise safety awareness by carefully restraining most prisoners (except children) who must be transported to a jail or other location.

II. PURPOSE:

To establish guidelines for the use of handcuffs and restraining devices.

III. PROCEDURES:

A. HANDCUFFS:

1. Arrested subjects will be handcuffed when the officer has reasonable cause to believe that their use is necessary for the safety of the arrested person, the officer, or other persons.

a. *Handcuffs shall be used when transporting all prisoners charged with a felony.*

b. Prisoners charged with misdemeanors *may* be handcuffed in accordance with (A)(1) above.

c. As a general rule, handcuffs should be used on *every* prisoner, no matter what the crime.

2. Officers shall handcuff a subject with the hands *in back,* except:

a. An officer may choose to handcuff hands in front owing to the suspect's deformity or disability.

3. When a suspect is handcuffed, use of the double lock will help insure prisoner and officer safety. Double locking reduces the chance of picking the lock or of the bracelet accidentally closing, further restricting circulation.

4. The officer should inform the arrested person that any resistance or unnecessary movement may cause discomfort not ordinarily associated with the application of handcuffs.

a. To avoid risk of permanent injury, the officer may loosen or remove the handcuffs of any prisoner in unusually severe pain because of the handcuffs. The officer should then consider other measures of restraint, including body belts, the use of plastic handcuffs, handcuffing the person in front, through a belt loop or belt to further restrict movement, or other reasonable measures to restrain the arrested person's hand movements.

## B. BODY BELT:

The body belt allows the officer to handcuff the prisoner in front yet restricts the movement of the prisoner's arms and hands. Normally, this device will be used when transporting prisoners considerable distances.

## C. ANKLE SHACKLES:

Ankle shackles shall be used by officers when transporting any prisoner they have reason to believe might be an escape risk.

## D. PLASTIC HANDCUFFS:

Plastic handcuffs shall be used when officers take into custody several prisoners, or when a prisoner requires multiple restraints. Officers must understand that, once applied, plastic handcuffs can only be removed with a knife or pair of shears.

E. **UNDER NO CIRCUMSTANCES** may an officer use or apply a restraint in such a manner that would allow or cause serious bodily harm and/or death to the arrested person. If necessary, additional officers may be required for the sole purpose of transporting a violent prisoner.

# EXHIBIT N
## (Other Plaintiff Incident Reports)

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|--------|--------|------|------|------------------|
| R C Jail | | 06/01/05 | 0129 | Sgt. Raines |

| OFFENDER | CELL # | TYPE OF INCIDENT/OFFENSE |
|----------|--------|--------------------------|
| James Edwards | F-21 | Damaging County Property |

| WITNESSES | CELL # | WITNESSES ( OFFICERS) |
|-----------|--------|------------------------|
| 1. | | C/O F. Brown  Asst. Sgt. |
| 2. | | C/O Littleton |
| 3. | | |

**NARRATIVE:**

On 06-01-05 at Approximately 2115, All Rovers were called to J-Blk for an verbal Altercation Between J-3 James Edwards and J-3 Michael Williams. J-3 Edwards was escorted to F-21 from J-Blk. At 2118 J-3 Edwards Broke the sprinkler head of the Sprinkler in his cell. C/O Littleton and myself Asst. sgt. Brown arrived at F-21 and asked J-3 Edwards to exit The flooding cell. J-3 Edwards initially refused to exit F-21. Finally after getting J-3 Edwards to come out he was told to kneel and place his hands behind his back by C/O Littleton and refused. C/O Littleton sprayed J-3 Edwards with a one second Burst of Freeze Plus P. J-3 Edwards was Then cuffed and escorted to Holding cell Two. J-3 Edwards was told by myself To rinse face with water which he did, after cuffs were removed. J-3 was also informed he was being charged for damaging the sprinkler. END OF Report

Asst. Sgt C/O F. Brown

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|--------|--------|------|------|------------------|
| | | 6/28/05 | 2008 pm. | Sgt Thomas |

| OFFENDER | CELL # | TYPE OF INCIDENT/OFFENSE |
|----------|--------|--------------------------|
| James Edward | L-21 | Fight |
| Roger Scales | L-23 | |

| WITNESSES | CELL # | WITNESSES ( OFFICERS) |
|-----------|--------|------------------------|
| 1. | | |
| 2. | | |
| 3. | | |

**NARRATIVE:**

approx: 2008 pm. I were watching c/o McIntyre giving inmates their medication inside cell block I, inmates James Edward Roger Scales are out on their Break, I c/o George Woods see the inmates inside cell block I, looking at the inmate inside cell block L-mop, that when I turned around, I seen that inmates James Edward Roger Scales were fighting each other, hitting with their hands inside cell block L-mop, I c/o George Woods, called Sgt. Thomas on the Radio let him no that I had a fight inside cell block L-mop, c/o McIntyre entered cell block L-mop, c/o Mobley, Sgt Thomas entered cell block L-mop shortly. The inmates were lockdown, inmate Roger Scales escorted to the Infirmary, end of my Report.

C/o George Woods

# EXHIBIT O
### (Plaintiff Inmate Grievance Paperwork,
### 6 Feb. 2006)



# RUSSELL COUNTY SHERIFF'S DEPARTMENT
TOMMY BOSWELL, SHERIFF
POST OFFICE BOX 640
PHENIX CITY, ALABAMA
36868 - 0640
( 334 ) 298-6535
FAX ( 334 ) 291-7667

June 6, 2002

## INMATE GRIEVANCE PROCEDURE

You must file an Inmate Request Form to attempt resolution of problems prior to filling a Grievance Form. Inmate Grievance Forms are available on request from any Officer with approval of the Supervisor. Requests are addressed to the Correctional Administrator.

Inmate are allowed to file a grievance when: subjected to a criminal act by another inmate: a prohibited act by a staff member: abuse; harassment; abridgement of civil rights; or denied privileges, without just cause.

To file grievance, you must send a Grievance form directly to the Correctional Administrator stating the time, date, name of staff member of inmate involved, and pertinent details of the incident including the names of any witnesses. Grievances are promptly and throughly investigated, appropriate corrective action taken, and a report issued to the inmate. Note: Inmates who file a grievance which prove to be a lie, upon conclusion of the investigation shall be subject of Disciplinary Action.



# RUSSELL COUNTY SHERIFF'S DEPARTMENT

## CORRECTIONS DIVISION

## INMATE GRIEVANCE FORM

**NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used**

| Submitted By: | Received By: |
|---|---|
| Inmate's Name (last name first) | CO's Name & ID Number |
| Housing Assignment | Shift Assignment |

## PART "A" INMATE REQUEST

Grievant (Inmate) Signature _____

## PART "B" - RESPONSE

Date of Response _____ Divisional Grievance Officer _____ ID Number _____

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

## PART "C" - RECEIPT

Return To: _____ Date _____ Time _____

Submitting Inmate _____ Receiving Shift Supervisor _____

## PART "D" - RETURN RECEIPT

Returned To: _____ Date _____ Time _____

Witness _____ Submitting Inmate _____

## APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer. I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By: _____ Date _____ Time _____

Submitted By: _____ Copy Received By _____

PLG-021

To: LT. Holland
Please send me a copy
for my records. Thanks!

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONS DIVISION
### INMATE GRIEVANCE FORM

NOTE: All grievance must be completed in ink. If additional pages are needed, plain lined paper may be used

| Submitted By: | Received By: |
|---|---|
| Inmate's Name (last name first) Edwards, James Tyrone | CO's Name & ID Number C/O GIBBONS  C/O #50 |
| Housing Assignment L1 Max | Shift Assignment D-Day |

### PART "A" INMATE REQUEST        – Continued –

On 2-3-06 I requested to be moved out of L1max due to Problems I was having with inmate in the cell and I didnt want to get in trouble. After locked down I talked to sgt moore and he refused my request. I thought that was good enough reason to flood my cell. After that the officers came back and I complied with every demand they made. I was instructed to mop the water up. While I was moping the water up Sgt moore came back in the cell sprayed me

Grievant (Inmate) Signature James T. Edwards

### PART "B" - RESPONSE

2/6/06 - Referred to SSG Bussey - LT. Hall —

02/07/06 - SEE ATTACHED LETTER. SSG

Date of Response  02-07-2006   Divisional Grievance Officer  SSG..   ID Number  C/o 11

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

### PART "C" - RECEIPT

Return To _____  Date _____  Time _____

Submitting Inmate _____  Receiving Shift Supervisor _____

### PART "D" - RETURN RECEIPT

Returned To _____  Date _____  Time _____

Witness _____  Submitting Inmate _____

### APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer. I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By: _____  Date _____  Time _____

Submitted By _____  Copy Received By _____

While in shackles and beat me with the stick. I was hit and slamed by cpt moore alone and beaten about 15 minutes. When I asked him about seeing the nurse he refused me and I haven't seen any medical staff since. Please look into this matter. One copy is being sent to you another to Sheriff Peavell's office. thank you for your time.

James T. Edwards

Case 3:07-cv-00734-WKW-TFM    Document 14-7    Filed 11/02/2005    Page 9 of 19

# RUSSELL COUNTY SHERIFF'S DEPARTMENT

## BUREAU OF INVESTIGATION

### INTERVIEW SHEET

| 1.NAME (LAST, FIRST, MIDDLE) | | | | 2.FILE NUMBER | |
|---|---|---|---|---|---|
| Edwards, James Tyrone | | | | | |

| 3.ALIAS(ES)/NICKNAME(S) | 4.DATE | S T T S ⓜ W F | TIME | 5.PLACE OF INTERVIEW |
|---|---|---|---|---|
| "Fat" | 02-06-2006 | | 1404 | Russell County Jail |

| 6.HOME ADDRESS | 7.HOME PHONE |
|---|---|
| Incarcerated in Russell County Jail | |

| 8.NAME AND ADDRESS OF EMPLOYER | 9.BUSINESS PHONE |
|---|---|
| | |

| 10.RACE | 11.SEX | 12.DOB | 13.POB | 14.SSN | 15.DLN |
|---|---|---|---|---|---|
| B | M | 08-14-1980 | Columbus, GA | 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 | |

JE On Febuary 3rd 2006, I was having problems with inmates in my cell. I requested to be moved and I requested to speak to Sgt. Moore. The pod officer said Sgt. Moore was busy and he couldn't come back at the time. After 11:00pm lockdown, Sgt. Moore came into L-Max. I told Sgt. Moore my situation. Sgt. Moore laughed at me and said "I aint moving you nowhere". I felt right about flooding the cell so I flooded the cell. Sgt. Moore, Officer Mathis and Officer Thigpen came back into the cell and made me lay down in the water and cuffed me. They then took me out into the hallway until they conducted their headcount. They then picked me up, put shackles on me and told me that " You gonna get this water up". They took the handcuff off me and put me back in the cell along with four mop buckets. I was getting the water up about fifteen minutes later Sgt. Moore, Officer Mathis and Officer Thigpen came back into the cell. Sgt. Moore said "Didn't I tell you to get this motherfucking water up". I said "Yes sir". Sgt. Moore repeated the question. I said " Yes sir, I'm getting the water up sir". Sgt. Moore then tried to spray me. I put a hand up and blocked the spray. After Sgt. Moore seen I wasn't sprayed, he pulled out his baton and started beating me over my legs, back, arms and buttocks. No one else was involved but Sgt. Moore. After that Officer Mathis cuffed me and they carried me to holding cell three. I asked for medical attention and I didn't recieve any until 02-06-2006. End of statement. JE

Signed: *James T Edwards*          Date: 2-6-06

| 17.ACJIC/NCIC CHECK | 18.FINGERPRINTED   YES ( )   NO ( )   BY WHAT AGENCY | | |
|---|---|---|---|

| 19.SUBJECT ⊠  VICTIM ( )  WITNESS ( ) | 20.DATE ENDED       TIME ENDED      AM | 21.INTERVIEW CONDUCTED BY SSG. Danny Bussey |
|---|---|---|

FORM I-1

22.PAGE ___ OF ___

23.EXHIBIT NO.



# RUSSELL COUNTY SHERIFF'S DEPARTMENT
### TOMMY BOSWELL, SHERIFF
POST OFFICE BOX 640
PHENIX CITY, ALABAMA
36868 - 0640
( 334 ) 298-6535
FAX ( 334 ) 291-7667

To: Inmate James Edwards
From: SSG. D. Bussey
Date: 02-07-2006
Re: Grievance Received on 02-06-2006


    I have reviewed the incident outlined in your grievance. I find no evidence to indicate the force used by Sgt. Moore was excessive and unwarranted. According to your own signed statement, the entire incident was set in motion by you flooding your cell. Sgt. Moore responded and instructed you to clean the water from the floor. Sgt. Moore only returned due to you pouring buckets of water into other inmate cells. Sgt. Moore issued you clear verbal commands which you chose not to follow. As a result Sgt. Moore attempted to use his chemical spray to gain your compliance. According to your statement you blocked the spray with your hand. In response to your actions, Sgt. Moore then proceeded to his expandable stick. Sgt. Moore struck you multiple times with the expandable stick while continuing to issue verbal orders. Once you complied with the verbal orders all use of force was stopped. If you had followed the verbal orders from the beginning none of the use of force would have been necessary.

    I response to your allegation of being denied medical treatment, I find no evidence to support your allegation. There is no evidence you submitted a medical request to see the medical staff. When asked you were unable to produce a receipt showing you had submitted a request. Upon receipt of your grievance requesting medical attention, you were seen by Doctor Warr.

    In conclusion, based on all information provided, I find not evidence to support your allegation of abuse.

SSG. D. Bussey

SSG _(signature)_



Statement

On February 4, 2006 approximately 1205 am, Sgt. P. Moore was dispatched to male POD two/ L-max unit. Upon arrival Sgt. Moore met with C/O J. Burdin."C/O Burdin stated he observed inmate James Edward dumping water in cells L-10 and L-20."Sgt. Moore had ordered inmate Edward to clean up the water prior to him flooding out the whole unit. Inmate Edward had agreed to clean up the water, because he stated that he was wrong for flooding the unit. Sgt. Moore provided inmate Edward one mop and four buckets to complete the detail. Sgt. Moore, I. Thigpen and B. Mathis entered L-max unit an ordered inmate Edward to drop the mop and go down on the ground, but he refused by" stating fuck you Sgt. Moore, fuck the police, and I don't have shit to loose."Sgt. Moore ordered inmate Edward several more times to go down on the ground, but he fail to comply. Sgt. Moore then applied a one second stream of freeze plus p chemical spray to the face area of inmate Edward, but the chemical had no effect. Sgt. Moore then pulled his stick an struck inmate Edward several times. Inmate Edward grabbed the stick an Sgt. Moore snatch the stick back. Sgt. Moore ordered inmate Edward to stop resisting an go down on the ground, but he refused again an Sgt. Moore struck him several more times until he complied.Sgt. Moore placed inmate Edward in handcuffs and shackles. C/O Thigpen, and Mathis escorted inmate Edward to holding cell for disciplinary. Moments later Sgt. Moore and C/O Mathis escorted inmate Edward to the infirmary for treatment. Sgt. Moore took pictures showing inmate Edward wasn't injured. Sgt. Moore advised inmate Edward on how to remove the chemical an escorted him back to L-max unit. Sgt. Moore asked inmate Edward was he going to comply with the Russell County Jail rules? An" he stated he would not break anymore rules. No further incident, no injuries, end of report.

Sergeant P. Moore

# EXHIBIT P
## (Plaintiff Medical Treatment Log)

| NAME: James Edwards | | D.O.B. 8/14/80 RACE: B SEX: M |
|---|---|---|
| PRESENT MEDICATION: | | SSN: 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 |
| ALLERGIES: | | |
| PPD: | HGT: ' " WGT: | LBS. |
| HIV/VDRL: | | |

| DATE/TIME | | NURSE SIGNATURE |
|---|---|---|
| 06/01/05 | S. Involved in altercation c̄ COs + he tore out sprinklers in cell & flooded block. C/o mid back pain 2° COs kneee in back when cuffing. Denies. Reports h/o stab wdies L @ 8 + 17 that almost left him paralized. Reports was in MVA @ arrest + being high on drugs. Sprayed earlier O. Ø marks on back A. Back contussion. 24 yo BM P. Ice pack to back ___ M___ Davis RN | |
| | V/S: 115/71 – 103 – 18 – 99    99% | |
| 063005 1055 | Involved in altercation, numerous contusions noted on Ⓡ side of face. Reports was kicked in the + abdomen. ↑ BS ? 2° spasms  —  Zantac 150mg qHS x 3 days | |
| | Exam  ___ abd ___ ___  ↑ BS spasms        noted Ⓑ 063005 ___ | |
| | | 100% |
| 082405 0955 | C/o back and ? kidney problems       V/S: 123/78 – 67 – 16 – 97.5 HEENT: ⊖ LUNGS: clear        UA Chemstrip ⊖ results HEART: NSR s̄ Ⓜ̄ AB: ⊖ EXT: ⊖     * Admitted to excessive exercising NEURO: WNL     up unto a few days ago. Aspercreme SKIN: ⊖     given to rub on area. Report to staff if pain worsens. — Riley LPN C44 | |

Edwards, James

| Date/Time | | Nurse Signature |
|---|---|---|
| | v/s. 134/73 - 76-16-99 99% | |
| 091505 | States Water on ⃝ nipple. | |
| 1030 | | |
| | gynecomastia of ⃝ breast | |
| | No Px | |
| | | Tom |
| 101405 | F/U on gynecomastia of ⃝ breast | |
| 1020 | | |
| | Sonos. Tone - B/L | |
| | Leave it alone | |
| | | MMK |

James Edwards

| Date/ Time | hs 119/80   44⁷⁰ 64 -97.6 | Nurse Signature |
|---|---|---|
| 10/28/05 | Sore upper left Arm | |
| 9⁴⁵ Am | x 2 Keflex 500 ī Am. pm X 7 days | |
| | Tylenol X 2 now. | |
| | see Nurse Next week | |
| | for F/U bleeding | |
| 10/28/05 22⁴⁵ | Reg Tylenol # PO given                 NW | |
| | J M Davis RN | |
| | V/S: 127/73 - 84 - 18 - 98⁵   98% | |
| 110705 1110 | F/U: Abscess under arm Healed. | |
| | Instruction to use spray deodorant. | |
| | NW        100% | |
| 111605 0945 | F/U: Abscess under arm    V/S: 120/74 - 63 - 16 - 97⁵ | |
| | continue to keep area shaven (clean) | |
| | Doxy 100mg bid x 5days | |
| | Noted 111605                        NW | |
| 120605 0815 | Involved in altercation earlier this date, | |
| | suffered ē laceration to ® elbow. Area | |
| | cleaned ē betadine and steri-strips | |
| | in place over area. Noted bruising around | |
| | ® eye area ē minimal amt of edema. | Riley L RN NP |
| | Ice pack given to place on eye area. | |
| 120805 1220 | F/U: injuries sustained from altercation. | |
| | (laceration) to ® elbow healing well | |
| | No Tx needed @ this time. | |
| wt - 164 ¼ | | NW |

Edwards, James

| Date/ Time | | Nurse Signature |
|---|---|---|
| 121205 1015 | Reoccurring Cyst under ® arm Keflex 500mg qHS × 5days. noted ® 121205 ® | W ran |
| 01/17/06 | Reg lax. Bisacodyl 5mg × 4 given JM Davis RN | |
| 020606 1350 | c/o ® knee pain from being hit c baton by officer - bruises noted ® buttocks area, ® upper thigh, back, shoulder area, ® upper arm. ✓ States that suffers c most pain in ® knee area Naprosen 500mg STAT ; ✓ PO HS × 5days c/o nurse / Riley RNCCHP. v/s: 121/79- 71-18- 97⁵ 100% | |
| 021506 1025 | F/u: injuries from incident mentioned ↑ Areas healed π Ø sequela. JM | |
| Wgt: 172 1/4 | | |
| 02/19/06 9pm | S. Involved in altercation c another J3 Christopher Cummings c/o ® pinkie broken; sent to Sent to shower to wash off other J3 blood that he is covered c to waist. O. ® pinkie min edema. A. Fx doubtful. Prob sprain P. Splint Refused Ice pk Tylenol 800mg PO given ↑ hand JM Davis RN | |
| 2/20/06 | ws. 110/70- 72- 9 2b 99²- 66 No Fx - doubt l. [illegible] @ 27hrs - [illegible] | |

# EXHIBIT Q
## (Pictures of Plaintiff's Bruising, 6 Feb. 2006)











