IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JAMES TYRONE EDWARDS

PLAINTIFF

CIVIL ACTION NO:

3:06-CV-740-MHT-SRW

V.

SGT. MOORE, et al

DEFENDANTS

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL REPORT

JAMES TYRONE EDWARDS, hereinafter the plaintiff, an inmate of the Alabama Department of Corrections, [Limestone Correctional Facility-Harvest, Alabama], commenced this action, pro se, against Sergeant(s) Samuel Pierce Moore, Danny Bussey, Lieutenant Loetta Holland, Chief Deputy William Alexander, and Sheriff Thomas F. Boswell in the United States District Court for the Southern District of Alabama on February 13, 2006 under 42 USCS § 1983.

On August 15, 2006, the United States District Court for the Southern District of Alabama transferred this action to the United States District Court for the Middle District of Alabama under 28 USCS § 1406 (a). On December 5, 2006, the Defendants filed a "Special Report" and motion for Summary Judgment.

BACKGROUND:

The plaintiff alleges in his § 1983, that, he was subjected to cruel and unusual punishment, while incarcerated in the Prentiss L. Griffith Detention Center, located in Russell County, Alabama (Hereinafter Russell County Jail) on February 3, 2006 by the Jail Administrators of the Russell County Jail, when he was maced and beaten by one Sgt. Samuel P. Moore, and denied medical treatment.

The defendant has, however, contended that no excessive force was used and that they are entitled to Eleventh Amendment and qualified immunities.

*I. SUMMARY JUDGMENT STANDARD*

The plaintiff states that summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial *Celotex Corp. v. Catrett*, 477 US 317, 322, 91 L Ed 2d 265, 106 S. Ct. 2548(1986).

In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial. Id at 322-23. The movant bears the initial responsibility of asserting the basis for his motion, Id at 323; *Apcoa Inc. v. Fidelity Nat'l Bank,* 906 F2d 610, 611(11th Cir.1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely "showing" that is pointing out to the court- that there is an absence of evidence to support the nonmoving parties case. *Celotex,* 477 US at 325, 106 S Ct 2548.

After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleading" and present competent evidence[1] designating "specific facts showing that there is a genuine issue for trial" Id at 324.

Edwards states that, while the Court is to view all evidence and factual inferences in a light most favorable to the nonmoving party *Samples v. City of Atlanta,* 846 F2d 1328,1330(11th Cir. 1998), " the mere existence of some alleged factual dispute between the parties will not defed an otherwise [a] properly supported motion for summary judgment; the requirement is that there be **no** genuine issue of material fact." *Anderson v. Liberty lobby, Inc.,* 477 US 242, 247-48, 91 L Ed 2d 202 106 S Ct 2505 (1986).

Edwards respectfully points out to this Court, that a fact is "material" when it is identified as such by the controlling substantive law. *Id.* 477 US at 248.

An "issue" is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* 477 US at 249-50. The nonmovant (Edwards) '" must do more than simply show that there is some metaphysical doubt as to the material facts, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party"' *Matsushita Electric Indus. Co., v. Zenith Radio Corp., (1986) 475 US 574, 586-87 89 L Ed 2d 538 106 S Ct 1348.*

An issue is not genuine if it is unsupported by evidence, that is "merely colorable" or is "not significantly probative" *Anderson* supra 477 US at 249-50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element material to that party's case to create a genuine issue for trial.

II. SECTION 1983 CLAIM

*42 USC Section 1983* provides in relevant part"

"*Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to*

---

[1] The nonmoving party may meet its burden through affidavit and disposition (al) testimony, to interrogatories, etc. Celotex, 477 US at 324

*the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . ."*

In other words, in order to establish a claim under Section 1983, a plaintiff must show a violation of a right secured by the Constitution of the United States and also show that a person acting under color of state law committed the deprivation of this right. See *Baker v. McCollan*, (1979) 443 US 137 144 61 L Ed 2d 433 99 S Ct 2689; *Graham v. Connor, (1989)* 490 US 386 104 L Ed 2d 443 109 S Ct 1865; *Cummings v. DeKalb County,* 24 F 3d 1349 (11th Cir. 1994).

Before this Court can entertain the defendants' assertion of Eleventh Amendment and Qualified Immunities, it must first determine whether the plaintiff has presented sufficient evidence that his constitutional rights were violated.

The Supreme Court has recently held that the analysis of whether a public official is entitled to Qualified Immunity is a two-step inquiry that "must be considered in proper sequence" *Saucier v. Katz* (2001) 533 US 194 150 L Ed 2d 272 121 S Ct 2151.

    A. <u>Plaintiff Edwards was " convicted of crimes" thus triggering an Eighth Amendment Constitutional Right to be free from "cruel and unusual Punishments".</u>

In the present case at bar, Edwards's shows that he was a person " convicted of crimes," In fact he was convicted for and sentence by a judge in State Court for a crime committed under State law. (See Plaintiff's Exhibit A,).

Thus the Eighth Amendment was triggered *Bell v. Wolfish,* (1979) 441 US 520; *Garcia v. Salt Lake County,* 768 F 2d 303 (10th Cir. 1985);

The Eighth Amendment provides: "Excessive shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Bails, fines, and punishments traditionally have been associated with the criminal process, and by

4

subjecting the three to parallel limitations, the text of the Amendment suggest an intention to limit the power of the entrusted with the criminal law function.

An examination of the history of the Eighth Amendment and the decisions of the Supreme Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes.

The history of the Eighth Amendment is well known. See e.g. *Furman v. Georgia*, (1972) 408 US 238 33 L Ed 2d 346 92 S Ct 2726; *Gregg v. Georgia*, (1976) 428 US 153 49 L Ed 2d 859 96 S Ct 2909; *In re Kemmler*, (1890) 136 US 436 34 L Ed 2d 519 10 S Ct 930. The text was taken almost verbatim, from a provision of the Virginia Declaration of Rights of 1776, which in turn derived from the English Bill of Rights of 1689. The English version was adopted after the accession of William and Mary was intended to curb the excesses of English judges under the reign of James II.

It would not be surprising to find, that every decision of the Supreme Court considering whether a punishment is "cruel and unusual " within the meaning of the Eighth and Fourteenth Amendments have dealt with a criminal punishment. See *In re Kemmler*, supra (execution by firing squad); *Pervear v. Commonwealth* (1867) 5 Wall 475 (fine and imprisonment at hard labor for bootlegging); *Howard v. Fleming* (1903) (10 years imprisonment for conspiracy to defraud); *Weems v. United States* (1910) 217 US 349 54 Led 793 30 S Ct 544 (15 years imprisonment and other penalties for falsifying an official document); *Furman v. Georgia*, supra (execution for murder); *Gregg v. Georgia* (1976) 428 US 153 49 Led 2d 859(same); *Trop v. Dulles*, (1958) 356 US 86 (expatriation for desertion) *Louisiana ex rel Francis v. Resweber*, (1947) 329 US 459 (execution by electrocution after failed first attempt); *Estelle v. Gamble*, (1976) 429 US 97 (incarceration without medical care).

These decisions have recognized over the years, that the Cruel and Unusual Punishments Clause circumscribes the criminal process in three ways: <u>First,</u> it places limits on the kind of punishments that can be imposed on those convicted of crimes, e.g. *Estelle v. Gamble*, supra; *Trop v. Dulles*, supra; *Howard v. Fleming,* supra

Second, it proscribes punishment grossly disproportionate to the severity of the crime, e.g. *Weems v. United States*, supra; *Powell v. Texas*, supra; *In re Kemmler,* supra; and **Thirdly,** it imposes substantive limits on what can be made criminal and punished as such e.g. *Robinson v. California,* (1962) 370 US 660 (Incarceration as a criminal for addiction to narcotics).

In the present case at bar, the defendants contend, "Neither Sergeant Moore nor any other Officer of the Prentiss Griffith Detention Center violated any constitutional right of the plaintiff" Id Defendant's Special Report p.13.

Nevertheless, the plaintiff points out that the Supreme Court has applied the prohibition of the Eighth Amendment's Cruel and Unusual Punishments Clause to prison conditions; prison"[c]ondition must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment" *Rhodes v. Chapman*, (1981) 452 US 337, 347 69 Led 2d 59 101 S Ct 2392.

According to Russell County's General Order promulgated by Sheriff Bosswell, chemical weapons can be used "when a suspect is told he or she is under arrest," Plaintiff was not told that he was under arrest. Neither the defendant state what departmental policy violated.

## QUILFIIED IMMUNITY PRINCIPLES

The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities, unless the conduct violates '" clearly established statutory or constitutional rights of which a reasonable person would have known"' Gonzalez v. Reno, 325 F 3d 1228,1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 US 730 (2002)).

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. Vinyard v. Wilson, 311 F 3d 1340, 1346 (11th Cir. 2002).

6

In the present case, the defendants have failed to do so. They also state that: "His attitude was threatening to the corrections officers and Plaintiff had a reputation for fighting" ID at 13 and 14.

This presumption does not move an individual to attack a prisoner of the state

## *DEFENDNAT SGT. MOORE ACTED OUTSIDE HIS DISCRETIONARY AUTHORITY*

The policy of the Russell County Sheriff's Department states that: Physical force or chemical agents may be used in the following incidences.... (d) to prevent serious damage to property... (f) to prevent or quell a riot..."

According to Sgt. Moore's "Use of Force Report" the incident in question was "Disorderly Conduct." Under Alabama Law a person commits the crime of Disorderly Conduct if:

" With intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ..." *See* Ala.Cr. Code §13A-11-7.

Accordingly, " a guard or peace officer...is justified in using physical force ... in all other circumstances when and to the extent that he reasonably believes to be the escape of a prisoner from a detention facility." Id at Ala.Cr.Code §13A-3-27 (h)(2).

The plaintiff states that the defendants failed to 'prove he was acting within his discretionary authority" by employing physical force after he was immobilized by a chemical agent. Instead, Def Sgt Moore clearly acted *ex necessitate rei* and *ex malitia*.

In the case of Siglar v. Hightower, 112 F 3d 191 (5th Cir. 1997) the Court found that the guards use of force was excessive when an inmate was caught with a biscuit in his pocket.

In Hudson v. McMillan, 503 US 1 (1992) the Supreme Court found excessive force was used when a prison official left an inmate with minor bruises, swelling of his face and mouth. In Estate of Davis by Ostenfeld v. Delo, 115 F3d 1388 (8th Cir. 1997) the court held that excessive force was used when a prisoner was repeatedly hit by an officer when he obeyed his orders to lie on the ground. See also Slicker v. Jackson, 215 F3d 1225 (11th Cir 2000.).

## MEDICAL CARE

The plaintiff argues that the United States Supreme Court has recounted the history of the Constitutional prohibition of "cruel and unusual punishment" at length in its prior decisions. See <u>Gregg</u> supra.

Accordingly, the Court first applied the Eighth amendment by comparing challenged methods of execution to concededly inhuman techniques of punishment. See <u>Wilkerson v. Utah</u> 99 US 130 (1879); <u>In re Kemmler</u>, 136 US 436 (1890).

The Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity and decency...' <u>Jackson v. Bishop</u>, 404 F 2d 571 (CA 8 1968). The Court held repugnant to the Eighth Amendment punishments which are incompatible with the evolving standard of decency that mark the progress of a maturing society' <u>Trop</u> supra; <u>Gregg</u> supra; <u>Weems,</u> supra; or which involves the unnecessary and wanton infliction of pain."

In the present case at bar, the plaintiff states that a delay on the behalf of the defendants to give him appropriate medical attention mounts to cruel and unusual punishment. See <u>*Harris v. Thigpen,*</u> 941 F 2d 1465 (11th Cir. 1991).

## CONCLUSION

In conclusion, the defendants are not entitled to qualified immunity as a matter of law, the plaintiff submits the foregoing facts above to support.

DONE THIS 17th _____ day of March _____, A.D 2007

Respectfully submitted,

James Tyrone Edwards

Plaintiff

## Certificate of Service

I hereby certify that the foregoing Plaintiff response is served upon opposing counsel for the defendants on this day via limestone Correctional Facility and address as follows:

Clerk: Ms. Debra Hackett
One Church Street
Montgomery, Alabama 36104

WEBB & ELEY, P.C.
P.O. BOX 240909
Montgomery, AL. 36124

DONE THIS ___17th___ day of __March__, A.D 2007

Respectfully submitted,

*James Edward*

James Tyrone Edwards
28779 Nick Davis Rd.
Harvest, Alabama 35749

cc: Clerk: Ms. Debra Hackett
One Church Street
Montgomery, Alabama 36104

WEBB & ELEY, P.C.
P.O. BOX 240909
Montgomery, AL. 36124

APPENDICES OF PLAINTIFF'S
REPLY TO DEFENDANT'S SPECIAL REPORT

A

# TABLE OF CONTENTS

EXHIBIT A: SENTENCE ORDER OF RUSSELL COUNTY ALABAMA
ADOC INMATE SUMMARY

EXHIBIT B: AFFIDAVIT OF TOMMY BOSWELL

EXHIBIT C: USE OF FORCE POLICY OF RUSSELL COUNTY
SHERIFF'S DEPARTMENT

EXHIBIT D: AFFIDAVIT OF SAMUEL PIERCE MOORE

EXHIBIT E: USE OF FORCE REPORT  4 Feb 06

EXHIBIT F: INMATE GRIEVANCE; REPLY
AFFIDAVIT(S) LOETTA HOLLAND (JAIL ADMIN.)
DANNY BUSSEY  (DEPUTY WARDEN)

EXHIBIT G: AFFIDAVIT OF IVA THIGPEN

EXHIBIT H: MEDICAL TREATMENT LOG
PHOTOGRAPHS OF PLAINTIFF EDWARDS

EXHIBIT I: AFFIDAVIT OF TINA RILEY

EXHIBIT A

SENTENCE ORDER: CIRCUIT COURT OF RUSSELL COUNTY
17 Jan 06; 8 Feb 06
ALABAMA DEPARTMENT OF CORRECTIONS
INMATE SUMMARY SHEET 15 Aug 06; 30 June 06

L-23

DC-05-980 and ~~DC-05-981~~

## IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

STATE OF ALABAMA,                    )
    Plaintiff.                              )
                               )
VS.                                         ) CASE NO.  CC- 06-8__
                                  )        ~~CC-~~
JAMES EDWARDS,                      )
    Defendant.                           )
                               )

*FILED IN OFFICE 2006 JAN 18 PM 2: 42 CIRCUIT/DIST. COURT RUSSELL CO. AL.*

### *APPLICATION TO PLEAD GUILTY ON INFORMATION*

**COMES NOW** the Defendant, **JAMES EDWARDS**, by and through his attorney and would show unto the Court as follows:

1.

The Defendant was arrested for the offenses of Possession of Cocaine and Possession of Marijuana-2nd Degree on May 18, 2005.

2.

The Defendant has not posted bail and these causes have been bound over to the Circuit Court to await action of the Grand Jury.

3.

The Defendant desires to plead guilty to the information provided by the District Attorney in this case.

4.

The Defendant is represented by the Honorable Jennifer B. Cooley, an attorney licensed to practice law in the State of Alabama.

5.

The Defendant is charged with Possession of Cocaine in violation of Section 13A-012-212(A) and Possession of Marijuana-2nd Degree in violation of Section 13A-012-214.

WHEREFORE, the above premises considered, the Defendant requests that this Court take jurisdiction of this matter and direct the District Attorney of this Circuit to prepare and file an information against the Defendant under the provisions of Rule 2.2(e), Alabama Rules of Criminal Procedure.

*January 17, 2006*
**DATE**

*James Edwards*
**JAMES EDWARDS**
**DEFENDANT**

**JENNIFER B. COOLEY (COO083)**
**Attorney for Defendant**

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing application on the District Attorney for Russell County, Alabama, by placing a true copy of same in a receptacle reserved for him in the Office of the Clerk of said Court.

This _____17_____ day of _____January_____, 2006.


JENNIFER B. COOLEY (COO083)
Attorney for Defendant

| | |
|---|---|
| STATE OF ALABAMA, | ) IN THE CIRCUIT COURT OF |
| VS. | ) RUSSELL COUNTY, ALABAMA |
| JAMES EDWARDS | ) CASE NUMBERED CC-06-84 |
| DEFENDANT. | ) |

## O R D E R

TO THE HONORABLE KENNETH E. DAVIS, DISTRICT ATTORNEY FOR THE 26TH JUDICIAL CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA;

Please be advised that the defendant in the above styled cause who is charged with the offense of Unlawful possession of a controlled substance in Russell County, Alabama, and who was confined in the Russell County Jail has made it known to the Court that he is desirous of pleading guilty to said charges in said court without first being indicted by a Grand Jury. The undersigned Judge of said Court does therefore direct you to prefer and file an information against said defendant under your oath or under the oath of some witness having knowledge of the circumstances charging said defendant with the same certainty as is required of an indictment with having committed the said offense with which he is charged. Jennifer Cooley is appointed as attorney

You are further requested to proceed as herein directed on as early a date as is practical.

**DONE** this the 19th day of January 2006.

_____
George R. Greene, Circuit Judge


I hereby accept service of the above notice, this the _____ day of _____, 2006.

_____
District Attorney

STATE OF ALABAMA        )        **IN THE CIRCUIT COURT OF**
                     )
       VS.               )        **RUSSELL COUNTY, ALABAMA**
                     )
**JAMES T. EDWARDS**        )        **CASE NO. CC-06-84**

## CRIMINAL INFORMATION

Comes now the State of Alabama by its District Attorney for the County of Russell, and complains and charges that on to-wit: the 18th day of May, 2005, the above-named defendant, within the County of Russell, State of Alabama, did unlawfully possess cocaine, a controlled substance, contrary to and in violation of Section 13A-12-212 of the Code of Alabama 1975, as amended, and against the peace and dignity of the State of Alabama.

Dated this the 24th day of January, 2006.

                               **KENNETH DAVIS**
                               **DISTRICT ATTORNEY**
                               **26th JUDICIAL CIRCUIT**

FILED IN OFFICE
2006 JAN 25 AM 10: 10
CIRCUIT/DIST. COURT

                               **BUSTER LANDREAU**
                           **CHIEF DEPUTY DISTRICT ATTORNEY**

**STATE OF ALABAMA**
**RUSSELL COUNTY**

Before me, a Notary Public in and for said County, personally appeared Buster Landreau, who being known to me and being by me first duly sworn, deposes and says that he is informed and believes and upon such information and belief avers that the facts contained in the foregoing affidavit are true to the best of his knowledge, information and belief.

Sworn to and subscribed before me this the 24th day of January, 2006.

                               **NOTARY PUBLIC**

| | |
|---|---|
| STATE OF ALABAMA, | ) IN THE CIRCUIT COURT OF |
| PLAINTIFF, | ) RUSSELL COUNTY, ALABAMA |
| VS. | ) CASES NUMBERED CC 06-84 |
| JAMES T. EDWARDS | ) |
| DEFENDANT. | ) |

## O R D E R

**WHEREAS,** the above named defendant has advised the Court in writing that he desires to plead guilty to the charges of Possession of controlled substance, Cocaine, without waiting for indictment by the Grand Jury, and has further advised the Court that he has been in the County Jail of Russell County, Alabama.

The Court, having ordered that the District Attorney for the Twenty-Sixth Judicial Circuit file an information against the above named defendant, hereby orders that this matter be set for a hearing on the 8th day of February 2006 at 10:00 A.M. in Courtroom 1.

**DONE** this the 27th day of January 2006.

_____
George R. Greene, Circuit Judge

EXHIBIT B

AFFIDAVIT OF TOMMY BOSWELL
SHERIFF OF RUSSELL COUNTY, ALABAMA
9 Nov 06

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
OPELIKA DIVISION

JAMES TYRONE EDWARDS,    )
                         )
    Plaintiff,           )
                         )
v.                       )    Civ. Act. No.  3:06-CV-00740-MHT-SRW
                         )
SERGEANT PIERCE MOORE,   )
et al.,                  )
                         )
    Defendants.          )

## AFFIDAVIT OF TOMMY BOSWELL

STATE OF ALABAMA        )
                        )
COUNTY OF RUSSELL       )

BEFORE ME, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Tommy Boswell, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Tommy Boswell. I am over the age of nineteen and competent to make this affidavit. I am the Sheriff of Russell County.

2. I had no personal involvement in any of the events surrounding the incident alleged in Plaintiff's Complaint.

3. I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4. I am responsible for promulgating the policies and procedures of the Prentiss Griffith Detention Center. The Prentiss Griffith Detention Center Policy and Procedures Manual state our policy regarding Use of Non-Deadly Force in Title 7.09.C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Center Regulations. Use of Non-Deadly Force in Title 7.09.C.2. Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or expandable stick, then deadly force for self-defense or to protect others. Memorandum on Use of Force

Continuum, 22 September 1999. I am also familiar with the Sheriff's Department General Order, dated 12 April 1996, on "Use of a Chemical Weapon."

5.      I was not present when Sergeant Moore used Freeze Plus and his night stick to subdue Plaintiff on 3 February 2006. Based on my knowledge of the facts of this incident, I am unaware of any excessive force being used against Plaintiff during this incident.

6.      To my knowledge, Plaintiff did not appeal the decision by the Prentiss Griffith Detention Center regarding Plaintiff's Grievance filed after this incident.

7.      I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_Thomas F. Boswell_

**TOMMY BOSWELL**

**SWORN TO** and **SUBSCRIBED** before me this 9 day of November 2006.

_Judy Pam O'Neal_

NOTARY PUBLIC
My Commission Expires: 6\25\08

EXHIBIT C

USE OF FORCE POLICY OF RUSSELL COUNTY
SHERIFF'S DEPARTMENT
 SHERIFF Tommy Boswell, Sgt. Steve Johnson
Sgt. Danny Bussey

# RUSSELL COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **SECURITY** | **SECTION 7** |
| **Use of Force and Restraints** | **Title 7.09** |

## *Policy*

It is the policy of the Russell County Sheriff's Department that force and restraints be used in the Detention Center when it is necessary to do so in order to maintain appropriate control and management and provide for secure and orderly running of the Detention Center.

## *Procedure*

A.    *General*

1.    The Russell County Sheriff's Department will operate the Detention Center under the belief that control and management of inmates incarcerated there should be by sound scientific methods, stressing moral values and organized persuasion rather than depending upon physical force for effective management and control.

2.    When the use of force is necessary, only the minimum amount needed to accomplish the task at hand should be used.

3.    Physical force will be used only as a last resort. All reasonable attempts should be made to identify and utilize alternative means to deal with the situation.

4.    In providing for a safe and secure institution, the use of force will be divided into two categories, deadly force and non-deadly force.

5.    The Sheriff of Russell County, Alabama, will take action against any member of the Detention Center staff who uses physical force when the employment of such force is unjustified.

B.    *Deadly Force*

1.    Deadly force will be defined as force which is likely to cause death or serious bodily injury.

2.    Deadly force should be used only as a last resort and then only to prevent an act which could result in death or secure bodily injury to one's self or to another person.

C.    *Non-Deadly Force*

1.    Non-deadly force will be defined as force which normally will cause neither death nor serious bodily injury.  It may be in the form of physical force, or chemical agents.

2.    Physical force or chemical agents may be used in the following incidences:

   a.    Prior to the use of deadly force to prevent the commission of a felony, including escape or to prevent an act which could result in death or serious bodily harm to one's self or another person

   b.    In defending one's self or others against any physical assault

   c.    To prevent the commission of a misdemeanor

   d.    To prevent serious damage to property

   e.    To enforce Detention Center regulations

   f.    To prevent or quell a riot

D.    *Restraint*

1.    When any type of system of restraint is used for any purpose other than security during transportation, the Shift Supervisor must approve such use, unless there is an immediate and urgent need to restrain a person who is uncontrollably violent to himself, others, or property. In this case, the officer in charge of the situation may decide when to apply restraints, but must report this to his Shift Supervisor as soon as the situation has been stabilized.

2.    All restraints should be double checked in order to prevent tightening of the restraints and restriction of blood circulation.  An officer should be able to slide two fingers between restraints and the inmate's body.

3.    Inmates who are restrained should be closely monitored to ensure their safety and the restraints should be removed at the earliest possible time.

4.    Inmates who are restrained in their cells should be checked at least every 15 minutes and each check should be documented on an observation log. When necessary to protect the inmate's welfare, checks should be made at intervals of less than 15 minutes.

E.    *Chemical Agents*

1.    It is the policy of the Russell County Detention Facility that the use of Freeze Plus P Chemical dispensers to aid in subduing inmate(s) will be permitted only when the safety and security of the institution is threatened and when the inmate(s) cannot be approached without danger to themselves or to jail personnel.

2.    *Definitions* - CN and CS chemical agents are members of a family of chemical compounds known as lacrimator because they produce a severe weeping or tearing of the eyes. While both CN and CS agents produce temporary irritation or disabling physical effects when in contact with the eyes or are inhaled in sufficient concentrations, they each have individual characteristics which govern their use in specific situations. Aerosol Chemical Dispensers are excellent no-lethal weapons if personnel understand the limitations as well as the advantages of their use.

**CN CHEMICAL AGENT**: Quickly irritates the upper respiratory passages and eyes, causing a heavy flow of tears within seconds of exposure. In some individuals, this agent may produce nausea, especially when experienced in heavy concentrations.

**CS CHEMICAL AGENT:** Produces immediate distress on contact with the eyes, the respiratory tract, and the skin, and will render the recipient incapable of purposeful aggressiveness while in contact with it, and for a period of ten to twenty minutes after he has been exposed to fresh air. Heavy concentrations may produce nausea, vomiting, depression, and extended recovery periods.

3.    GUIDELINES ON THE USE OF AEROSOL DISPENSERS:

In the event that no reasonable alternatives are available to the use of chemical agents, the following guidelines will apply:



A.    The health care professional should be contacted prior to the use of the chemical agent, except when the situation requires immediate action, to determine whether or not the inmate(s) have any physical or mental conditions that would make the use of the agent particularly dangerous. If the inmate has respiratory or cardiovascular

disease, chronic dermatitis, or psychosis, chemical agents may be extremely harmful and should be avoided in all but the most extreme situations. Also, if the inmate is already known to the psychologist and /or psychiatrist, either or both of these individuals should, when possible, be consulted regarding the best method of management.

B.     Chemical Agents should not be intentionally sprayed into the eyes, although a person must be purposely hit on the face with the agent if it is to be effective. Injury to the eyes could result from a direct spray, subsequently personnel should be given training in the use of the agent.

C.     Chemical Agents should not be used at ranges closer than approximately four (4) feet.

D.     The stream should be discharged in a short burst, approximately two seconds in duration.

E.     The inmate's eyes will be flushed with cold water within five minutes after exposure. All exposed skin surfaces should be washed and contaminated clothing exchanged.

F.     In all cases where Aerosol Chemical Dispenser is used, a full written report of the circumstances shall be submitted to the Sheriff on an Incident Report.

F.    *Incident Report*

1.     After the use of force of any type, members of the Detention Center staff will ensure that immediate notification is given to the Sheriff, Chief Deputy, or Administrator of Corrections.

2.     In order to give such notification, a written Incident Report by the officers involved shall be filed with the Sheriff, Chief Deputy, or Administrator of Corrections immediately after the incident. The Incident Report shall include:

a.     An accounting of the events leading to the use of force

b.     A precise detailed report of the incident and the reasons for employing force

c.     A description of the weapons or agents use and the manner in which they were used

d.     A description of the injuries suffered, if any

e.    Whether medical treatment was offered or requested

f.    A description of any medical treatment given

g.    A list of all participants and witnesses to the incident

**By Order of:**

_____

**Thomas F. Boswell, Sheriff**

**Effective Date:**  _____

**Reference Form:**    10    **Incident Report**



# RUSSELL COUNTY SHERIFF'S DEPARTMENT

### TOMMY BOSWELL, SHERIFF
POST OFFICE BOX 640
PHENIX CITY, ALABAMA
36868-0640
(334) 298-6535
FAX (334) 291-7667



61

To: All Officers
From: Staff Sergeant Steve Johnson
Re: Use of Force Continuum (Pyramid)
Date: 09/22/1999


All officers please be advised that the following is the use of force pyramid that must be followed with every altercation that occurs with every inmate.


1. First step is your *presence*
2. Second step is your *verbal command*
3. Third step is the use of *chemical weapon*
4. Fourth step is *hands on and or your stick*
5. Fifth step is *deadly force*(killing for self defense or to protect others)


Please read and memorize these steps for future usage.  Thank You!

Staff Sergeant Steve Jonhson        09/22/1999





# RUSSELL COUNTY SHERIFF'S DEPARTMENT
TOMMY BOSWELL, SHERIFF
POST OFFICE BOX 640
PHENIX CITY, ALABAMA
36868 - 0640
( 334 ) 298-6656
FAX ( 334 ) 291-7667

To: All Shift Supervisors and Corrections Officers
From: Staff Sgt. D. Bussey
Date: 08-22-2006
Re: Use of Force Continuum (Pyramid)


      The following is the Russell County Sheriff's Department's policy on the use of force. All corrections personnel are required to follow this policy when involved in an altercation with inmates.

1. First step is ***officer presence***
2. Second step is ***verbal command***
3. Third step is the use of ***chemical weapon***
4. Fourth step is ***hands on and/or expandable stick***
5. Fifth step is ***deadly force*** (killing for self defense or to protect others)


***Please memorize this policy and be ready to recite upon request.***


Staff Sgt. Danny Bussey

SSG.

08-22-2006



RUSSELL COUNTY SHERIFF'S DEPARTMENT GENERAL ORDER

SUBJECT: USE OF CHEMICAL WEAPON

NUMBER 2-6-5

EFFECTIVE DATE: 12 April 96

REVIEW DATE: 04/12/96

AMENDS/SUPERSEDES:

APPROVED: _Thomas J. Boswell_
Sheriff

CALEA STANDARDS:

NOTE: This rule or regulation is for internal use only. and does not enlarge an officer's civil or criminal liability in any way. It should not be construed as the creation of a higher standard of safety or care in an evidentiary sense. with respect to third party claims. Violations of this directive. if proven. can only form the basis of a complaint by this department. and then only in a non-judicial administrative setting.

INDEX WORDS:

I. **POLICY**

This department recognizes and respects the value and special integrity of each human life. In vesting peace officers with the lawful authoritiy to use force to protect the public welfare. a careful balancing of all human interests is required. Therefore. it is the policy of this department that peace officers shall use only that force that is reasonably necessary to effectively bring an incident under control. while protecting the lives of the officer or another.

II. **PURPOSE**

The purpose of this is to provide peace officers with guidelines on the use of the chemical weapon freeze.

III. **PROCEDURES**

A. When to use:

The use of the chemical weapon falls along the Use Of Force Continuum between "verbal commands" and actual "hands-on" use of force when resistance is encountered. The basic outline is as follows:

1. Physical Presence
2. Verbal Warning
3. Verbal Command
4. Chemical Weapon (Freeze + P)
5. Hands-On Control
6. Deadly Force

By the timely and appropriate use of the chemical weapon. injuries to both officers and suspects are greatly reduced and any escalated use of force can be avoided.

For example. when a suspect is told he or she is under arrest and complies with further verbal direction. there is no need to escalate the use of the chemical weapon.

However. if by word or action the suspect shows no intention of compliance. the use of the

chemical weapon is the next logical - an expected - step. This should, in most cases, eliminate the need for actual hands-on active countermeasures and the possibility of officer/suspect injury.

Also, the chemical weapon can be utilized on a suspect, previously under control, who suddenly reacts violently and requires immediate attention during the post-arrest and/or Booking process.

The use of the chemical weapon is intended solely as a control device to enable the officer to carry out his or her duties in the safest, most efficient and most professional manner with the least chance of injury or harm to either the officer or suspect.

The chemical weapon is NOT, under ANY circumstances, to be used as "punishment" or as a coercive tool once an individual is under control and/or in custody.

**If an incident evolves to the point that the use of a chemical weapon is necessary, then there should also be cause for an arrest. The only exempt from his may be in the use of chemical weapons for crowd control.**

B.    How to use:

In use, the chemical weapon "Freeze" is aimed directly into the suspect's face and a one to two second burst if fired by the officer. The ideal distance from suspect to officer is between four and ten feet, due to the spray pattern of the chemical weapon.

Incapacitation results for approximately fifteen to twenty-five minutes, then all ill effects cease. To expedite the process, the suspect may be exposed to a cool, direct breeze blowing directly into his or her face. There are NO after-effects nor, as of this date, any medical problems resulting from the use of Freeze.

C.    Procedures for Documenting the Use of the Chemical Weapon:

Attached is a draft copy of the Russell County Sheriff Department's "Use of Force" report. This form MUST be filled out under the following circumstances:

1.    Any time a chemical weapon is used.
2.    Any time a deadly weapon is used.
3.    Any time an officer or suspect requires medical treatment for injuries sustained during any use of force.

Once completed, each Shift Supervisor will retain the original and forward a copy to the Sheriff and Chief Deputy. The original will be filed by the UCR Clerk.

Note: This Use of Force Report is in addition to other required departmental paperwork.

RUSSELL COUNTY SHERIFF DEPARTMENT
USE OF FORCE REPORT

DATE:_____ TIME:_____ CASE #_____

LOCATION OF INCIDENT:_____

SUSPECT'S NAME:_____ SEX_____ RACE_____ DOB_____

ADDRESS:_____

CHARGE(S):_____

TYPE OF INCIDENT:_____

TYPE OF FORCE USED:  (  ) CHEMCIAL WEAPON          (  ) HANDS ON
                     (  ) OTHER RESULTING IN INJURY

     IF CHEMICAL, EFFECT: (  ) IMMOBILIZED SUSPECT          (  ) NO EFFECT

WAS SUSPECT INSTRUCTED  HOW TO REMOVE THE CHEMICAL. (  ) YES  (  ) NO  (  ) REFUSED

INJURY TYPE TO SUSPECT:_____

HOSPITAL:_____DOCTOR:_____

INJURY TYPE TO OFFICER:_____

WITNESSES:

_____
NAME                          ADDRESS                          PHONE

_____
NAME                          ADDRESS                          PHONE

ANY RELATED REPORTS:  (  )  I/O REPORT          (  )  ARREST REPORT

OFFICER USING FORCE:

NAME:_____ ID#_____

SUMMARY OF INCIDENT TO BE COMPLETED BY OFFICER USING FORCE:_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

SUPERVISORS NAME:_____ ID#_____

SUPERVISORS REPORT OF INCIDENT:_____

_____

_____

_____

_____

_____

_____

NOTE TO SUPERVISOR:        This report must be completed and copies placed on the desk of the Sheriff and Chief Deputy immediately.  A report must be filed by each officer involved in the Use of Force incident.

RUSSELL COUNTY SHERIFF'S DEPARTMENT GENERAL ORDER

SUBJECT: USE OF HANDCUFFS / RESTRAINTS                    NUMBER: 2-7

EFFECTIVE DATE: 15 January, 1993                    REVIEW DATE: 12/14/92

AMENDS/SUPERSEDES:                    APPROVED: *Thomas F. Boswell*
                                                      Sheriff

CALEA STANDARDS: 71.3

NOTE: This rule or regulation is for internal use only, and does not enlarge an officer's civil or criminal liability in any way. It should not be construed as the creation of a higher standard of safety or care in an evidentiary sense, with respect to third party claims. Violations of this directive, if proven, can only form the basis of a complaint by this department, and then only in a non-judicial administrative setting.

INDEX WORDS: handcuffs; restraints

I. POLICY:

The responsibility of an officer for the safe custody of his prisoner permits some discretion in the use of handcuffs and restraining devices. See also GO 2-8, Transporting Prisoners. The department requires officers to exercise safety awareness by carefully restraining most prisoners (except children) who must be transported to a jail or other location.

II. PURPOSE:

To establish guidelines for the use of handcuffs and restraining devices.

III. PROCEDURES:

A. HANDCUFFS:

1. Arrested subjects will be handcuffed when the officer has reasonable cause to believe that their use is necessary for the safety of the arrested person, the officer, or other persons.

   a. *Handcuffs shall be used when transporting all prisoners charged with a felony.*

   b. Prisoners charged with misdemeanors *may* be handcuffed in accordance with (A)(1) above.

   c. As a general rule, handcuffs should be used on *every* prisoner, no matter what the crime.

2. Officers shall handcuff a subject with the hands *in back,* except:

   a. An officer may choose to handcuff hands in front owing to the suspect's deformity or disability.

3. When a suspect is handcuffed, use of the double lock will help insure prisoner and officer safety. Double locking reduces the chance of picking the lock or of the bracelet accidentally closing, further restricting circulation.

4. The officer should inform the arrested person that any resistance or unnecessary movement may cause discomfort not ordinarily associated with the application of handcuffs.

a. To avoid risk of permanent injury, the officer may loosen or remove the handcuffs of any prisoner in unusually severe pain because of the handcuffs. The officer should then consider other measures of restraint, including body belts, the use of plastic handcuffs, handcuffing the person in front, through a belt loop or belt to further restrict movement, or other reasonable measures to restrain the arrested person's hand movements.

B. BODY BELT:

The body belt allows the officer to handcuff the prisoner in front yet restricts the movement of the prisoner's arms and hands. Normally, this device will be used when transporting prisoners considerable distances.

C. ANKLE SHACKLES:

Ankle shackles shall be used by officers when transporting any prisoner they have reason to believe might be an escape risk.

D. PLASTIC HANDCUFFS:

Plastic handcuffs shall be used when officers take into custody several prisoners, or when a prisoner requires multiple restraints. Officers must understand that, once applied, plastic handcuffs can only be removed with a knife or pair of shears.

E. UNDER NO CIRCUMSTANCES may an officer use or apply a restraint in such a manner that would allow or cause serious bodily harm and/or death to the arrested person. If necessary, additional officers may be required for the sole purpose of transporting a violent prisoner.

EXHIBIT D

AFFIDAVIT OF SAMUEL PIERCE MOORE
Deputy Sheriff RUSSELL COUNTY SHERIFF'S
DEPARTMENT
                Nov. 06

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### OPELIKA DIVISION

JAMES TYRONE EDWARDS,   )
                            )
     Plaintiff,        )
                            )
v.                     )    **Civ. Act. No.  3:06-CV-00740-MHT-SRW**
                            )
SERGEANT PIERCE MOORE,  )
et al.,                 )
                            )
     Defendants.     )

## AFFIDAVIT OF SAMUEL PIERCE MOORE

STATE OF ALABAMA     )
                            )
COUNTY OF RUSSELL    )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Samuel Pierce Moore, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Pierce Moore. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Deputy Sheriff by the Russell County Sheriff's Department since 1999. I began work for the Sheriff's Department in the Russell County Jail but have also worked as a patrol officer for the Sheriff's Department. I am presently a Jail Sergeant and have been one since July 2005.

2. I am familiar with the Plaintiff James Tyrone Edwards due to his incarceration in the Prentiss Griffith Detention Center.

3. I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4. I am familiar with the Prentiss Griffith Detention Center Policy and Procedures Manual. The Russell County Jail Policy and Procedures Manual states our policy regarding Use of Non-Deadly Force in Title 7.09.C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Center Regulations. Use of Non-Deadly Force in Title

7.09.C.2.  Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or expandable stick, then deadly force for self-defense or to protect others.  Memorandum on Use of Force Continuum, 22 September 1999.  I am also familiar with the Sheriff's Department General Order, dated 12 April 1996, on "Use of a Chemical Weapon."  I have been trained in the use of chemical weapons, like mace and Freeze Plus.

5.   Regarding the incident in plaintiff's Complaint, and as I explain more fully below, I acted in self-defense and because Plaintiff, who by acting threateningly, refusing orders, and putting toilet water in other inmates' cells, was violating the rules of the Prentiss Griffith Detention Center.  Based on what I witnessed and what I did on 3 February 2006, I followed the steps of the Prentiss Griffith Detention Center Rules with regard to the Plaintiff.

6.   Plaintiff had a problem fighting other inmates, and on 3 February 2006 he was in isolation for fighting.  On that date at approximately 11:00 pm, Plaintiff flooded his cell with toilet water because he was upset that we would not transfer him back to general population.  I gave him a mop and buckets to clean up the mess, but approximately an hour later, I received a call that plaintiff was pouring water through the slot in his upper floor cell door into other inmates' cells.

7.   I asked Plaintiff why he was flooding other inmates' cells, and he responded hostilely, demanding to know when he would be moved, yelling obscenities, and refusing orders to get down on the floor.  I issued that order to the Plaintiff, who was holding a mop in his hand, in order to make his cell safer for entrance by corrections officers like myself.  The water on the floor was no deeper than one half inch.  Plaintiff utterly refused to comply with my orders.

8.   I entered Plaintiff's cell, giving him a one-second burst of mace (Freeze Plus), and he went down on the floor.  Plaintiff blocked the spray with his hand.  However, Plaintiff did not place his hands behind his back for handcuffing as ordered and was still combative and hostile.  Officers Brandon Mathis and Iva Thigpen had arrived to provide assistance, and when we moved toward him to handcuff him, he rolled over on his back.  Plaintiff grabbed my stick, which I had removed in preparation of violent action by Plaintiff, and cursed at us, using words like "Fuck."  I had to grab my night stick back.  Plaintiff stated that he had "nothing to lose."  I struck Plaintiff three times with my night stick.

9.        Two officers assisted in restraining Plaintiff, while Officer Thigpen handcuffed him. Plaintiff was still combative during and after the handcuffing, stating "Fuck y'all" and that he "didn't have shit to lose." Following standard procedure, we took Plaintiff to the Infirmary where we instructed and assisted him in getting the mace off. Plaintiff was not injured to the point that we needed to call the on-call nurse. If a nurse had been present to see Plaintiff, it would not have been wise because even after all he had been through, Plaintiff was still combative and hostile. Plaintiff did not ask to see a nurse.

10.       As required by Prentiss Griffith Policies and Procedures, I filed a Russell County Sheriff's Department Use of Force Report regarding the incident.

11.       I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

SAMUEL PIERCE MOORE

**SWORN TO** and **SUBSCRIBED** before me this ___ day of November 2006.

NOTARY PUBLIC
My Commission Expires: 6/25/08

EXHIBIT E

USE OF FORCE REPORT
4 - Feb 06

## RUSSELL COUNTY SHERIFF DEPARTMENT

## USE OF FORCE REPORT

DATE: 2-4-06 _____ TIME: 0005 _____ CASE # _____

LOCATION OF INCIDENT: Male POD II / L-max unit

SUSPECT'S NAME: James Edward _____ SEX M RACE B DOB 8-14-80

ADDRESS: 2339 Ft. Benning Rd. Apt 201 Col. Ga 31906

CHARGE(S): Burglary 3rd (CG) - DS / Poss Cont Subst. / Poss Marij 2nd / Criminal Mischief 2

TYPE OF INCIDENT: Disorderly Conduct

TYPE OF FORCE USED: ( ✓ ) CHEMICAL WEAPON     ( ✓ ) HANDS ON
                    ( ) OTHER RESULTING IN INJURY

IF CHEMICAL EFFECT: ( ) IMMOBILIZED SUSPECT     ( ✓ ) NO EFFECT

WAS SUSPECT INSTRUCTED HOW TO REMOVE THE CHEMICAL ( ✓ ) YES     ( ) NO     ( ) REFUSED

INJURY TYPE TO SUSPECT: N/A

HOSPITAL: N/A _____     DOCTOR: N/A

INJURY TYPE TO OFFICER: N/A

WITNESSES:

c/o I. Thigpen
NAME                    ADDRESS                    PHONE

c/o B. Mathis
NAME                    ADDRESS                    PHONE

ANY RELATED REPORTS: ( ) I/O REPORT     ( ) ARREST REPORT

OFFICER USING FORCE:

NAME: Sgt. P. Moore _____ ID # 16

SUMMARY OF INCIDENT TO BE COMPLETED BY OFFICER USING FORCE: On 2-4-06 approx. 0005 Hr. Sgt. P. Moore was dispatched to Male POD II / L-max unit. Upon arrival Sgt. Moore met with c/o S. Burdin. C/o Burdin stated he observed inmate James Edward dumping water in cells L-10-20 after Sgt. Moore ordered him to clean up the water. Sgt. Moore, I. Thigpen and B. Mathis entered L-max unit and ordered inmate Edward to drop the mop and go down on the ground, but he refused stating fuck You Sgt.

Moore [struck the Police]. Sgt. Moore then applied a one second stream of Freeze Plus P chemical spray, but the spray had no effect. Sgt. Moore then pulled his stick and struck inmate Edward several times until he complied. Sgt. Moore advised inmate Edward on how to remove the chemical. Sgt. Moore, J. Thiagens and B. Mathis escorted inmate Edward to holding cell three for disciplinary. No further incident, no injuries, end of report. Sgt. _____

SUPERVISORS NAME:_____ ID#_____

SUPERVISORS REPORT OF INCIDENT:_____

_____

_____

_____

_____

_____

_____

_____

NOTE TO SUPERVISOR:     This report must be completed and copies placed on the desk of the Sheriff and Chief Deputy immediately.  A report must be filed by each officer involved in the Use of Force incident.

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|---|---|---|---|---|
| *R.J 5750* | | 3/63/2006 | 0/00 | SGT MOORE |

| OFFENDER | CELL # | TYPE OF INCIDENT/OFFENSE |
|---|---|---|
| | | *Failure to Comply* |

| WITNESSES | CELL # | WITNESSES ( OFFICERS) |
|---|---|---|
| 1. | | SGT P. MOORE |
| 2. | | C/O D. Thigpen |
| 3. | | |

**NARRATIVE:**

ON 02/03/06 While head count C/O mathis & C/O Thigpen Notice that water was coming out of 2 man Pod they went to see what has happend. J-3 James Edwards has flooded out his Cell. SGT moore & C/O Thigpen, C/O mathis Responded to a call from male Pod # 2 SGT moore Instructed J-3 James Edwards to mop up the water. his was Given mops and buckets. prior to 00.05 ON about 8/3/2006 SGT moore Recieved Another Call from male Pod # C/O Burdin Stated that J-3 James Edwards had threw water into cell # 10 & 20 SGT moore, C/O Thigpen & C/O mathis Entered 2-max SGT moore Instructed J-3 Edwards to get on the ground. J-3 Edwards Refused & SGT moore then Applied A 1-3 second burst of freeze & J-3 Edwards became hostile so SGT moore then Struck J-3 Edwards Several times with his Stick J-3 James Edward was then Escorted up to A holding Cell while handcuffed And placed under Observation. End Of Statement

C/O D. Thigpen

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|--------|--------|------|------|------------------|
| RCJ 5750 | | 3/3/2006 | 0100 | SGT. Moore |

| OFFENDER | CELL # | TYPE OF INCIDENT/OFFENSE | | |
|----------|--------|--------------------------|---|---|
| James Edwards | L-Max 23 | Failed to Comply | | |

| WITNESSES | CELL # | WITNESSES ( OFFICERS) | | |
|-----------|--------|------------------------|---|---|
| **1.** | | SGT. P. Moore | | |
| **2.** | | C/O I. Thigphen | | |
| **3.** | | | | |

**NARRATIVE:**

On 3/2/2006, I C/O Mathis, C/O Thigphen and SGT. Moore responded to a flooded cell in L-Max. SGT. Moore then instructed J3 James Edwards to mop up the water and SGT. Moore provided four mop buckets prior to 00:05 on 3/3/2006 when a call was received from Male Pod I, C/O Burdin, that J3 Edwards was throwing water in cells # 10 and # 20. SGT. Moore, C/O Mathis, C/O Thigphen then entered L-Max and SGT. Moore instructed J3 Edwards to get on the ground. J3 Edwards refused and SGT. Moore applied a 1 second burst of Freeze + P and J3 Edwards became hostile so SGT. Moore then Struck J3 Edwards several times with the stick. The J3 was then placed in handcuffs and escorted to Holding cell # 3 where he was placed on further observation. End of Report.

Brandon Mathis
I 49

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|---|---|---|---|---|
| RCJ 5750 | | 4/Feb/06 | 0005 | SGT MOORE |
| **OFFENDER** | **CELL #** | | **TYPE OF INCIDENT/OFFENSE** | |
| James Edwards | | Failure to Comply | | |
| **WITNESSES** | **CELL #** | | **WITNESSES ( OFFICERS)** | |
| **1.** | | SGT P. Mbure | | |
| **2.** | | C/o I. Thigpen | | |
| | | C/o B. Mathis | | |
| **3.** | | | | |

**NARRATIVE:**

On Feb 2, 06 while conducting head count c/o Thigpen and c/o Mathis noticed that inmate Edward, James in L-23 was flooding his room. Officer Thigpen and Mathis handcuffed him a removed him from his cell until the mop buckets arrived from the other 13 Edward James was then ordered to clean up all the water in L max. After doing that I c/o Burdin witnessed Edward, James dump a bucket of mop water into cells L-10 and L-20. I then called for assistance from SGT Moore, c/o Thigpen and c/o Mathis. while in L max I heard SGT Moore give an order to the inmate, but the inmate said something and didn't comply to the order that was given so I saw SGT Moore give a short spray of freeze to the inmate and he still didn't go down so SGT Moore struck the inmate several times with his stick.

Edward James was then handcuffed by c/o Mathis again and escorted to the front of the jail. ~~before~~ It was later reported to me that he was in a holding cell.

*Nothing Follows*

C/o Burdin

EXHIBIT F

INMATE GRIEVANCE; REPLY
AND AFFIDAVIT OF LOETTA HOLLAND
(JAIL ADMINISTRATOR 9 NOV 06)

AFFIDAVIT OF DANNY BUSSEY
Deputy WARDEN/ Custodian of Records



# RUSSELL COUNTY SHERIFF'S DEPARTMENT
TOMMY BOSWELL, SHERIFF
POST OFFICE BOX 640
PHENIX CITY, ALABAMA
36868 - 0640
( 334 ) 298-6535
FAX ( 334 ) 291-7667

June 6, 2002

## INMATE GRIEVANCE PROCEDURE

You must file an Inmate Request Form to attempt resolution of problems prior to filling a Grievance Form. Inmate Grievance Forms are available on request from any Officer with approval of the Supervisor. Requests are addressed to the Correctional Administrator.

Inmate are allowed to file a grievance when: subjected to a criminal act by another inmate: a prohibited act by a staff member: abuse; harassment; abridgement of civil rights; or denied privileges, without just cause.

To file grievance, you must send a Grievance form directly to the Correctional Administrator stating the time, date, name of staff member of inmate involved, and pertinent details of the incident including the names of any witnesses. Grievances are promptly and throughly investigated, appropriate corrective action taken, and a report issued to the inmate. Note: Inmates who file a grievance which prove to be a lie, upon conclusion of the investigation shall be subject of Disciplinary Action.



RUSSELL COUNTY SHERIFF'S DEPARTMENT

## CORRECTIONS DIVISION

## INMATE GRIEVANCE FORM

NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used

| Submitted By: | Received By: |
|---|---|
| Inmate's Name (last name first) | CO's Name & ID Number |
| Housing Assignment | Shift Assignment |

### PART "A" INMATE REQUEST

Grievant (Inmate) Signature _____

### PART "B" - RESPONSE

Date of Response _____ Divisional Grievance Officer _____ ID Number _____

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

### PART "C" - RECEIPT

Return To: _____ Date _____ Time _____

Submitting Inmate _____ Receiving Shift Supervisor _____

### PART "D" - RETURN RECEIPT

Returned To: _____ Date _____ Time _____

Witness _____ Submitting Inmate _____

### APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer. I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By: _____ Date _____ Time _____

Submitted By: _____ Copy Received By _____

## Statement

On February 4, 2006 approximately 1205 am, Sgt. P. Moore was dispatched to male POD two/ L-max unit. Upon arrival Sgt. Moore met with C/O J. Burdin.'' C/O Burdin stated he observed inmate James Edward dumping water in cells L-10 and L-20.'' Sgt. Moore had ordered inmate Edward to clean up the water prior to him flooding out the whole unit.' Inmate Edward had agreed to clean up the water, because he stated that he was wrong for flooding the unit. Sgt. Moore provided inmate Edward one mop and four buckets to complete the detail. Sgt. Moore, I. Thigpen and B. Mathis entered L-max unit an ordered inmate Edward to drop the mop and go down on the ground, but he refused by'' stating fuck you Sgt. Moore, fuck the police, and I don't have shit to loose.'' Sgt. Moore ordered inmate Edward several more times to go down on the ground, but he fail to comply. Sgt. Moore then applied a one second stream of freeze plus p chemical spray to the face area of inmate Edward, but the chemical had no effect. Sgt. Moore then pulled his stick an struck inmate Edward several times. Inmate Edward grabbed the stick an Sgt. Moore snatch the stick back. Sgt. Moore ordered inmate Edward to stop resisting an go down on the ground, but he refused again an Sgt. Moore struck him several more times until he complied. Sgt. Moore placed inmate Edward in handcuffs and shackles. C/O Thigpen, and Mathis escorted inmate Edward to holding cell for disciplinary. Moments later Sgt. Moore and C/O Mathis escorted inmate Edward to the infirmary for treatment. Sgt. Moore took pictures showing inmate Edward wasn't injured. Sgt. Moore advised inmate Edward on how to remove the chemical an escorted him back to L-max unit. Sgt. Moore asked inmate Edward was he going to comply with the Russell County Jail rules? An'' he stated he would not break anymore rules. No further incident, no injuries, end of report.

Sergeant P. Moore

TO: LT. HOLLAND
Please send me a copy
for my records. Thanks!

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONS DIVISION
### INMATE GRIEVANCE FORM

NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used

| Submitted By: | Received By: |
|---|---|
| Inmate's Name (last name first)<br>Edwards, James Tyrone | CO's Name & ID Number<br>C/O GIBBONS    C/O #50 |
| Housing Assignment<br>L1max | Shift Assignment<br>D-Day |

### PART "A" INMATE REQUEST            - Continued -

On 2-3-06 I requested to be moved out of L1max due to problems I was having with inmates in the cell and I didn't want to get in trouble. After locked down I talked to sgt moore and he refused my request. I thought that was good enough reason to flood my cell. After that the officers came back and I complied with every demand they made. I was instructed to mop the water up. While I was mopping the water up sgt moore came back in the cell & sprayed me

Grievant (Inmate) Signature  James T. Edwards

### PART "B" - RESPONSE

2/6/06 - Referred to SSG Bussey - H. Hallea

02/07/06 - SEE ATTACHED LETTER. SSG

Date of Response  02-07-2006     Divisional Grievance Officer  SSG.    ID Number  C/o 11

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

### PART "C" - RECEIPT

Return To _____  Date _____  Time _____

Submitting Inmate _____  Receiving Shift Supervisor _____

### PART "D" - RETURN RECEIPT

Returned To _____  Date _____  Time _____

Witness _____  Submitting Inmate _____

### APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer. I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By _____  Date _____  Time _____

Submitted By _____  Copy Received By _____

While in shackles and beat me with the stick. I was hit and slammed by sgt monroe alone and beaten about 15 minutes. When I asked him about seeing the nurse he refused me and I havent seen any medical staff since. Please look into this matter. One copy is being sent to you another to sheriff Pacowell's office. thankyou for your time.

James T. Edwards

INTERVIEW SHEET

| RUSSELL COUNTY SHERIFF'S DEPARTMENT | BUREAU OF INVESTIGATION | |
|---|---|---|

| 1.NAME (LAST, FIRST, MIDDLE) | | 2.FILE NUMBER |
|---|---|---|
| Edwards, James Tyrone | | |

| 3.ALIAS(ES)/NICKNAME(S) "Fat" | 4.DATE 02-06-2006 | S T T S M W F | TIME 1404 | 5.PLACE OF INTERVIEW Russell County Jail |
|---|---|---|---|---|

| 6.HOME ADDRESS Incarcerated in Russell County Jail | 7.HOME PHONE |
|---|---|

| 8.NAME AND ADDRESS OF EMPLOYER | 9.BUSINESS PHONE |
|---|---|

| 10.RACE B | 11.SEX M | 12.DOB 08-14-1980 | 13.POB Columbus, GA | 14.SSN 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 | 15.DLN |
|---|---|---|---|---|---|

JE On Febuary 3rd 2006, I was having problems with inmates in my cell. I requested to be moved and I requested to speak to Sgt. Moore. The pod officer said Sgt. Moore was busy and he couldn't come back at the time. After 11:00pm lockdown, Sgt. Moore came into L-Max. I told Sgt. Moore my situation. Sgt. Moore laughed at me and said "I aint moving you nowhere". I felt right about flooding the cell so I flooded the cell. Sgt. Moore, Officer Mathis and Officer Thigpen came back into the cell and made me lay down in the water and cuffed me. They then took me out into the hallway until they conducted their headcount. They then picked me up, put shackles on me and told me that " You gonna get this water up". They took the handcuff off me and put me back in the cell along with four mop buckets. I was getting the water up about fifteen minutes later Sgt. Moore, Officer Mathis and Officer Thigpen came back into the cell. Sgt. Moore said "Didn't I tell you to get this motherfucking water up". I said "Yes sir". Sgt. Moore repeated the question. I said " Yes sir, I'm getting the water up sir". Sgt. Moore then tried to spray me. I put a hand up and blocked the spray. After Sgt. Moore seen I wasn't sprayed, he pulled out his baton and started beating me over my legs, back, arms and buttocks. No one else was involved but Sgt. Moore. After that Officer Mathis cuffed me and they carried me to holding cell three. I asked for medical attention and I didn't recieve any until 02-06-2006. End of statement. JE

Signed... *James T Edwards* ......................... Date... 2-6-06 .............

| 17.ACJIC/NCIC CHECK | 18.FINGERPRINTED YES ( ) NO ( ) BY WHAT AGENCY | |
|---|---|---|

| 19.SUBJECT ⋈ | VICTIM ( ) | WITNESS ( ) | 20.DATE ENDED | TIME ENDED AM | 21.INTERVIEW CONDUCTED BY SSG. Danny Bussey |
|---|---|---|---|---|---|

FORM I-1

22.PAGE 1 OF
23.EXHIBIT NO



# RUSSELL COUNTY SHERIFF'S DEPARTMENT
### TOMMY BOSWELL, SHERIFF
POST OFFICE BOX 640
PHENIX CITY, ALABAMA
36868 - 0640
( 334 ) 298-6535
FAX ( 334 ) 291-7667

To: Inmate James Edwards
From: SSG. D. Bussey
Date: 02-07-2006
Re: Grievance Received on 02-06-2006

     I have reviewed the incident outlined in your grievance. I find no evidence to indicate the force used by Sgt. Moore was excessive and unwarranted. According to your own signed statement, the entire incident was set in motion by you flooding your cell. Sgt. Moore responded and instructed you to clean the water from the floor. Sgt. Moore only returned due to you pouring buckets of water into other inmate cells. Sgt. Moore issued you clear verbal commands which you chose not to follow. As a result Sgt. Moore attempted to use his chemical spray to gain your compliance. According to your statement you blocked the spray with your hand. In response to your actions, Sgt. Moore then proceeded to his expandable stick. Sgt. Moore struck you multiple times with the expandable stick while continuing to issue verbal orders. Once you complied with the verbal orders all use of force was stopped. If you had followed the verbal orders from the beginning none of the use of force would have been necessary.

     I response to your allegation of being denied medical treatment, I find no evidence to support your allegation. There is no evidence you submitted a medical request to see the medical staff. When asked you were unable to produce a receipt showing you had submitted a request. Upon receipt of your grievance requesting medical attention, you were seen by Doctor Warr.

     In conclusion, based on all information provided, I find not evidence to support your allegation of abuse.

SSG. D. Bussey



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
OPELIKA DIVISION

JAMES TYRONE EDWARDS,   )
                              )
     Plaintiff,           )
                              )
v.                          )    Civ. Act. No. 3:06-CV-00740-MHT-SRW
                              )
SERGEANT PIERCE MOORE,  )
et al.,                     )
                              )
     Defendants.       )

## AFFIDAVIT OF LOETTA HOLLAND

STATE OF ALABAMA      )
                           )
COUNTY OF RUSSELL    )

BEFORE ME, the undersigned authority and Notary Public in and for said

County and State at large, personally appeared Loetta Holland, who being known to me

and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Loetta Holland. I am over the age of nineteen and competent to make this affidavit. I am the Jail Administrator of the Prentiss L. Griffith Detention Facility in Russell County, Alabama.

2.     I had no personal involvement in any of the events surrounding the incident alleged in Plaintiff's Complaint.

3.     I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.     I am responsible for ensuring that the Detention Center's staff follows the policies and procedures of the Prentiss Griffith Detention Center. The Prentiss Griffith Detention Center Policy and Procedures Manual states our policy regarding Use of Non-Deadly Force in Title 7.09. C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Facility Regulations. Use of Non-Deadly Force in Title 7.09.C.2. Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or

expandable stick, then deadly force for self-defense or to protect
others.  Memorandum on Use of Force Continuum, 22 September
1999.  I am also familiar with the Sheriff's Department General
Order, dated 12 April 1996, on "Use of a Chemical Weapon."

5.    I was not present when Sergeant Moore used Freeze Plus and his
night stick to subdue Plaintiff on 3 February 2006, but based on
my knowledge of the facts involved, I conclude that no excessive
force was used against Plaintiff.

6.    To my knowledge, Plaintiff did not appeal the decision by the
Prentiss Griffith Detention Facility regarding Plaintiff's Grievance
filed after this incident.

7.    I swear, to the best of my present knowledge and information, that
the above statements are true, that I am competent to make this
affidavit, and that the above statements are made by drawing from
my personal knowledge of the situation.

LOETTA HOLLAND

**SWORN TO** and **SUBSCRIBED** before me this ___9___ day of November 2006.

NOTARY PUBLIC
My Commission Expires: _6/25/08_

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
OPELIKA DIVISION

JAMES TYRONE EDWARDS,   )
                              )
     Plaintiff,           )
                              )
v.                         )    Civ. Act. No. 3:06-CV-00740-MHT-SRW
                              )
SERGEANT PIERCE MOORE,  )
et al.,                   )
                              )
     Defendants.       )

### AFFIDAVIT OF DANNY BUSSEY

STATE OF ALABAMA     )
                        )
COUNTY OF RUSSELL    )

     BEFORE ME, the undersigned authority and Notary Public in and for said

County and State at large, personally appeared Danny Bussey, who being known to me

and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Danny Bussey. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Corrections Officer by the Russell County Detention Facility since 17 March 1997. I am the Deputy Warden of the Prentiss Griffith Detention Center. I am also a Custodian of the Records of the Prentiss Griffith Detention Center and certify that the copies of the rules, regulations, orders, policies, and booking documents regarding Plaintiff and relevant to this case are accurate copies of the official documents of the Prentiss Griffith Detention Center.

2.     While not personally acquainted with Plaintiff, I am familiar with the Plaintiff James Tyrone Edwards due to his incarceration in the Prentiss Griffith Detention Center. Based on Prentiss Griffith Detention Center records, Plaintiff was incarcerated there from 18 May 2005 to 24 February 2006.

3.     I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.      I am familiar with the Prentiss Griffith Detention Center Policy and Procedures Manual. The Prentiss Griffith Detention Center Policy and Procedures Manual states our policy regarding Use of Non-Deadly Force in Title 7.09.C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Center Regulations. Use of Non-Deadly Force in Title 7.09.C.2. Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or expandable stick, then deadly force for self-defense or to protect others. Memorandum on Use of Force Continuum, 22 September 1999. I am also familiar with the Sheriff's Department General Order, dated 12 April 1996, on "Use of a Chemical Weapon."

5.      I was not present when Sergeant Moore used Freeze Plus and his night stick to subdue Plaintiff on 3 February 2006.

6.      Lieutenant Holland, the Warden, regularly sends Grievance Forms to me for response. Lieutenant Holland passed Plaintiff's Grievance Form regarding the incident that is the subject of this legal action to me for the Detention Center's response. On 7 February 2006, I responded to Plaintiff's Grievance.

7.      In my written response to Plaintiff, I informed him that I did not find Sergeant Moore's use of force on 3 February 2006 to be excessive or unwarranted because of Plaintiff's decision to flood his cell and other inmates' cells and refusal to comply with Sergeant Moore's orders.

8.      If dissatisfied with my decision, inmates can appeal my decision regarding their Grievances to Lieutenant Holland, and then they can appeal to the Sheriff if dissatisfied with Lieutenant Holland's decision. The Sheriff is the final level of appeal regarding Grievances by inmates of the Prentiss Griffith Detention Center. Plaintiff did not appeal my decision to Lieutenant Holland or anyone else. Nor did he inform me that he had not received my response or tell me he wanted to appeal the decision, even though I spoke with Plaintiff not long after the incident. I would also have passed Plaintiff's isolation cell several times a day between 19 February 2006 and 24 February 2006, so Plaintiff could have told me of any objection to my response to his Grievance or any problem he had with the process.

9.      After receiving Plaintiff's Grievance, I ensured that Plaintiff saw a nurse, which would have been within three days of the incident. Plaintiff had had several fights before the incident alleged in Plaintiff's Complaint while in the Prentiss Griffith Detention Center. Therefore, it would be difficult for me to determine what

bruises, if any, that Plaintiff may have incurred from Sergeant Moore's night stick.

10.     I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

DANNY BUSSEY

**SWORN TO** and **SUBSCRIBED** before me this ___ day of November 2006.

NOTARY PUBLIC
My Commission Expires: ___

EXHIBIT G

AFFIDAVIT OF IVA THIGPEN
CORRECTIONS OFFICER RUSSELL COUNTY
SIHERIFFS DEPARTMENT

NOV 06

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### OPELIKA DIVISION

JAMES TYRONE EDWARDS,   )
                             )
      Plaintiff,          )
                             )
v.                        )    Civ. Act. No. 3:06-CV-00740-MHT-SRW
                             )
SERGEANT PIERCE MOORE,   )
et al.,                     )
                             )
      Defendants.      )

## AFFIDAVIT OF IVA THIGPEN

STATE OF ALABAMA      )
                            )
COUNTY OF RUSSELL     )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Iva Thigpen, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Iva Thigpen. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Corrections Officer by the Prentiss Griffith Detention Center for two and a half years.

2. I am familiar with the Plaintiff James Tyrone Edwards due to his incarceration in the Prentiss Griffith Detention Center.

3. I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4. I am familiar with the Prentiss Griffith Detention Center Policy and Procedures Manual. The Russell County Jail Policy and Procedures Manual states our policy regarding Use of Non-Deadly Force in Title 7.09.C.2. Jail personnel may use force for self-defense or defense of others and for the enforcement of Detention Center Regulations. Use of Non-Deadly Force in Title 7.09.C.2. Steps to be followed in any situation are: Officer presence, verbal command, chemical weapon, hands on and/or expandable stick, then deadly force for self-defense or to protect

others.  Memorandum on Use of Force Continuum, 22 September 1999.  I am also familiar with the Sheriff's Department General Order, dated 12 April 1996, on "Use of a Chemical Weapon."

5.     I was present when Sergeant Moore used Freeze Plus and his night stick to subdue Plaintiff on 3 February 2006.  Corrections Officer Mathis and I came to assist with the problems created when Plaintiff poured toilet water into other inmates' cells.  Plaintiff was riled up and for others' safety, had to be told to get down.  Sergeant Moore had to spray Plaintiff with one blast of mace and use his night stick to keep Plaintiff from threatening action against us.  While Sergeant Moore and Officer Mathis held Plaintiff, I handcuffed him.  Plaintiff still did not calm down during or after that process.

6.     We took Plaintiff to the Jail Infirmary where we instructed him on how to wash the mace off.  He was not injured.

7.     I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

IVA THIGPEN

**SWORN TO** and **SUBSCRIBED** before me this ___ day of November 2006.

NOTARY PUBLIC
My Commission Expires: 6\25\08

EXHIBIT H

MEDICAL TREATMENT LOG
PHOTOGRAPHS OF PLAINTIFF EDWARDS

1 JUNE 05 until 20 Feb 06

**NAME:** James Edwards    **D.O.B.** 8/14/80 **RACE:** B **SEX:** M

**PRESENT MEDICATION:**    **SSN:** 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

**ALLERGIES:**

**PPD:**    **HGT:** ' " **WGT:**    **LBS.**

**HIV/VDRL:**

| DATE/TIME | | NURSE SIGNATURE |
|---|---|---|
| 06/01/05 | S. Involved in altercation c̄ CO's. Pt. tore out sprinkler in cell & flooded block. C/o mid back pain 2° CO's w/knee in back when cuffing. Denies. Reports h/o stab wound @ 8-17 that almost left him paralized. Reports was in MVA @ arrest & being high on drugs. Sprayed earlier. D. Ø marks on back. A. Back Contusion. 24yo BM. P. Ice Pack to back. M. Davis RN    V/S: 115/71 -103-18-99    99% | |
| 063005 1055 | Involved in altercation, numerous contusions noted on ® side of face. Reports was kicked in the & abdomen. ↑BS? 2° spasms  — Zantac 150mg q HS x 3 days    Exam ? obst ___ ___ ↑ BS ___ noted ® 063005    100% | |
| 082405 0955 | C/o back and ? kidney problems    V/S: 123/78 -67-16-97⁵ HEENT: ⊖ LUNGS: clear    UA Chemstrip ⊖ results HEART: NSR s̄ ® AB: ⊖ EXT: ⊖    * Admitted to excessive exercising NEURO: WNL    up unto a few days ago. Aspercreme SKIN: ⊖    given to lumbar area. Report to staff if pain worsens. —    Riley LPN CHP | |

Edwards, James

| Date/<br>Time | | Nurse<br>Signature |
|---|---|---|
| | v/s: 134/73 - 76-16-99³    99% | |
| 091505<br>1030 | States tender on (L) nipple. | |
| | gynecomastia of (L) breast | |
| | N° R4 | |
| | *(signature)* | |
| 101405<br>1020 | FU on gynecomastia of (L) breast | |
| | Sons. Jone - B y/o | |
| | Leave it alone | |
| | *(signature)* | |

James Edwards

| Date/Time | | Nurse Signature |
|---|---|---|
| | ws 119/80  GG ⁷⁰ 64 - 97.6 | |
| 10/28/05 | Sore upper left Arm ×2 | |
| 9⁴⁵ AM | Keflex 500 ī Am. PM X 7 days | |
| | Tyluol X 2 now. | |
| | See Nurse Next week | |
| | for F abcess | |
| 10/28/05 2245 | Reg Tylenol #ī PO given ___ RN | RN |
| | V/s: 127/73-84-18-985   98⁷ | |
| 110705 1110 | F/u: Abscess under Arm healed | |
| | Instruction to use spray deodorant. | 100⁷ |
| 111605 0945 | F/u: Abscess under Arm   V/s: 120/74-63-16-975 | |
| | continue to keep area shaven (clean) | |
| | Daxy 100mg bid × 5 days | |
| | Noted 111605 | |
| 120605 0815 | Involved in altercation earlier this date. | |
| | suffered ī laceration to ® elbow. Area | |
| | cleansed ī betadine and steri-strips | |
| | in place over area. Noted bruising around | |
| | ® eye area ī minimal amt of edema. | |
| | Ice pack given to place on eye area. — | Riley Lowe HH |
| 120805 1220 | F/u: injuries sustained from altercation. | |
| | laceration to ® elbow healing well | |
| | No tx needed @ this time. | |
| | wt - 164 ½ | |

Edwards, James

| Date/Time | | Nurse Signature |
|---|---|---|
| 121205 1015 | Reoccurring Cyst under @ arm<br>Keflex 500mg qHS x 5days<br>noted<br>121205 @ | JPORN |
| 01/17/06 | Reg lax · Biscodyl 5mg x 4 given | JMc Innis RN |
| 020606 1350 | C/O ® knee pain from being hit c̄ baton by officer<br>- bruises noted ® buttocks area, ® upper thigh,<br>back, shoulder area, ® upper arm.<br>· States that suffers c̄ most pain in ® knee<br>area<br>Naprosen 500mg STAT · ↑ PO HS x 5 days<br>t/o Nurse J Riley LPN CCHP.<br>V/S: 121/79 - 71 - 18 - 97 · 100% | |
| 021506 1025 | F/U: injuries from incident mentioned ↑<br>Areas healed c̄ O sequela. | |
| Wgt: 172 1/4 | | |
| 02/19/06 9PM | S. Involved in altercation c̄ another<br>I/3 Christopher Cummings<br>C/O © pinkie broken. Set to<br>sent to shower to wash off<br>other I/3 blood that he is<br>covered c̄ to waist.<br>O. © pinkie min edema.<br>A. Fx doubtful prob sprain<br>P. Splint Refused<br>Ice, PRN<br>Tdf 800mg PO given<br>↑ Hand | JMc Innis RN |
| 2/20/06 | ws.<br>110/70 · 72 9 26 99² - 66<br>No Fx - ___ ___ ___<br>@ 2+hm - if not better in 2+hm | |

SWOLLEN HAND + OTHER BRUISES





EXHIBIT I

AFFIDAVIT OF TINA RILEY

NURSE   RUSSELL COUNTY JAIL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# OPELIKA DIVISION

JAMES TYRONE EDWARDS,   )
                           )
     Plaintiff,           )
                           )
v.                         )   Civ. Act. No. 3:06-CV-00740-MHT-SRW
                           )
SERGEANT PIERCE MOORE, )
et al.,                   )
                           )
     Defendants.       )

## AFFIDAVIT OF TINA RILEY

STATE OF ALABAMA        )
                           )
COUNTY OF RUSSELL      )

     **BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Tina Riley, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Tina Riley. I am over the age of nineteen and competent to make this affidavit. I am a Nurse who provides medical care to inmates at the Prentiss Griffith Detention Center.

2.     I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

3.     I was not present when the incident of 3 February 2006 and alleged in Plaintiff's Complaint occurred. I saw Plaintiff on 6 February 2006. The fact that there exists no record of a nurse seeing Plaintiff on the night of 3 February 2006 or early morning of 4 February 2006 means that either Plaintiff was not seen or the visit with the nurse was not recorded.

4.     When I saw Plaintiff on 6 February 2006, I did not find any serious injuries, only bruising. I gave Plaintiff Naproxin, an anti-inflammatory pain reliever, to be taken two times a day for five days.

5.      I swear, to the best of my present knowledge and information, that
the above statements are true, that I am competent to make this
affidavit, and that the above statements are made by drawing from
my personal knowledge of the situation.

TINA RILEY

**SWORN TO** and **SUBSCRIBED** before me this 9 day of November 2006.

NOTARY PUBLIC
My Commission Expires: 6/25/08